UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLEXPORT, INC.,<br>Plaintiff,<br>v.<br>FREIGHTMATE AI, INC., et al.,<br>Defendants. | Case No. 25-cv-02500-RFL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART FREIGHTMATE AND LACAILLADE'S MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 35, 36, 36-1, 38-2 |

Plaintiff Flexport, Inc. ("Flexport") alleges that former employees Yingwei Zhao and Bryan Lacaillade exfiltrated thousands of documents from Flexport to rapidly develop and launch a competing product for their new venture, Freightmate AI, Inc. ("Freightmate"). Flexport brings suit against Zhao, Lacaillade, and Freightmate alleging trade secret misappropriation, copyright infringement, and breach of contract. While Zhao has filed an answer to the Complaint (Dkt. No. 28), Freightmate and Lacaillade now move to dismiss the claims against them for failure to state a claim. (Dkt. Nos. 35, 36.) The motions to dismiss are **GRANTED IN PART AND DENIED IN PART WITH LEAVE TO AMEND**. This order assumes the reader is familiar with the facts, the applicable legal standard, and the arguments made by the parties.

## I. LACAILLADE'S MOTION TO DISMISS

### A. Trade Secret Misappropriation

Flexport fails to plausibly allege that Lacaillade either directly or indirectly misappropriated Flexport's trade secrets. To state a claim for trade secret misappropriation, Flexport must allege that: (1) it possessed a trade secret; (2) Lacaillade misappropriated the trade

secret; and (3) the misappropriation caused Flexport damage. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-59 (9th Cir. 2020). To plead misappropriation, Flexport must establish one of two categories of conduct: (1) acquisition of the secret by improper means, or (2) disclosure or use of the trade secret without consent. *See Apple Inc. v. Rivos, Inc.*, No. 5:22-cv-02637-EJD, 2023 WL 5183034, at *6 (N.D. Cal. Aug. 11, 2023) (citing 18 U.S.C. § 1839(5)(A)-(B)). Where, as here, a plaintiff accuses a defendant of indirect misappropriation (*i.e.*, that Lacaillade obtained Flexport's trade secrets from Zhao rather than directly from Flexport), the plaintiff must allege facts showing that the defendant "knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it." *California Police Activities League v. Cal. Police Youth Charities, Inc.*, No. C 08–1991 PJH, 2009 WL 537091, at *3 (N.D. Cal. March 3, 2009).

### 1. Direct and Indirect Misappropriation

Flexport advances two misappropriation theories based on Lacaillade's alleged use of its trade secrets without consent. Both theories fail.

First, Flexport argues that Lacaillade used Flexport trade secrets when he "secretly ran confidential Flexport documents 'through ChatGPT to better understand how generative AI digitizes analog shipping documents.'" (Compl. ¶ 52.) But Flexport has not alleged any facts supporting a plausible inference that these documents contained trade secrets. The Complaint does not identify what these "confidential Flexport documents" are or why they are subject to trade secret protection. Nor does the bare label of confidentiality confer trade secret status. Flexport attempts to characterize the shipping documents as "proprietary datasets . . . that allow Flexport to make and provide data-driven shipping services[.]" (Compl. ¶ 25). But again, there are no allegations characterizing the documents as a dataset, let alone one that is a trade secret.

Second, Flexport contends that the Complaint supports a plausible inference that Lacaillade used the source code and other files Zhao allegedly took from Flexport to build Freightmate's product. While Flexport adequately alleges that those documents constitute trade

secrets, there is insufficient basis to plausibly infer that Lacaillade used, or even knew about, the documents.

As a preliminary matter, Flexport has adequately pled that the Flexport code and other documents allegedly taken by Zhao constituted trade secrets. A plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *See Space Data Corp. v. X*, No. 16-CV03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017). While some of Flexport's trade secret allegations are vague, others are sufficiently specific to plausibly allege trade secrets. *See, e.g.*, Compl. ¶¶ 23, 54 (identifying flexport-master.zip as the file containing Flexport's trade-secret source code); Compl. ¶¶ 26, 57 (identifying "air-freightscrapers-130524-185844.pdf," "Flexport Dangerous Goods SOP," "BOL Training.pptx," and "Shipment Operations MBR Metrics" as files that contain various business and operational trade secrets); *see also WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 846 (N.D. Cal. 2019), *modified in part*, No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) (file names were sufficient to identify alleged trade secrets contained in source code).

Flexport, however, does not plausibly allege that Lacaillade—who is not alleged to have taken any Flexport trade secrets himself—used or disclosed the documents Zhao allegedly took. The Complaint only contains conclusory group allegations that "Defendants have used . . . Flexport's trade secrets," and does not reference any specific trade secrets that Lacaillade accessed or used. (*See, e.g.*, Compl. ¶¶ 58, 65, 66.) Instead, Flexport contends that the speed at which Freightmate developed their product and acquired customers was "incredible," supporting a reasonable inference that Lacaillaide used Flexport's code or other alleged trade secrets while developing the product. (Compl. ¶ 52.) Flexport further alleges that Freightmate established partnerships with "over three times the number of [customers it had] anticipated by [by January 2025]" (Compl. ¶ 58) and launched its initial product about a month-and-a-half after incorporation (Compl. ¶ 52). But while Flexport plausibly alleges that Zhao used the code or

other trade secrets while at Freightmate (as discussed further below with respect to Freightmate's motion to dismiss), that is not enough to allege that Lacaillaide himself did so.[1]

Nor has Flexport plausibly alleged that Lacaillaide knew or had reason to know that Zhao took Flexport's trade secrets or used them. Flexport contends that the timing of Zhaos's alleged misappropriation of files—that Zhao allegedly took files in the days immediately following Lacaillade's registration of the Freightmate domain name and incorporation of the Freightmate entity—supports an inference that Lacaillade was aware of Zhao's misappropriation. (Compl. ¶¶ 36, 39, 54.) But those allegations, if true, merely support the inference that *Zhao* may have been aware of the domain registration and incorporation and decided to take files shortly thereafter, not Lacaillade.

**2. Conspiracy**

Flexport also does not adequately plead liability on a conspiracy theory. To state a cause of action for civil conspiracy, a complaint must allege (1) the formation and operation of a conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting from such act or acts. *Younan v. Equifax, Inc.*, 111 Cal. App. 3d 498, 511 n.9 (1980). For each element of conspiracy, "[b]are allegations and rank conjecture do not suffice[.]" *Lachapelle v. Kim*, No. 15-CV-02195-JSC, 2015 WL 5461542, at *7 (N.D. Cal. Sept. 16, 2015). While Flexport generally alleges that Lacaillade conspired with Zhao to misappropriate trade secrets, Flexport does not specifically allege either the circumstances of the agreement or any action that Lacaillade took in furtherance of the conspiracy. The Complaint only contains conclusory allegations of conspiracy, which are insufficient to establish plausibility. (*See, e.g.*, Compl. ¶ 12 ("Plaintiff believes and therefore alleges that Defendants conspired to obtain and exploit Flexport's proprietary information . . ."); Compl. ¶ 56 ("Defendants conspired to take and took [the Flexport Platform Trade Secrets] . . . to help develop a freight management system that

[1] Nor do these alleged facts support threatened misappropriation, which occurs when a defendant has misused or manifests an imminent threat to misuse trade secrets. *FLIR Systems v. Parrish*, 174 Cal. App. 4th 1270, 1279 (2009).

competes with the Flexport Platform."); Compl ¶¶ 57, 65 ("Flexport believes and therefore alleges that Defendants conspired to take and took these materials to avoid the costs involved in researching and developing expertise and experience in navigating the complex global logistics ecosystem . . .").)

Flexport argues that a conspiracy can be inferred from the bare allegation that Zhao and Lacaillade agreed to form Freightmate in January 2024 and the registration of a domain name at that time. (Compl. ¶ 36.) But such an allegation is just as conclusory as the other allegations rejected as insufficient above. Moreover, even if a reasonable inference can be drawn from those allegations that Zhao and Lacaillade were considering the formation of Freightmate in January when they were still employed at Flexport, that is hardly a basis to infer that that Zhao and Lacaillade entered an agreement to misappropriate trade secrets from Flexport. Therefore, the motion to dismiss the trade secret misappropriation claims against Lacaillade is **GRANTED WITH LEAVE TO AMEND**.

### B. Copyright Infringement

Flexport does not plausibly allege that Lacaillade infringed its copyrighted source code. Proof of copyright infringement requires a plaintiff to show that (1) they own a valid copyright in the work, and (2) the defendant copied protected aspects of the work. *Skidmore as Tr. for Randy Craig Wolfe Trust v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc). Secondary liability exists for copyright infringement either by "intentionally inducing or encouraging direct infringement" (contributory infringement), or "by profiting from direct infringement while declining to exercise a right to stop or limit it" (vicarious infringement). *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (internal citations omitted).

Flexport does not dispute that Lacaillade did not directly copy the source code. Instead, Flexport argues the allegations support an inference that Lacaillade induced and/or authorized Zhao's copying of Flexport's source code. As discussed above, the Complaint does not support an inference that Lacaillade entered into an agreement with Zhao to take Flexport's documents or that Lacaillade controlled Zhao's actions. Flexport further asserts that Lacaillade, as

Freightmate's CEO, had a duty to police Zhao's actions, and thus is vicariously liable for Zhao's alleged copying. The Complaint, however, does not allege any facts from which it could be inferred that Lacaillade controlled Zhao's copying of the source code, which is alleged to have occurred prior to Zhao's employment at Freightmate, as detailed below. Therefore, the motion to dismiss the copyright infringement claims against Lacaillade is **GRANTED WITH LEAVE TO AMEND**.

### C. Breach of Contract

Flexport has adequately alleged that Lacaillade breached his obligation under Flexport's Employee Inventions & Proprietary Information Agreement ("Agreement") to "hold in strict confidence and not directly or indirectly disclose or use any Proprietary Information, except as required within the scope of [his] employment." (Compl. ¶ 88.) While Flexport fails to sufficiently allege that Lacaillade disclosed or used any of Flexport's trade secrets or copyrighted code, Flexport has plausibly pled that the "confidential" shipping documents Lacaillade allegedly fed into ChatGPT constituted Flexport's "Proprietary Information." Therefore, the motion to dismiss the breach of contract claim against Lacaillade is **DENIED**.

## II. FREIGHTMATE'S MOTION TO DISMISS

### A. Trade Secret Misappropriation

While Flexport's direct misappropriation theory against Freightmate fails for the same reason as for Lacaillaide,[2] Flexport has plausibly pled that Freightmate is vicariously liable for Zhao's misappropriation of trade secrets. Specifically, although Flexport does not adequately plead vicarious liability for Zhao's initial acquisition of trade secrets, Flexport has adequately pled facts supporting a plausible inference that Zhao used those trade secrets after he started working at Freightmate. Freightmate's motion to dismiss the trade secret misappropriation claim is therefore **DENIED**.

Flexport has not adequately alleged that Freightmate is vicariously liable for Zhao's

[2] Flexport alleges that Freightmate also fed shipping documents into ChatGPT, but as discussed above, Flexport fails to sufficiently allege that those documents contain trade secrets.

alleged acquisition of the trade secrets, because that conduct occurred prior to Zhao's employment at Freightmate. "[T]he *future* employer of a person who steals a company's trade secrets for the benefit of the future employer is [not] liable under respondeat superior, absent an allegation the future employer subsequently used the trade secrets or the wrongdoer used the trade secrets once he actually became employed." *Alert Ent., Inc. v. Rana*, No. 22-CV-06646-JSC, 2023 WL 2541353, at *3 (N.D. Cal. Mar. 16, 2023). Here, there are no facts in the Complaint from which it can be inferred that Zhao was an employee or agent of Freightmate as of May 30, 2024, which is the date of Zhao's last alleged download. (Compl. ¶ 54.) Flexport conclusorily alleges that Zhao "co-founded" Freightmate. (Compl. ¶ 40.) But Freightmate's Certificate of Incorporation shows that Lacaillade was its sole incorporator on May 13, 2024. (Dkt. No. 36-1 at 9.)[3] This also contradicts Flexport's allegations that *both* Lacaillade and Zhao incorporated Freightmate in Delaware (Compl. ¶ 46), though it appears Flexport no longer seeks to advance this argument. (*See* Dkt. No. 39 at 7 (stating that "Lacaillade . . . formally incorporated Freightmate[.]).)

In response, Flexport asks this Court to take judicial notice of Freightmate's Foreign Registration Statement filed with State of Washington, which denotes that Freightmate began doing business in Washington on May 29, 2024, and lists Zhao as a governor of Freightmate. (Dkt. No. 38-3 at 4-5). However, even if this document were admissible as a public record and sufficiently establishes Zhao's employee or agent status at the time of the alleged misappropriation, a plaintiff may not supplement its allegations via judicial notice. *M. B. v. City & Cnty. of San Francisco*, No. 24-CV-00301-RFL, 2024 WL 4049889, at *1 (N.D. Cal. Sept. 3, 2024). Flexport's request for judicial notice is therefore denied.

However, Flexport has adequately pled that Freightmate is vicariously liable for Zhao's alleged *use* of the trade secrets after he had joined Freightmate. An employer is vicariously

---

[3] Courts routinely take judicial notice of Certificates of Incorporation, which are part of the public record. *In re Diadexus, Inc.*, No.: 18-cv-04002-CRB, 2019 WL 3412928, at *1 (N.D. Cal. July 29, 2019).

liable for misappropriation when it is committed "within the scope of employment [and] at least in part[] to benefit the employer, though the employer may forbid it." *Brain Injury Ass'n of California v. Yari*, No. 19-CV-5912, 2020 WL 3643482, at *5 (C.D. Cal. Apr. 30, 2020). Drawing all reasonable inferences in Flexport's favor, Flexport has plausibly alleged that Zhao used the trade secret files in the course of his employment at Freightmate, and thus that Freightmate is vicariously liable for that conduct. The Complaint alleges that Zhao—a Principal Technical Program Manager at Flexport working on the Flexport Platform—had saved to his local computer over 70,000 confidential Flexport documents in the months leading up to his departure from Flexport, many of which plausibly contained trade secret information. (Compl. ¶ 38). The timing of Zhao's alleged downloads, volume of downloaded documents, Zhao's role as co-founder and COO, and Freightmate's rapid launch of a competing product containing functionality similar to the allegedly stolen source code support a plausible inference that Zhao took the files with the intention to use them to benefit Freightmate, and actually did so. *See Neutron Holdings, Inc. v. Hertz Corp.*, No. 23-CV-00934-JSC, 2023 WL 3919465, at *5 (N.D. Cal. June 8, 2023) (finding vicarious liability for employee's use on similar facts). At least one of the files Zhao allegedly took, the Flexport Platform source code, includes functionality that was also offered by Freightmate.[4] (*Compare* Compl. ¶ 19 (Flexport Platform includes features for ingestion of data), *with* Compl. ¶ 57 (Freightmate offers a document ingestion tool called "Docmate").)

*Apple Inc. v. Rivos, Inc.*, No. 5:22-CV-02637-EJD, 2023 WL 5183034 (N.D. Cal. Aug. 11, 2023), does not counsel otherwise. Zhao's conduct is more analogous to that of the individual defendants in *Rivos*—specifically, Wen, Rajamani, and Hardage—who were found to have plausibly threatened misappropriation than those whose conduct amounted to mere possession of confidential materials. Like Zhao, those three defendants were alleged to have

---

[4] Flexport also asserts successor liability, joint tortfeasor liability, and direct use theories, which the Court need not address given its conclusion that Flexport has sufficiently alleged a vicarious liability theory.

downloaded substantial volumes of proprietary information shortly before departing Apple to join a direct competitor in a similar role. *See id.* at *6. The *Rivos* court reasoned that "it would be unreasonable to require a plaintiff to demonstrate the precise ways in which Defendants may have used [plaintiff's] trade secrets, given that Defendants are the only ones who possess such information" and "discovery has not yet commenced." *Id.* The court, however, declined to infer misappropriation as to the other individuals—Pinot and Ye—who merely retained access to Apple files on regularly synced cloud storage without any accompanying allegations of recent exfiltration. *Id.* at *7. By contrast, Zhao's conduct went far beyond "mere possession" for the reasons explained above.

### B. Copyright Infringement

Flexport fails to adequately allege that Freightmate infringed its copyrights. Flexport does not allege that Freightmate directly copied its code. Instead, Flexport asserts that Freightmate is liable for the copyright infringement committed by Zhao. As discussed above, however, Flexport has not sufficiently alleged that Zhao made infringing copies of Flexport Platform Code while employed at Freightmate. Flexport's argument that Freightmate should have policed Zhao and stopped him from downloading the copyrighted source code also fails for the same reason. Therefore, the motion to dismiss the copyright infringement claim against Freightmate is **GRANTED WITH LEAVE TO AMEND**.

## III. CONCLUSION

Based on the foregoing, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART** as set forth above. Freightmate's request for judicial notice (Dkt. No. 36-1) is **GRANTED**, and Flexport's request for judicial notice (Dkt. No. 38-2) is **DENIED**. If Flexport wishes to file a Second Amended Complaint correcting the deficiencies identified above, it shall do so by August 8, 2025. Flexport may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15. If no such amended complaint is filed by that date, the claims that were dismissed in this Order will remain dismissed, and the case will proceed solely on the remaining claims, including the ones

Defendants did not move to dismiss.

**IT IS SO ORDERED.**

Dated:

RITA F. LIN
United States District Judge