

September 10, 2025

**VIA ECF**

The Honorable Rita Lin
District Judge for the Northern District of California

Dear Judge Lin:

Plaintiff Flexport and Defendant Freightmate submit this joint letter regarding whether Freightmate should be compelled to provide certain discovery. Despite having met and conferred live, the parties could not resolve the disputes addressed below.

### Flexport's Position

Flexport is suing to recover its stolen trade secrets and confidential data, and for compensation for the misappropriation of its IP. As Flexport's First Amended Complaint details, Defendants Lacaillade and Zhao co-founded Freightmate while still employed by Flexport. (*See generally* Dkt. 76.) While still on Flexport's payroll, Lacaillade and Zhao secretly built Freightmate products by accessing, using, and making unauthorized copies of Flexport's confidential files. They downloaded over 70,000 files from Flexport's secure repositories, including a massive file called "flexport-master.zip," which contained non-public, trade secret, and copyrighted source code pertaining to Flexport's flagship products.

Within weeks of leaving Flexport, Defendants launched a competing product and then began destroying evidence of their malfeasance. They claim to have deleted the stolen data in batches over time, but evidence produced to date only shows that they deleted ~4,000 of the ~70,000 stolen files. Notably, the source code "flexport-master.zip" is not among the deleted files, and Freightmate has yet to provide discovery about when or how any deleted files were used (or copied elsewhere) before the alleged deletion. As a trade secret plaintiff, Flexport is entitled to learn how its stolen data was handled, including which devices may have been used to access, transmit or store the stole data. But Freightmate refuses to answer basic discovery about the devices it used to access, transmit and store Flexport's files, while also withholding documents that should have been produced months ago.

Therefore, Flexport seeks an order compelling Freightmate to (I) provide a fulsome response to Flexport's Interrogatory No. 1, seeking identification of Freightmate's devices; (II) produce documents regarding the accused product, as sought in RFP No. 12; and (III) produce documents responsive to Flexport's RFP Nos. 2 and 5, without withholding documents based on objections Freightmate voluntarily withdrew.

I. **Freightmate must identify all devices and repositories used to store data.**

**Interrogatory No. 1** asks Freightmate to "[i]dentify any non-Flexport locations or media capable of storing electronic data that are accessible to You, or were accessible to You at any time after January 1, 2024." Thus, this request seeks an inventory of the repositories Freightmate used to store files, which is relevant and discoverable. "In cases where trade secrets and electronic evidence are both involved, the Courts have granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation." *Lifetouch Nat'l Sch. Studios, Inc. v. Moss-Williams*, No. C10-05297 RMW-HRL, 2013 WL 11235928, at *2 (N.D. Cal. Oct. 15, 2013). For Flexport to make informed decisions about what devices to inspect, Freightmate must first identify its devices. *See, e.g.*, *Satmodo v. Whenever Commc'ns*, No. 3:17-CV-192-AJB-NLS, 2018

WL 3495832, at *3 (S.D. Cal. July 20, 2018) (must answer request "designed to identify the universe of devices at issue and by doing so, obtain a list of devices to inspect.").

Freightmate does not deny this request is relevant or contend that it would be burdensome to identify such devices. Rather, it improperly narrows Flexport's request to list only devices it contends are within its "control," omitting other responsive, highly relevant devices that Freightmate regularly uses for business. For example, Zhao (co-founder and COO of Freightmate) uses his own laptop for Freightmate business, and indeed used it to launch Freightmate while working at Flexport, but Freightmate inexplicably failed to list this laptop in response to Interrogatory No. 1. This begs the question of what other devices Freightmate is hiding.

The Court should compel Freightmate to provide a complete, straightforward response to Interrogatory No. 1. *See Satmodo* at *2–3 (compelling fulsome response given "concerns regarding the completeness and accuracy of" the identification of devices). Specifically, Freightmate must identify all devices Freightmate uses, or has used, for Freightmate business to store, access, and transmit information. This will allow Flexport to determine which of those devices should be inspected.

## II. Freightmate must produce relevant documents regarding the accused products.

**RFP No. 12** seeks documents concerning "any non-Flexport product or service . . . developed during the Employment Period or during any period [Freightmate] retained access to any Flexport Source Code or Flexport Proprietary Information." "Employment Period" includes when Zhao or Lacaillade were Flexport employees.

Courts consistently require production of documents regarding accused products in IP cases. *See, e.g.*, *Fresenius Med. Care Holding Inc. v. Baxter Int'l, Inc.*, 224 F.R.D. 644, 656 (N.D. Cal. 2004) (requiring production of "all documents that relate to the research, design, development, marketing and sales of [defendant's] products."); *Bryant v. Mattel, Inc.*, No. C 04-09049 SGL RNBX, 2007 WL 5416681, at *7 (C.D. Cal. Jan. 26, 2007) (requiring production of materials regarding all accused doll products). Likewise, Freightmate must produce documents and communications regarding the products it developed while having access to or possessing confidential Flexport files. Product development documents are expected to support Flexport's claim that Defendants misappropriated trade secrets, and to undermine Defendants' claims of independent development (*see, e.g.,* Dkt. 73 at 24 (alleging independent development). Further, documents marketing or selling the accused products are required, for example, to assess which product feature(s) Freightmate highlights to its customers and investors. Although its public statements show otherwise, Freightmate represents that "Docmate" is the only product at issue, underscoring that Flexport's request is not overly broad or burdensome.

Yet, Freightmate has failed to produce documents responsive to RFP No. 12, specifically those showing the design, development, marketing, or sale of the accused product(s). Freightmate initially objected to producing documents outside a narrow date range (May 13 to July 1, 2024), but then withdrew that objection in correspondence dated July 15, 2025, only to later reassert an arbitrary July 1, 2024, cutoff. Because Freightmate is unreasonably withholding documents, the Court should compel prompt production.

### III. Freightmate mustn't withhold documents based on objections it voluntarily withdrew.

**RFP Nos. 2 and 5** seek documents concerning "agreements, understandings, pacts, or transactions between [or among]" defendants (RFP No. 2), or "this Action or Flexport" (RFP No. 5). There is no dispute that these RFPs seek relevant and discoverable information. But Freightmate refuses to produce responsive documents that are admittedly Freightmate's property (and in Freightmate's control) but purportedly stored on unspecified devices that Freightmate claims are outside its control. Freightmate cannot admit it controls responsive documents and then withhold them by disclaiming control of the devices that store them. Furthermore, despite repeated follow-ups, Freightmate has failed to produce responsive documents or commit to a production date. This is prejudicing Flexport as fact discovery closes in just a few months, on January 16, 2026. Accordingly, the Court should compel Freightmate to produce all non-privileged materials in Freightmate's possession, custody, or control responsive to these requests by a date certain.

### Freightmate's Position

Flexport asks this Court for an order on four requests: Special Interrogatory No. 1 ("Rog 1") and Request for Production Nos. 2, 5, and 12 ("RFP 2, 5, 12").

As to three of the four (Rog 1, RFP 2 and RFP 5), Freightmate already has provided (Rog 1, RFP 2) or has agreed to provide (RFP 5) Flexport with every tidbit of information and every document requested. Flexport's motion on these requests is, in truth, not a discovery motion, but a longshot attempt to get this Court to issue a ruling Flexport hopes will help it on the merits: that freightmate has "access to," or "possession, custody, or control" over, devices owned by the Individual Defendants. The Court should not take the bait.

As to the final request at issue (RFP 12), it seeks—on its face—either all or nearly all documents that freightmate has. Contrary to Flexport's assertion, freightmate's <u>original</u> response to RFP 12 agreed to produce numerous documents (which freightmate did promptly produce), and freightmate has supplemented its response twice since then (before <u>and</u> after receiving Flexport's portion of this letter) to agree to produce additional documents, despite Flexport's refusal to narrow its overbroad request in any way. To the extent Flexport believes it is entitled to something more than what freightmate has produced or agreed to produce, but less than "everything," it must explain what that is.

(Given space limitations, freightmate will not spill ink on the various factual inaccuracies in "Flexport's Position" unless necessary to resolution of this motion.)

### I. Freightmate Has Provided a Full and Complete Response to Rog 1

Rog 1 asked freightmate to "[i]dentify any non-Flexport locations or media capable of storing electronic data that are accessible to You, or were accessible to You at any time after January 1, 2024." Freightmate has done so.

Flexport did not define the term "accessible," so freightmate gave it a plain, ordinary meaning under the circumstances: "under freightmate's control as 'control' has been defined by the Ninth Circuit[.]" *See In re Citric Acid Litig.,* 191 F.3d 1090, 1107 (9th Cir. 1999) (defining control "as the legal right to obtain documents upon demand"). Freightmate then listed those locations/media that are under its control. But Flexport believes (or at least, has taken the position) that the Individual Defendants' personal devices, such as their personal computers and phones, are under freightmate's control. This



is incorrect. *See Halabu Holdings, LLC v. Old Nat'l Bancorp*, No. 20-10427, 2020 WL 12676263, at *1-2 (E.D. Mich. June 9, 2020) (collecting cases discussing how company does not possess or control text messages from employees' personal phones).

Nonetheless, to moot the issue, freightmate supplemented its response to Rog 1 to identify not only those locations/media under its control, but also locations/media that it understood were under the Individual Defendants' control (as well as locations/media under the control of freightmate's third founder). *See* Ex. C at 4-6. However one defines "accessible," and whoever is right on the "control" issue, Rog 1 unquestionably has been answered in full.

As Rog 1 does not seek "mirror images" of "locations or media," freightmate will not address Flexport's cases addressing supposed future entitlement to "mirror images" other than to note that neither case would apply here even if the requests at issue sought them.

II.  Flexport's Demand that Freightmate Produce All Documents and Communications Related to Its Only Product (RFP 12) is Overly Broad and Not Proportional to the Needs of the Case

Contrary to Flexport's assertion, freightmate has produced a great deal of documents responsive to RFP 12. What it has not done is produce all documents that RFP 12 calls for, because on its face, RFP 12 calls for all of freightmate's documents.

RFP 12 asks freightmate to produce all "documents and communications" related to any product it worked on while it "retained access to any Flexport Source Code or Flexport Proprietary Information." While freightmate never had "access" to any "Flexport Source Code," it did receive access to Flexport "Shipping Documents," and while most were deleted from freightmate's systems by September 6, 2024, a few were (unknowingly) retained in historical emails. Flexport's RFPs do not define "Flexport Proprietary Information," but its Rogs define the term in a way that includes the Shipping Documents (inaccurately, but still). And because freightmate's entire business has been, and remains, the development of Docmate, RFP 12 is unbounded either by subject matter or by time.

Despite the obvious overbreadth, freightmate agreed to (and did) produce technical documents sufficient to show Docmate's features, design, functionality, programming, and operation. Ex. D at 4:15-18. It also agreed to (and did) produce all documents dated on or before July 1, 2024 related to Docmate's development. *Id.* at 4:19-21.

When Flexport indicated it remained dissatisfied but refused to be more specific about what it wanted, freightmate again attempted to carve an appropriate set of documents out of RFP 12. This time, freightmate agreed to produce, *inter alia*, all non-privileged emails, Slack messages, Teams messages, and more, from inception of the company through September 6, 2024 "related to the development of any freightmate product" (broadly defined); documents sufficient to show Freightmate's target market and customers, investor pitches, and product development plans and/or business plans; and all non-privileged documents in certain Google Drive folders that serve as the central repository for documents related to Docmate development, testing, and marketing. Ex. D at 4:26-5:8.

Flexport's undifferentiated and unsubstantiated demand for still "more" is unreasonable. The roughly 33,000 emails and 20,000 Slack threads dated on or after September 7, 2024 alone, at an industry-standard rate of one document per minute, would require more than 880 hours of attorney review time. And that does not take into account other repositories Flexport has demanded documents from, nor does it take into account the extra time required for privilege/redaction review. In short, the burden of providing the type of

response to RFP 12 that Flexport demands outweighs its likely benefit.[1]  *See, e.g.*, FRCP 26(b); *Ingram v. West Capital Lending, Inc.*, No. 22-cv-03865 BLF (NC), 2023 WL 4336694, * 1 (ND. Cal. Apr. 28, 2023) (request for "[a]ll communications" re various subjects overbroad); *Campbell v. Facebook, Inc.*, No. 13-CV-05996-PJH, 2016 WL 7888026, at *1 (N.D. Cal. Oct. 4, 2016) (denying motion to compel due to overbreadth).

### III. Freightmate Has Fully Complied with RFP Nos. 2 and 5 by Agreeing to Produce All Documents in Its Possession, Custody or Control

Flexport served RFP 2 and 5 as "Common Requests" on all defendants.  As to both requests, freightmate agreed to produce <u>all</u> requested, non-privileged documents in its possession, custody or control.[2]

Unfortunately, as with Rog 1, Flexport demands more than full compliance.  It demands that <u>freightmate</u> produce documents on the <u>Individual Defendants'</u> personal computers, phones, and other locations/media, even though the law is clear that such devices are not under freightmate's possession, custody, or control.[3]  Flexport can and should get these materials from the Individual Defendants themselves, on whom it served the exact same RFPs.  Indeed, Flexport has not even tried to explain why it does not do so.

So why all the rigamarole, when Flexport can simply get these materials from the owners of the sources/locations?  Because Flexport hopes to leverage a cursory argument packed into a short discovery letter brief, into an important merits victory: a ruling that freightmate (supposedly) has possession, custody or control of whatever Flexport materials Mr. Zhao downloaded onto his personal devices.  In other words, Flexport—which is alleging that freightmate should face liability for alleged copying of Flexport documents by one of the Individual Defendants onto his personal (not freightmate) devices—wants this Court to deem <u>his</u> documents, <u>freightmate's</u> documents.  The Court should decline.

---

[1] Flexport's case law is not to the contrary.  *Fresenius* involved a request for documents related to products alleged to embody the patent at issue in the case, and the responding party did not dispute the relevance of the requested documents.  *See Fresenius,* 224 F.R.D. at 656-57.  And in *Bryant*, the trade secret defendant refused to produce ***any*** documents related to versions of its product it worked on while employed by the plaintiff. 2007 WL 5416681, at *7.

[2] During meet and confer discussions, Flexport agreed to narrow the scope of RFP 2 to those documents described in freightmate's supplemental response.

[3] Flexport has not even tried to bear its burden of demonstrating that the Individual Defendants' personal repositories are in freightmate's control.  *See United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989).  A party has "control" over documents where "by statute or contract" they have "the *exclusive right* to command release of property held by another."  *See* FRCP 34; Karen L. Stevenson & James E. Fitzgerald, *The Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial*, ¶11:1827 (The Rutter Group 2025).  Other than freightmate work product that may reside on the Individual Defendants' personal devices (which freightmate has a contractual right to obtain), documents on those devices are outside of freightmate's control.  *See, e.g.*, *Halabu Holdings*, 2020 WL 12676263, at *1.

**Enclosed**:

1. Exhibit A: Excerpt of Flexport's discovery requests addressed in this letter.

2. Exhibit B: Excerpt of Freightmate's Supplemental Response to interrogatory addressed in this letter and responses and supplemental responses to document requests addressed in this letter.

3. Exhibit C: Freightmate's Second Supplemental Response to interrogatory addressed in this letter.

4. Exhibit D: Freightmate's Second Supplemental Response to document requests addressed in this letter.

Dated: September 10, 2025                TYZ LAW GROUP PC

*/s/ Udit Sood*
Udit Sood
Attorneys for Plaintiff Flexport, Inc.

Dated: September 10, 2025                ALTO LITIGATION, PC

*/s/ Bryan Ketroser*
Bryan Ketroser, Esq.
Attorneys for Defendant freightmate Ai, Inc.



# CERTIFICATE PURSUANT TO CIVIL LOCAL RULE 5-1

I, Udit Sood, am the ECF user whose credentials were utilized in the electronic filing of this document.  In accordance with Civil Local Rule 5-1(i)(3), I attest that the other signatories concurred in the filing of this document.  I declare under penalty of perjury that the foregoing is true and correct.  Executed on September 10, 2025.

                                                  */s/ Udit Sood*
                                                  Udit Sood