UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FLEXPORT, INC., <br><br> Plaintiff, <br><br> v. <br><br> FREIGHTMATE AI, INC., et al., <br><br> Defendants. | Case No. 25-cv-02500-RFL  (PHK) <br><br> **ORDER RE: DISCOVERY DISPUTES** <br> Re: Dkts. 126, 127, 128, 131 |

All discovery matters in this case have been referred to the undersigned. [Dkt. 81]. Now before the Court are the Parties' Joint Discovery Letter Briefs. [Dkts. 126, 127, 128, 131]. The Court held a Discovery Hearing on these briefs on April 1, 2026. [Dkt. 137]. Having considered the Joint Letter Briefs, all papers in support of the Joint Letter Briefs, and argument of counsel at the hearing on the Joint Letter Briefs, the Court issues this Order memorializing its verbal directives from the April 1 hearing (which are hereby incorporated by reference).

## LEGAL STANDARD

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less

burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

The relevant legal standards for discovery are well-known. Rule 26(b)(1) delineates the scope of discovery in federal civil actions and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy for purposes of discovery is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the commonsense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the

United States District Court
Northern District of California

2

relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. *Id.* The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

With regard to proportionality, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.*

As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (*citing Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Similarly, a district court's determination as to proportionality of discovery is within the district court's discretion. *See Jones v. Riot Hospitality Grp. LLC*, 95 F.4th 730, 737-38 (9th Cir. 2024) (finding district court did not abuse discretion on proportionality ruling). Ultimately, "the timing, sequencing and proportionality of discovery is left to the discretion of the Court." *Toro v. Centene Corp.*, No. 19-cv-05163 LHK (NC), 2020 WL 6108643, at *1 (N.D. Cal. Oct. 14, 2020).

**DISCUSSION**

The Parties' Letter Briefs present numerous overlapping disputes over requests for either further production of documents, further supplementation of interrogatory responses, or other discovery relief requested by both Plaintiff and Defendants. *See* Dkts. 126, 127, 128, 131.  As

United States District Court
Northern District of California

3

verbally ruled upon and for the same reasons stated at the April 1 hearing, the Parties' requests for supplemental discovery are **DENIED-IN-PART** and **GRANTED-IN-PART**.

**Docket 126**

Dispute re Forensic Inspection Protocol

Plaintiff seeks an Order requiring forensic inspection of Defendants' unspecified "data sources" without explaining precisely what those "data sources" are and without explaining the details of the forensic examination protocol requested, other than a request that Plaintiff's hand-picked consultant firm be chosen as the vendor to perform this forensic examination. Also, Plaintiff has expressly withdrawn its request to image Mr. Lacaillade's personal devices. [Dkt. 126 at n.9]. On that basis, the Court **DENIES AS MOOT** the request for a forensic inspection of Mr. Lacaillade's data sources.

By contrast, Defendants sent Plaintiff a proposed Forensic Examination Protocol in October 2025 with detailed procedures and proposals for a neutral, mutually agreeable forensic firm to perform the forensic examination (attached as Exhibit A to the Discovery Letter Brief, Dkt. 126-1). Plaintiff's briefing never discusses why there was a failure to respond to Defendant's proposed protocol for over four months, nor why that proposal is materially deficient.

Plaintiff's unexplained and potentially wide-ranging and vague request for forensic inspection of unidentified "data sources" is **DENIED**. The Court finds that Defendants' proposed forensic inspection protocol, the details of which were never expressly disputed or shown to be insufficient based on the record presented, is appropriate here. Accordingly, the Court **ORDERS** the Parties to collaborate diligently to finalize the Forensic Inspection Protocol presented in Exhibit A to Dkt. 126 by close of business on Monday, April 6, 2026. Parties are **ORDERED** to negotiate reasonably to reach agreement on a mutually agreeable neutral third-party forensic firm by April 6, 2026. If Parties are incapable of reaching agreement on a forensics firm for the Forensic Inspection Protocol by April 6, lead trial counsel and all counsel involved are **ORDERED** to report in-person to Courtroom F at 8:30 AM on April 6 to meet and confer in-person and report on the results by noon that day. Failure to reasonably agree on a forensics firm by noon that day may result in sanctions imposed on all counsel and/or all Parties.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

Disputes re Documents

In one short passage, Plaintiff raises a dispute over whether or not certain documents within the possession, custody, or control of the Wilson Sonsini law firm (which served as counsel for Defendants) should be produced or are properly withheld under an assertion of the work product doctrine. It was reported at the hearing that a subpoena was only recently served on Wilson Sonsini and no substantive discussions with that third party have yet taken place. As noted in the briefing (and not materially disputed by Plaintiff), attorney work product is the property of the attorney and thus assertion of that objection requires direct discussions over scope with the attorney involved. *See Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 328 (N.D. Cal. Dec. 20, 1985) ("attorney work product 'belongs' to the attorney").

Accordingly, with regard to the dispute as to the work product issues and Wilson Sonsini, Plaintiff's Motion is **DENIED WITHOUT PREJUDICE**. To the extent Plaintiff continues to seek documents from Wilson Sonsini, Plaintiff **SHALL** communicate directly with that firm. The Court **ORDERS** Defendants to inform the Wilson Sonsini lawyers involved that, to the extent Wilson Sonsini is withholding documents responsive to the subpoena on the basis of privilege or work product, Wilson Sonsini **SHALL** timely serve a privilege log.

In another short passage, Plaintiff raises concerns about whether Defendant Zhao has or has not completed production of his documents responsive to the discovery requests. This is an issue which the Parties clearly failed to meet and confer about adequately. At the hearing, Defendant Zhao's counsel represented unequivocally that Defendant Zhao's document productions were completed. Accordingly, Plaintiff's Motion to Compel regard Defendant Zhao is **DENIED AS MOOT** and withdrawn at the hearing based on counsel for Defendant Zhao's representation that Zhao's production of responsive, non-privileged documents is complete and based on Plaintiff's counsel's admission that there is no further relief Plaintiff could seek here.

**Docket 127**

As discussed at the hearing, the briefing on this dispute was not effective because of the multitude of disputed document requests and the evident failure by counsel for both Parties to adequately meet and confer to narrow and resolve these disputes. Further, the Court noted at the

United States District Court
Northern District of California

hearing that Defendants, as the moving Parties, repeatedly requested evidentiary sanctions against Plaintiff here, which is both procedurally improper and premature (because this was not presented as a Rule 37 motion for discovery sanctions for violating a prior Court Order (of which there is none at issue here), but rather as a motion to compel which had not even been ruled upon at the time of briefing). Also, Defendants failed to cite any legal authority for the proposition that, within the scope of the discovery referral here, the undersigned has the authority to issue evidentiary sanctions which would apply, for example, to trial (and thus goes beyond mere discovery relief). In this Discovery Letter Brief (and the others discussed in this motion), any and all requests for evidentiary sanctions are **DENIED** as premature.

At the hearing, it became evident that Defendants distrust Plaintiff's prior representations that Plaintiff's production of documents responsive to the Requests for Production at issue are complete. Mere distrust of opposing counsel's representations are not a sufficient basis to show that relief is warranted. If further discovery, such as depositions, demonstrate that an attorney's representations are false, misleading, or inaccurate as to completion of production of documents, there exist processes and avenues for seeking relief where appropriately supported by the record. But, absent actual evidence or facts to support the request for relief here, the motion to compel is both premature and proceeds from an unsubstantiated premise.

At the hearing, counsel for Plaintiff represented to the Court that Plaintiff's search for and production of non-privileged documents responsive to Requests for Production ("RFP") Nos. 2, 3, 6, 8, 9, 15, 10, and 7, 20-21, 23, 26-33, and 40 is complete. To be fair to Defendants, Plaintiff's counsel attempted to caveat that representation by noting that Plaintiff may be undertaking further supplemental searches for responsive documents and will produce non-privileged responsive documents prior to the depositions of witnesses from whose files the documents are found. As the Court noted at the hearing, Plaintiff cannot wait until just two days before a deposition before producing more documents, particularly if those documents have already been collected or are being collected in an ongoing process. The Court rejected Plaintiff's argument in the briefing that the Court's prior March 12 Order somehow should be interpreted to allow any Party to wait until 48 hours prior to a deposition before producing documents relevant to the witness being deposed. That

is not what the March 12 Order said in any way (the reference therein was directed to accommodations to be made for third parties subject to a subpoena, not Party discovery). To be clear, the Court does not condone any Party tactically waiting to produce responsive documents at the last minute (or within just 2 days) prior to a deposition of that Party's witness (aka "sandbagging").

Accordingly, Defendants' Motion to Compel with regard to Request for Production ("RFP") Nos. 2, 3, 6, 8, 9, 15, 10, and 7, 20-21, 23, 26-33, and 40, [Dkt. 127], are **DENIED** either because the disputes are moot or the motion is withdrawn based on Plaintiff's representations at the hearing that production is complete as to a specific RFP. To the extent Plaintiff indicated that a further supplemental search for responsive documents and production of the same is being undertaken in response to any of these RFPs, Plaintiff is **ORDERED** to commence any such supplemental production immediately, to continue such productions on a rolling basis starting on the date of this Order (if any documents are collected and ready to be produced) and continuing daily, and to complete all such supplemental productions by April 9, 2026.

The next dispute concerns documents from Flexport's CEO in which he discussed this lawsuit or Freightmate. The Parties apparently reached agreement earlier on the scope of production of these documents, but that agreement apparently fell apart. There is no real dispute that these documents fall within the scope of relevance for purposes of discovery. To the extent there is any burden in searching for such documents, the burden arguments were not supported by declaration to factually support the assertion. Further, the scope of the requests are appropriately limited to electronically stored documents within the CEO's emails, Slack messages, and text messages, because such electronic files are readily searched based on keywords, and thus are proportional as so limited. Accordingly, the Motion to Compel with regard to RFP No. 45 is **GRANTED-IN-PART**. Plaintiff's counsel is **ORDERED** to perform a reasonable, diligent search for responsive documents in the Flexport CEO's Slack messages, emails, and texts for communications (both internal and external) regarding or discussing this action or Freightmate. Plaintiff is **ORDERED** to commence any production of non-privileged documents responsive to RFP No. 45 immediately, to continue such productions on a rolling basis starting on the date of this Order (if any documents are

United States District Court
Northern District of California

collected and ready to be produced) and continuing daily, and to complete all such supplemental productions by April 15, 2026. By April 15, 2026, Plaintiff also **SHALL** also serve a categorial privilege log regarding any withheld documents based on an assertion of privilege with regard to this supplemental production responsive to RFP No. 45.

The Parties' further dispute is similar, in that it concerns documents from Flexport which discuss this lawsuit or Freightmate. Again, there is no real dispute that these documents fall within the scope of relevance for purposes of discovery. The burden and proportionality concerns legitimately raised by Plaintiff in response to RFP 46 as drafted are mitigated by limiting the scope of persons whose files should be searched. At the hearing, Defendants offered to limit the search to electronically stored documents within the emails and Slack messages of certain C-suite members of Flexport (the CFO, CTO, COO, and CMO (or if there is no one with that title, the highest ranked marketing officer regardless of title)). Such electronic files are readily searched based on keywords, and thus are proportional as so limited. The Court found at the hearing that excluding text messages (and thus excluding a need to search the cellphones) of these persons was appropriate in light of the requirement that discovery be proportional to the needs of the case. The Court also made clear at the hearing that any agreements between the Parties on limiting the scope of these requests (or indeed any others at issue in this Order) remain in place and are fully enforceable unless expressly rejected by this Order. Accordingly, the Parties' agreed-upon time period limitation on RFP 46 (for documents dated May 1, 2024 to March 31, 2025) remains in place and is **SO ORDERED**.

For these reasons, the Motion to Compel with regard to RFP 46 is **GRANTED-IN-PART**. Plaintiff's counsel is **ORDERED** to perform a reasonable, diligent search for documents which mention this action or Freightmate in the Slack messages or emails of Flexport's CFO, CTO, COO, and CMO (or the equivalent head of marketing if that person has a different title) which were sent or received between May 1, 2024 and March 31, 2025. Plaintiff is **ORDERED** to commence the production of non-privileged documents responsive to RFP No. 46 immediately, to continue such productions on a rolling basis starting on the date of this Order (if any documents are collected and ready to be produced) and continuing daily, and to complete all such supplemental productions by by April 22, 2026. By April 22, 2026, Plaintiff **SHALL** also serve a categorial privilege log

regarding any withheld documents based on an assertion of privilege with regard to this supplemental production responsive to RFP No. 46.

**Docket 128**

The next issue, regarding Plaintiff's motion to compel further responses to Interrogatories Nos. 8 and 9, is another set of disputes which the Court believes that experienced counsel should have been able to resolve without the need for Court intervention. In these interrogatories, Plaintiff seeks listings or information on a wide range of documents which may have been deleted, lost, or destroyed by Defendants. As drafted, the interrogatories would sweep in a wide range of deleted documents which have nothing to do with this case or the trade secrets asserted in this case. Plaintiff interprets these interrogatories as covering any and all documents which may have been deleted during the time period at issue here, without any meaningful limitation on subject matter. As such, these interrogatories as drafted and as sought to be compelled, seeking information which is outside the scope of relevance for purposes of discovery and, more importantly, even if marginally relevant, are not shown to be proportional to the needs of the case. Plaintiff has information and discovery on numerous documents Defendants have deleted already; insisting on a "full accounting" of every single other document which may have been lost or deleted without significant limitations on scope or technical subject matter is not proportional to the needs of the case.

Accordingly, Plaintiff's Motion to Compel, [Dkt. 128], is **GRANTED-IN-PART** and **DENIED-IN-PART**. With regard to Interrogatory No. 9, in briefing and at the hearing, Defendants represented to the Court that the existing response is complete. As with the dispute discussed above with regard to Docket 127, it became evident at the hearing that Plaintiff distrusts Defendants' prior representations that the interrogatory response is complete. Mere distrust of opposing counsel's representations are not a sufficient basis to show that relief is warranted. If further discovery, such as depositions, demonstrates that an attorney's representations are false, misleading, or inaccurate as to fulsomeness and accurate completion of an interrogatory response, there exist processes and avenues for seeking relief where appropriately supported by the record. But, absent actual evidence or facts to support the request for relief here, the motion to compel is both premature and proceeds from an unsubstantiated premise. Further, here Defendants' counsel offered to perform a further

investigation and inquiry to re-confirm the response to this interrogatory.

Accordingly, Defendants (and their counsel) are **ORDERED** to perform a reasonable, diligent further investigation and inquiry of persons knowledgeable about the subject matter of Interrogatory No. 9. Following that supplemental investigation and inquiry, Defendants are **ORDERED** to serve a Supplemental Response to Interrogatory No. 9 by April 9, 2026, in which Defendants **SHALL** attest to having completed the further inquiry pursuant to the Court's Order and confirm in a verified response that any such Supplemental Response (combined with the prior responses) is complete.

As discussed above, Plaintiff's insistence that the interrogatory cover and "account for" every single deletion of a document during product development, including documents deleted from the founders' Google Workspaces, a testing drive, multiple "early" email accounts, and "doc_test" account, and various early source code platforms (such as Python files and Figma files), is so overbroad as to sweep in a potentially large universe of documents now shown to be relevant within the scope of discovery and is thus also not proportional to the needs of the case. As discussed with regard to Docket 131, Defendant has already made its entire Github repository available for inspection by Plaintiff's expert and, as noted in this Order with regard to other disputes, Defendants offered to and the Court **ORDERS** Defendants to make their Google Cloud Platform ("GCP") and OpenAI accounts open on a read-only basis to Plaintiff. Further, Defendants have already responded to Interrogatory No. 8 and have offered to provide further supplemental responses to cover deleted documents in other sources. *See* Dkt. 128 at 5 (Defendants' compromise offer).

Accordingly, regarding the dispute as to Interrogatory No. 8, Defendants are **ORDERED** to serve a Supplemental Response to this interrogatory to include deletion information for development-related documents from the Freightmate founders' laptops and Company email accounts; Asana; Teams; Slack; Babble; and Github. As **ORDERED** in connection with Dkt. 131, Defendants **SHALL** provide Plaintiff with read-only access to the GCP account (or accounts, if there are multiple Freightmate GCP accounts). Further, as offered by Defendants, Defendants are **ORDERED** to respond to the "bonus" interrogatory served on March 12, to the extent not already responded to, and if already responded to, **SHALL** serve by April 9, 2026 a Supplemental Response

after the further investigation and inquiry **ORDERED** herein.  *See* Dkt. 128 at 5 (Defendants' compromise offered to the Court and adopted herein).

**Docket 131**

This is yet another discovery dispute which the Court believes competent, experience counsel should have been able to resolve without the need for Court intervention.  Here, Plaintiff seeks access to Defendants' GCP and OpenAI accounts, and further request production of certain Jira tickets.  The GCP and OpenAI issues are substantially similar to the disputes raised in Docket 126 above.  As noted above, Defendants previously offered to make its GCP and OpenAI accounts open on a read-only basis to Plaintiff.  Plaintiff insisted that Defendants "confirm" that Defendants would be providing ten items of specific information (listed in the Parties' correspondence on this dispute) and appear to be simply mistrusting Defendants' representations in this regard.  As discussed above, mere distrust is not alone a sufficient basis to seek relief from the Court and if taken to an extreme results in an inefficient and wasteful expenditure of Party and Court resources.

Plaintiff's Motion to Compel, [Dkt. 131], is **GRANTED-IN-PART** and **DENIED-IN-PART**.  As Defendants offered in briefing, Defendants are **ORDERED** to provide Plaintiff view-only access to Defendants' GCP and OpenAI accounts by April 10, 2026.  Per Defendants' representations at the hearing, either this access to the accounts shall operate to provide Plaintiff with the ten items of information listed in the Parties' correspondence or, to the extent that such account access does not provide such information, Defendants are **ORDERED** to produce such information by April 10, 2026.

With regard to the Jira tickets, Plaintiff demands the production of over 400 Jira tickets, most of which post-date the source code at issue in this case.  There was apparently one Jira ticket from July 2025 which was referenced in a code commit dated June 30, 2024.  Defendants argue that this was a mistake; Plaintiff argues that this entitles them to production of all Jira tickets dated up to July 2025, even though the code at issue here has an end date of October 2024.  Plaintiff has failed to demonstrate why any Jira tickets dated after October 2024 (which were not appended to or referenced in a code commit dated prior to October 2024) are within the scope of relevance for purposes of discovery.  Further, the overbreadth of the request renders the request non-proportional

11

to the needs of the case. Finally, Plaintiff does not explain why Defendants' offer to produce any Jira tickets appended to or referenced by a code commit where that code commit is dated between June to October 2024 is insufficient or inappropriate.

Accordingly, by April 10, 2026, Defendants **SHALL** produce all Jira tickets (regardless of the date of the Jira ticket) referenced in any code commits where such code commits are dated between June 30, 2024 and October 18, 2024.

At the hearing, Plaintiff's counsel repeatedly predicted that the Parties would return to this Court to resolve further disputes about later-dated Jira tickets. Those statements implicitly ignore the Court's admonitions about the need for counsel here (especially lead trial counsel) to work diligently to resolve disputes through compromise and negotiation. Accordingly, the Parties **SHALL** work diligently and cooperatively on any further disputes regarding Jira tickets promptly and use their best efforts to resolve, keeping in mind the Court's guidance at the hearing regarding relevance and proportionality.

**CONCLUSION**

Based on the briefing as well as the discussion at the April 1 hearing, the Court is not convinced that counsel (including lead trial counsel who are obligated to directly and personally meet and confer with each other prior to presenting a dispute to this Court under the Court's Standing Discovery Order) engaged in the kind of diligent, transparent, and collaborative efforts to meet and confer in good faith as expected by the Court under the applicable legal standards. The Court is disappointed that the Parties could not work out compromises to resolve most, if not all, of these disputes, given the state of discussions. Sophisticated, experienced lawyers should know better how to resolve discovery disputes such as these, without the need for Court intervention.

Overreaching on the one hand, or intransigence on the other, are not consistent with the letter or spirit of Federal Rule of Civil Procedure 26 or the Court's Standing Discovery Order. *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ("It is expected that discovery will be effectively managed by the parties in many cases."). Further, the Parties and their counsel are reminded of the mandate of Federal Rule of Civil Procedure 1 that the Rules "should be ... employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action

and proceeding." *See also* Fed. R. Civ. P. 1 advisory committee's note to 2015 amendment ("Rule 1 is amended to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way. Most lawyers and parties cooperate to achieve these ends.").

The Court further admonishes the Parties that the meet and confer of lead counsel required by the Standing Discovery Order contemplates that lead trial counsel **SHALL** actively participate in, act as primary spokesperson for their client(s), and lead such meet and confers for their side.  In the long experience of the undersigned, senior lawyers should know better how to reach negotiated resolutions of discovery disputes.

In light of the record presented here, counsel for all Parties are further admonished that the Court may consider imposing additional discovery management procedures, within the Court's discretion to manage discovery. If counsel for the Parties demonstrate further inability to reach reasonable negotiated resolutions of discovery disputes going forward, the Court may consider modifying the meet and confer requirements in the Court's Standing Order. For example, the Court may consider requiring all meet and confers (including meet and confers of lead trial counsel) to be held in-person regardless of location of counsel's offices, requiring the attendance of clients (including chief legal counsel or other officers) at all meet and confers, requiring meet and confers take place in Courtroom F on the 15th Floor of this Court in San Francisco at specific times set by the Court, requiring a court reported be hired jointly by the Parties to transcribe all meet and confers so that the Court may be provided with transcripts of meet and confers upon demand, other modifications as the Court in its discretion deems necessary as a matter of discovery case management, and/or (should they become necessary) any potential appropriate sanctions (including discovery sanctions).

For all the reasons discussed herein, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the motions to compel further discovery as raised in the Parties' Letter Briefs.

This Order **RESOLVES** Dkts. 126, 127, 128, and 131.

United States District Court
Northern District of California

13

**IT IS SO ORDERED.**

Dated: April 6, 2026

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California