**SPENCER FANE LLP**
John V. Picone III (State Bar No. 187226)
jpicone@spencerfane.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@spencerfane.com
Jennifer S. Coleman (State Bar No. 213210)
jcoleman@spencerfane.com
Jing H. Cherng (State Bar No. 265017)
gcherng@spencerfane.com
225 West Santa Clara Street, Suite 1500
San Jose, CA 95113
Telephone: (408) 286-5100
Facsimile:  (408) 286-5722

Attorneys for Plaintiff
FLEXPORT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLEXPORT, INC.,<br><br>                    Plaintiff,<br><br>       v.<br><br>FREIGHTMATE AI, INC.;<br>YINGWEI (JASON) ZHAO; and<br>BRYAN LACAILLADE,<br><br>                    Defendants. | Case No.: 3:25-cv-02500-RFL-PHK<br><br>**FLEXPORT'S NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION TO MODIFY CASE SCHEDULE**<br><br>**[PUBLIC REDACTED VERSION]**<br><br>Date:          TBD<br>Time:          TBD<br>Courtroom:  15 – 18th Floor<br>Judge:         Hon. Rita F. Lin<br><br>Action Filed:    March 12, 2025 |

## <u>NOTICE OF EMERGENCY MOTION AND EMERGENCY MOTION</u>

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as soon as the matter may be heard before the Honorable Rita F. Lin, United States District Court Judge, in Courtroom 15 – 18th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Plaintiff Flexport, Inc. ("Flexport"), by and through their attorneys of record, hereby gives notice that it is moving for an order on an emergency basis to modify the case current schedule (as previously amended) pursuant to Fed. R. Civ. P. 16(b) as follows:

| Event | Original Deadline | 12/25 Modification | 3/26 Modification | Emergency Proposal |
|---|---|---|---|---|
| Close of Fact Discovery | Jan. 16, 2026 | Apr. 17, 2026 | May 1, 2026 | May 1, 2026 |
| Last Day to File Motions to Compel (GCP/OpenAI & Download/Deletion) | | | | May 15, 2026 |
| Last Day to File Rule 37(e) Motion | | | | June 5, 2026 |
| Designation of Experts | Jan. 23, 2026 | Apr. 24, 2026 | May 8, 2026 | June 22, 2026 |
| Rebuttal Expert Reports | Feb. 20, 2026 | May 22, 2026 | June 5, 2026 | July 20, 2026 |
| Close of Expert Discovery | Mar. 3, 2026 | June 1, 2026 | June 15, 2026 | July 30, 2026 |
| Dispositive Motions Filed | Mar. 10, 2026 | June 8, 2026 | June 22, 2026 | Aug. 6, 2026 |
| Dispositive Motions Hearing | Apr. 14, 2026 | July 14, 2026, 10:00AM | July 28, 2026, 10:00AM | Sept. 11, 2026, 10:00AM |
| Final Pretrial Conference | June 15, 2026 | Sept. 15, 2026, 2:30PM | Sept. 15, 2026, 2:30PM | Oct. 30, 2026, 2:30PM |
| Jury Selection/Trial | July 20, 2026 | Oct. 19, 2026 9:00AM | Oct. 19, 2026, 9:00AM | Dec. 3, 2026, 9:00AM |

This motion is made on the grounds that Flexport has diligently sought critical discovery relating to Defendants' use of Google Cloud Platform and OpenAI systems to store, process, and extract data from Flexport proprietary shipping documents, and to Defendants' downloading, deletion, and failure to preserve Flexport's confidential Flex ID files, including related logs, metadata, and evidence bearing on spoliation.

If the Court denies Flexport's request to continue the discovery motion and expert disclosure deadlines, Flexport requests in the alternative that the Court add a deadline to the current schedule to allow Flexport to file its Rule 37(e) motion by June 5, 2026.

This Motion is based on this Notice of Motion, the included Memorandum of Points and Authorities, the Declaration of Gene Cherng ("Cherng Decl.") and the Declaration of Deiter Hotz ("Hotz Decl.") filed concurrently herewith, and all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court, including oral argument, prior to its ruling.

Pursuant to this Court's Civil Standing Order, Flexport states that it notified counsel for Defendants on at 7:39 a.m. PDT on April 28, 2026 of its intent to file this emergency motion. Cherng Decl., Ex. 1. The day before, April 27, 2026, Flexport held a lead counsel, in-person meet and confer with Freightmate under Judge Kang's Discovery Standing Order in an attempt to resolve the discovery disputes that, in part, form the basis of motion. Flexport was unable to resolve these disputes, including (1) whether freightmate would provide access to its GCP and OpenAI platforms as ordered by Judge Kang, including access to GCP and OpenAI usage and admin logs, generally, and produce responsive ESI exported from GCP and OpenAI, and (3) whether freightmate would provide a full response to Interrogatory 9 and withdraw its privilege objection to whether an investigation was conducted into the Flexport files downloaded prior to being deleted on July 1, 2024. During that meet and confer, counsel for Freightmate and Lacaillade indicated that they would oppose any effort to continue the case schedule.

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

EMERGENCY MOTION TO MODIFY CASE SCHEDULE          CASE NO. 3:25-cv-02500-RFL-PHK

# **TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ....................................................................................................1

II.     Current Case Schedule and Deadlines. ...................................................................2

III.    Statement of Issues To BE DECIDED...................................................................2

IV.     STATEMENT OF FACTS ......................................................................................3

        A.      Flexport Diligently Sought Discovery About Freightmate's Use of
                GCP.                                                                      3

                1.      Freightmate Actively Concealed Its GCP Account Through
                        February 2026                                                     3

                2.      February 24, 2026: Flexport First Learns of Freightmate's
                        GCP Account                                                       4

                3.      March 3, 2026: Flexport's First Post-Inspection Demand for
                        GCP Materials                                                     5

                4.      March 2026: Freightmate Refuses to Confirm GCP and
                        OpenAI Preservation                                               5

                5.      Late March 2026: Joint Letter and Freightmate's
                        Admissions                                                        6

                6.      The April 1, 2026 Discovery Hearing: Freightmate's
                        Representations to the Court Contradict Its Prior Meet and
                        Confer Positions                                                  6

        B.      Freightmate's Interference with Flexport's Subpoena to OpenAI            7

        C.      Freightmate's Interference with Flexport's Subpoena of Google            8

        D.      Freightmate Concealed Evidence on Whether it Deleted Flexport's
                Confidential and Propriety Flex Files                                     9

        E.      Founder Depositions Confirm the Absence of Preservation and
                Investigation                                                            9

V.      LEGAL STANDARD..............................................................................................11

VI.     GOOD CAUSE EXISTS TO MODIFY THE CASE SCHEDULE ..............................12

        A.      Flexport Diligently Sought Discovery on Docmate Source Code           12

        B.      Flexport Was Diligent in Seeking Discovery from Open AI and
                Google                                                                  13

        C.      Flexport Was Diligent in Seeking Discovery on its Stolen Flex ID
                Files                                                                   13

D.    Flexport Was Diligent in Filing the Present Motion ........................ 14

E.    Flexport's Proposed Modifications Will Not Unduly Prejudice Defendants ............................................................................................ 15

VII.    CONCLUSION .................................................................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpha and Omega Semiconductor Limited v. Force MOS Technology Co., Ltd.*,
   No. 22-CV-05448-PCP, 2025 WL 1894838, . (N.D. Cal. July 9, 2025) .......................... 11, 12

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000)....................................................................................... 11

*Little v. City of Seattle*,
   863 F.2d 681 (9th Cir. 1988)......................................................................................... 11

*Zivkovic v. S. Cal. Edison Co.*,
   302 F.3d 1080 (9th Cir. 2002)....................................................................................... 11

**Other Authorities**

Fed.R.  Civ. P. 16(b) ......................................................................................................... 11

Fed. R. Civ. P. 16(b)(4)................................................................................................... 2, 11

Fed. R. Civ. P. 16(e)......................................................................................................... 11

Fed. R. Civ. P. 30(b)(6).................................................................................................. 10, 14

Fed. R. Civ. P. 37(e)...................................................................................................... 2, 14, 15

Fed. R. Civ. P. 45 ........................................................................................................... 7, 8

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

iii

## I.    INTRODUCTION

Flexport is seeking this emergency motion regarding the case schedule to remedy the persistent discovery obstruction it has encountered through Defendants freightmate.ai, Inc., and founders, Defendants Bryan Lacaillade and Jason Zhao, and third parties OpenAI, Inc., and Google, Inc., that has prevented Flexport from obtaining critical and material evidence on what documents and information Freightmate stored and processed using Google Cloud Platforms ("GCP")[1] and OpenAI, and when.

From the outset of the case, Flexport has sought a comprehensive disclosure from Defendants of every system, account and device where its proprietary information was accessed, stored, processed, or transmitted.  Despite this, Flexport did not learn until after February 24, 2026 that, contrary to Defendants' sworn narratives, deposition testimony, and written discovery responses Freightmate had been using ███████████████████████████ ████████████████████████████████████████████ ████████████████████████ In violation of a Court order, Freightmate still refuses to produce or allow access to information showing what Flexport files Freightmate ran through this architecture, and when. Freightmate would not even confirm whether such information still exists.

Freightmate also has obstructed discovery into Defendants' admitted deletion of thousands of Flexport shipping documents on July 1, 2024. In spite of an order compelling them to account for all copies of those deleted documents, Freightmate has improperly asserted privilege over the binary fact of whether it investigated where its founders downloaded Flexport proprietary files before removing them from Freightmate's Google drive to purportedly set up a "clean room" to develop Docmate, the accused product that Flexport contends incorporated its trade secrets.

The emergency relief sought here is necessitated by Freightmate's discovery misconduct. Flexport was only able to uncover critical facts late in the discovery period, and only then in a piecemeal manner.  Even then, contradictions remained between Defendants' narratives, their source-code inspections, and the testimony of Freightmate's founders and technical personnel.

---

[1] Google Cloud Platforms is a service offered by Google that includes, storage, compute, AI, and database services. It is separate from Google Workspaces, which encompasses well-known services such as Google Drive and Gmail. Declaration of Dieter Hotz ("Hotz Decl."), ¶ 12.

SPENCER FANE LLP
ATTORNEYS AT LAW
SAN JOSE

Defendants' failure to make complete and timely disclosures, combined with their refusal to either produce or confirm the loss of data subject to preservation, has materially impeded Flexport's ability to obtain discoverable information to which it is entitled and needs for its experts to prepare their reports, which are currently due on May 8, 2026.

Flexport respectfully requests that the Court modify the scheduling order by approximately forty-five (45) days to allow Flexport to complete outstanding discovery regarding (1) files, data, and logs from GCP and OpenAI accounts, including whether Freightmate failed to preserve, or worse, actively deleted, files, data, and logs from its GCP and OpenAI accounts, and (2) the location of the downloaded deleted files listed in FREIGHT041366, and Freightmate's investigation (if any) into the downloading Flexport's proprietary Flex ID shipping documents[2] prior to their deletion on July 1, 2024. Such discovery is critical and necessary for its experts to provide fulsome opinions. Additionally, Flexport also requests that the Court add a deadline for Flexport to file a motion for sanctions under Rule 37(e) due to the growing evidence of Defendants' failure to preserve and active deletion of documents and data while under a reasonable anticipation of litigation.

## II.    CURRENT CASE SCHEDULE AND DEADLINES.

The following deadlines remain in the current case schedule: (1) Close of Fact Discovery on May 1, 2026; (2) Motions to Compel to be Filed by May 8, 2026; (3) Designation of Experts by May 8, 2026; (4) Expert Rebuttal Reports due by June 5, 2026; (5) Close of Expert Discovery on June 15, 2026; (6) Dispositive Motions to be filed by June 22, 2026; (7) Dispositive Motions to be heard on July 28, 2026; (8) Final Pretrial Conference set for 2:30PM on September 15, 2026; and (9) Jury Selection/Jury Trial set for October 19, 2026. ECF No. 125.

## III.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether good cause exists under F. R. Civ. P. 16(b)(4) to modify the case schedule and extend the discovery motion deadline and expert report deadlines due to Defendants'

---

[2] FlexID files are the Flexport shipping documents that it believes Defendants used to accelerate their rapid development of Docmate. Defendant Zhao admitted to downloading approximately 2000 Flexport FlexID documents from Flexport while still employed and the surreptitiously uploading them to Freightmate's Google workspace.

discovery obstruction and third-party noncompliance preventing Flexport from obtaining discoverable information central to its claims.

2.    Whether Flexport has acted diligently in pursuing the discovery at issue and in seeking relief once it became clear that it could not reasonably meet the deadlines set by the existing schedule.

3.    Whether the Court should enter Flexport's proposed case schedule.

## IV.    STATEMENT OF FACTS

### A. Flexport Diligently Sought Discovery About Freightmate's Use of GCP.

#### 1.    Freightmate Actively Concealed Its GCP Account Through February 2026

On April 2, 2025, in lieu of a preliminary injunction, the parties entered into a Stipulation Order Regarding Flexport Proprietary Information and Source Code requiring Defendants to disclose "any non-Flexport locations in which any [Flexport Proprietary Information] is or was stored at any time." ECF 24. The Court entered the Stipulation on April 3, 2025. *Id.* Freightmate's April 18, 2025 supplemental narrative identified eight storage locations—a Google Drive, two email accounts, three personal laptops, and two sent folders, but did not disclose its GCP or OpenAI instances.

On June 16, 2025, Freightmate's CTO Rishab Gadroo appeared for a 30(b)(6) deposition on its electronic information systems where he testified that Freightmate had provided an accurate list (FREIGHT000017) of *all* accounts registered under Freightmate's domain. Cherng Decl., Ex. 4 at 35:1-18; Ex. 5 (FREIGHT000017). However, Freightmate did not list its GCP account, and Gadroo failed to disclose that Freightmate maintained a GCP account separate from its Google Workspace account. *See id.*

On May 16, 2025, Flexport propounded an interrogatory seeking the identification of *any* non-Flexport locations or media capable of storing electronic data that were accessible to Freightmate at any time after January 1, 2024, including without limitation cloud or other Internet storage accounts. Freightmate served its initial response on June 16, 2025, and after several rounds of meet and confer over the deficiencies in those responses served supplemental verified responses on August 25, 2025 and October 7, 2025. They identified Freightmate's ███

3

████████, but failed to disclose the separate GCP account Freightmate ████████ ████████████████████████████████████████████████████████. *See* ECF 99-10 (filed under seal) at 3:19-9:19.

On November 26, 2025, Flexport propounded requests for production seeking, *inter alia,* source code commit histories, audit and development logs and similar files relating to Docmate and its development. ECF 148-11 (RFP Nos. 78-83). After requesting an extension, Freightmate served responses on January 16, 2026 claiming it had "already made the full [source code] commit history available for inspection" and promising only to "investigate" whether the requested logs existed. ECF 148-12 at 1 (RFP Nos. 78-83).

On February 6, 2026, Flexport's counsel inspected the source code Freightmate had represented as containing the complete commit history, only to find it contained no such histories, logs, or Git metadata. Cherng Decl ¶ 4. Flexport immediately notified Freightmate regarding the absence of the requested files and logs. ECF 148-13. On February 13, 2026, Freightmate finally acknowledged its omission. ECF 148-14. Freightmate conceded that no commit history or metadata had actually been provided and agreed to provide the additional files requested by Flexport. *Id.* This admission made it clear that its prior insistence that the produced code was "complete" was simply not true.

### 2.    February 24, 2026: Flexport First Learns of Freightmate's GCP Account

On February 23 and 24, 2026, Flexport's expert was able to resume its inspection of Freightmate's June/July 2024 GitHub source code commits. Flexport discovered for the first time that Freightmate's codebase for the accused Docmate ████████████████████████ ████████████████████████. Hotz Decl., ¶ 20–22. Instead, the actual ██████ document processing, which is where Flexport's trade secrets would be most valuable and used by Freightmate, ████████████████████████████████████████ ████████████ *Id.* Furthermore, it became apparent that Freightmate had been deceiving Flexport by framing the Github source code as the entirety of the product, concealing that this source code was ████████████████████████████████████████ ████. Hotz Decl., ¶ 27.

### 3. March 3, 2026: Flexport's First Post-Inspection Demand for GCP Materials

Immediately following the February 24 inspection, Flexport notified Defendants that the disclosed source code was "just the tip of the proverbial iceberg." ECF 148-16. Flexport demanded inspection of the ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ *Id.* This information would show what shipping documents Freightmate used to test its ███████████████████████████████ ████████ Hotz Decl. ¶ 12–15. Flexport also demanded confirmation that Freightmate had preserved GCP audit and administrative logs from the inception of its cloud environment through October 10, 2024. ECF 148-16. This was the first time Freightmate was confronted with what appeared to be the intentional concealment of GCP usage.

### 4. March 2026: Freightmate Refuses to Confirm GCP and OpenAI Preservation

In March 2026, Flexport repeatedly asked Freightmate a threshold, binary question—whether ███████████████████ referenced by the June/July 2024 GitHub source code commits still existed or had been preserved—but Freightmate refused to answer, instead asserting that Flexport's expert did not need ████████████ to understand an accused product Defendants claimed was rapidly developed. Cherng Decl., Ex. 7. On March 13, 2026, Flexport sent a detailed letter identifying ten categories of responsive ████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████—that would show what documents Freightmate stored, digitized, and processed through its ████████████, and again demanded confirmation of existence and preservation. Cherng Decl. Ex. 6.  On March 18, Freightmate again refused to provide that confirmation and offered only a constrained inspection limited to deployment artifacts, while expressly excluding ████████████████████████████████████— information necessary to determine how documents were processed and whether Flexport's materials were used. *Id*. Defendants then mischaracterized Flexport's requests for ████████

SPENCER FANE LLP
ATTORNEYS AT LAW
SANJOSE

as "new," despite Flexport having sought AI/LLM discovery throughout the case, prompting a March 21 response explaining that categories reflecting what was merely deployed were structurally incapable of answering how documents were actually used. *Id*. By March 23–24, after at least five requests, Freightmate still refused to state whether any June/July 2024 GCP or OpenAI materials existed or were preserved. Cherng Decl., Ex. 7 at 1. True to form, no answer from Freightmate was forthcoming.

### 5.    Late March 2026: Joint Letter and Freightmate's Admissions

On March 27, 2026, the parties filed their joint letter brief over the GCP/Open AI dispute. ECF 131. Remarkably, Freightmate admitted that its GitHub repository changed during the litigation, acknowledging that its code was in "active development" and that the initial June 30, 2024 commit was later altered in July 2025. *Id.* By Freightmate's own account, the repository it produced to Flexport was not properly preserved as it existed during the critical June/July 2024 development period. *Id.* Freightmate also confirmed it deleted the proprietary Flexport shipping documents stolen by Zhao on July 1, 2024 (after its initial Github code commit) to create a purported "clean room" and intentionally deleting additional Docmate development-related documents in September 2024 *after receiving a notice letter from Flexport's counsel.  Id.* Importantly, Freightmate did not confirm whether any contemporaneous GitHub snapshot, cloud logs, or audit artifacts were preserved to capture the state of development before or after those deletions. It also failed to confirm whether responsive GCP or OpenAI data from the June/July 2024 timeframe had been deleted, expired, overwritten, or retained.

### 6.    The April 1, 2026 Discovery Hearing: Freightmate's Representations to the Court Contradict Its Prior Meet and Confer Positions

At the April 1, 2026 hearing, Freightmate repeatedly represented to Judge Kang that it had "said yes to every single request" concerning GCP and OpenAI and was offering "full view-only access to the entire GCP and OpenAI accounts." ECF 142 at 7:2-11:11. As reflected by the record leading up to the hearing, this was not true. However, Judge Kang ordered Freightmate to produce or make available its GCP and OpenAI platforms by April 10, 2026. ECF 141 at 11:13-20.

On April 13, 2026, Flexport's counsel and expert inspected Freightmate's GCP and

OpenAI platforms —and encountered the same restrictions Freightmate had maintained before the April 1 hearing: no audit logs, no runtime logs, no admin logs, no access to the database. Hotz Decl. ¶ 29–32. This omission was consequential because the admin and audit logs would show what retention periods applied and whether Freightmate had changed them after reasonably anticipating litigation with Flexport. Hotz Decl. ¶ 12–15, 30–32.

On April 14, 2026, Freightmate admitted for the first time that OpenAI API call logs, responses, chats, and completions likely no longer existed due to OpenAI's "default retention period." Cherng Decl. Ex. 8. During the continued inspection on April 15, 2026, Flexport's expert observed the strange presence of *thousands* of GPT-4o prompts/completions on Freightmate's account occurring only hours earlier, between 3 and 4 a.m. Pacific Time in the early morning before Flexport's expert witness arrived for the inspection on April 15, 2026, consisting largely of unproductive prompts, including recipes for scrambled eggs, pasta recipes, and dozens of identical duplicate prompts with no apparent business purpose. Hotz Decl., ¶ 35–37. These throwaway prompts appeared designed to flood the completion history and obfuscate Defendants' prior interactions with the model during the critical early development period.[3] *Id.* ¶ 38.

**B. Freightmate's Interference with Flexport's Subpoena to OpenAI**

On March 12, 2026, Flexport served a Rule 45 subpoena on OpenAI OpCo, LLC. Cherng Decl. Ex. 9. This subpoena sought server-side records, including prompts, outputs, deletion events, account metadata, IP addresses, and API usage logs associated with Freightmate-related accounts—information uniquely within OpenAI's possession due to Freightmate's repeated stonewalling and refusal to confirm the preservation of its own histories. *Id.*

On March 27, OpenAI objected that the materials were "readily obtainable from the defendants." Cherng Decl., Ex. 10. On March 30, Flexport responded that Defendants had never confirmed possession or preservation of their OpenAI records and had made admissions suggesting deletion, making OpenAI's server-side records potentially the only surviving evidence of Defendants' ChatGPT usage. Cherng Decl., Ex. 11.

---

[3] During Mr. Gadroo's deposition on April 21, 2026, Gadroo admitted that neither he, nor anyone at Freightmate had provided Freightmate's GPT-4o's access key to anyone other than Freightmate contractors/employees in India. Cherng, Ex. 22 at 177:21-178:2; 181:16-21.

SPENCER FANE LLP
ATTORNEYS AT LAW
SANJOSE

EMERGENCY MOTION TO MODIFY CASE SCHEDULE                    CASE NO. 3:25-cv-02500-RFL-PHK

Rather than allowing OpenAI to assess the subpoena independently, Freightmate interfered with Flexport's attempt to obtain OpenAI's compliance by communicated with OpenAI's counsel regarding objections and insisted on participating in all meet-and-confer discussions to prevent "one-sided" representations. Cherng Decl., Ex. 12.  Flexport objected that Freightmate lacked standing absent any claim of privilege or personal right and that its communications risked improperly influencing OpenAI's response. *Id.* Freightmate's continued interference—echoing OpenAI's objections and steering OpenAI toward delay pending further Court orders—has prevented Flexport from even obtaining confirmation of whether the requested records even exist.

**C. Freightmate's Interference with Flexport's Subpoena of Google**

On March 12, 2026, Flexport served a Rule 45 subpoena on Google seeking GCP audit and admin logs, Workspace access and deletion logs, and AI-service metadata relating to Freightmate accounts due Freightmate's continued stonewalling on the GCP.  Cherng Decl. Ex. 13.  On March 24, Google sent what appeared to be an automated response with no-applicable boilerplate objections that did not identify a single request by number, did not state whether responsive records exist, and committed only to potentially producing non-content data "to the extent it exists."  Cherng Decl. Ex. 14.   On March 31, Flexport advised Google that this response failed Rule 45 compliance.  Cherng Decl. Ex. 15.

As with OpenAI, Freightmate inserted itself into Flexport's effort to secure Google's compliance—communicating directly with Google, misrepresenting that Flexport's requests were outside prior Court orders, and seeking to participate in any meet-and-confer despite having no privilege or personal right in Google's infrastructure records. Cherng Decl. Ex. 16.  Flexport advised that Freightmate lacked standing to object to or interfere with a third-party subpoena. Cherng Decl. Ex. 17.  Google's resulting noncommittal posture has left Flexport unable to confirm the existence or preservation of critical third-party records within the existing discovery schedule, necessitating the relief sought here.

/ / /

/ / /

**D. Freightmate Concealed Evidence on Whether it Deleted Flexport's Confidential and Propriety Flex Files**

On or about October 1, 2025, Flexport propounded interrogatories seeking to test FM's claim that Lacaillade instructed Zhao to delete Flexport's proprietary Flex ID files on July 1, 2024 to purportedly create a "clean room" and did not use those documents to develop Docmate. Cherng Decl. Ex. 18.    Interrogatory No. 9 asked FM to identify all copies of deleted Flexport Proprietary Information, which by definition includes the Flex ID files, "the reason(s) those copies cannot be produced [and] the date(s) of and circumstances surrounding any destruction or loss" of those copies.  Freightmate served its initial response on October 31, 2025, which identified Freightmate's Google drive activity log (FREIGHT041366). Cherng Decl. Ex. 19 .This log shows thousands of Flex ID files Freightmate claims were deleted by Zhao on July 1, 2024, but does not account for the multiple copies of these files he downloaded before he deleted them. *Id.*

Flexport spent months meeting and conferring with Defendants over various discovery disputes, including its response to Interrogatory No. 9.   Freightmate finally agreed to serve supplemental responses and did so on February 23, 2026, but still failed to account for the disposition of the copies of the Flex ID files downloaded by Zhao.  Cherng Decl. Ex. 20.  After engaging in a lead counsel meet and confer, Flexport moved to compel on March 25, 2026.  ECF 128.  At the April 1 hearing, FM represented to the Court that it had conducted a reasonable diligent search and had no information as to what happened to those downloads.  ECF 142 at 110:1-115:22. Despite those representations, the Court ordered FM to "perform a reasonable, diligent further investigation and inquiry of persons knowledgeable about the subject matter of Interrogatory No. 9" and provide a further verified response.  ECF 141 at 9:18-10:8.

On April 9, 2026, FM served its second supplemental response that yet again failed to account for the downloaded Flex ID files, but claimed that "freightmate and its counsel have conducted and completed a reasonable, diligent further investigation and inquiry of persons knowledgeable about the subject matter of this interrogatory in accordance with the Court's April 6, 2026 Order…." Cherng Decl. Ex. 21 at 25:25-27:14.

**E. Founder Depositions Confirm the Absence of Preservation and Investigation**

SPENCER FANE LLP
ATTORNEYS AT LAW
SANJOSE

On April 21, 2026, Flexport deposed Freightmate's CTO and co-founder, Rishab Gadroo. Mr. Gadroo admitted that Freightmate's core document-processing development in 2024 occurred without centralized preservation and largely outside the systems previously disclosed. Cherng Decl. Ex. 22 at 40:15-22; 43:12-44:8; 55:1-17. Gadroo confirmed that substantial code and infrastructure were ██████████████████████ *Id.* at 64:21-65:1, 67:4-15, 69:9-23. He also confirmed that OpenAI API usage logs were not retained under default settings during 2024 and were only enabled for preservation in mid-2025; *Id.* at 123:13–126:6, and ███████████████████ Mr. Gadroo further admitted that ████████████████████████████████████████████████████ *Id.* at 152:1-10, 156:19-21.

On April 23, 2026, Flexport deposed Defendant Jason Zhao, Freightmate's COO, and co-founder. The Google Drive activity log (FREIGHT041366) show that immediately before the July 1, 2024 deletions, individual Flexport Flex ID files were downloaded from ███████ to an unknown location) up to four separate times minutes before deletion. Cherng Decl. Ex. 23 at 8:23-12:9. Zhao confirmed ███████████████████████████████████████████████████████ *Id.* at 12:11-18:24.

On April 24, 2026, Flexport took the deposition of FM's Rule 30(b)(6) witness, Lacaillade, who was designated to testify on topics including the transfer of any Flexport data to Freightmate's data sources, devices, information and accounts and the deletion of such data therefrom. When questioned about ██████████████████████████████████████████████ Cherng Decl. Ex. 24 at 126:1-127:9. Similarly, when asked if FM knew where Flex ID

SPENCER FANE LLP
ATTORNEYS AT LAW
SANJOSE

files were downloaded by Zhao prior to being deleted on July 1 were presently, Lacaillade testified that FM did not know. *Id*. at 127:10-18, 132:1-8. This testimony contradicted FM's aforementioned responses to Interrogatory No. 9, which claimed that FM conducted a reasonable and diligent investigation as to disposition of those downloads. When Flexport asked the narrow factual question of whether Freightmate took any steps to determine where the downloaded documents went, Freightmate's counsel repeatedly instructed the witness not to answer—asserting attorney-client privilege not over any communication or legal advice, but over the binary fact of whether an investigation occurred. Cherng Decl. Ex. 24 at 127:20-129:10.

Freightmate's improper assertion of privilege and refusal to answer foundational questions strongly suggests that it did investigate the downloaded Flex ID files and knows exactly what happened to them. It further suggests that FM chose to omit the results of that investigation in its Court-ordered supplemental response because it substantially undermines Defendants' independent development defense. Consequently, Flexport must now seek further relief from Judge Kang to address Freightmate's violation of his April 6 Order and improper assertion of the attorney-client privilege over basic factual questions.

## V.    **LEGAL STANDARD**

District courts have "wide discretion in controlling discovery." *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). The scheduling order "control[s] the subsequent course of the action" unless modified by the court. Fed. R. Civ. P. 16(e). Under Rule 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Rule 16(b)'s "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). A party shows good cause by demonstrating that it could not meet the specified deadlines even with the exercise of due diligence. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). Good cause exists where a party files a motion to amend the case schedule after obtaining relevant deposition testimony. *Alpha and Omega Semiconductor Limited v. Force MOS Technology Co., Ltd.*, No. 22-CV-05448-PCP, 2025 WL 1894838, at *3. (N.D. Cal. July 9, 2025).

## VI.    GOOD CAUSE EXISTS TO MODIFY THE CASE SCHEDULE

### A. Flexport Diligently Sought Discovery on Docmate Source Code

Flexport has diligently pursued discovery on the interworking of the accused Docmate product, and in particular its use of cloud infrastructure and third party AI services. At the onset of discovery, Flexport requested that Freightmate identify and produce all systems and locations in which Flexport Flex ID files may have been stored, processed, or transmitted in the development of Docmate. Beginning in April 2025, Freightmate repeatedly represented through sworn narratives, interrogatory responses that its GitHub repository reflected the operative source code for Docmate. As detailed above, Freightmate intentionally concealed the existence of the GCP and OpenAI accounts that ███████████████████████████████ These were the actual systems that Flexport's trade secrets would be most valuable to Freightmate and where the evidence of Defendants' misappropriation of the Flex ID files in developing Docmate would reside. Had the Court not granted Flexport's original request to extend the trial schedule, Freightmate would have succeeded in its subterfuge.

When Flexport finally learned of the existence of Freightmate's GCP and OpenAI instances, it immediately pressed Freightmate to produce for inspection ████████████████ ████████████████████████████ by the code it had previously and falsely claimed was a full and complete production. Freightmate changed its strategy from deception to obstruction to run out the clock under the current scheduling order. It was not until Flexport sought relief from Judge Kang that Freightmate was forced to account for whether responsive GCP and OpenAI materials existed and whether they had been preserved.

Even after Judge Kang ordered Freightmate to produce the entirety of GCP and OpenAI platforms, Freightmate continued to obstruct by failing to provide access to critical logs and usage histories that would show what ██████████████████████████ ███████████████████████████████ ███████ Freightmate also appears to have actively tampered with the materials that it did produce during Flexport's April 13-16 inspection by flooding Freightmate's OpenAI instance with thousands of prompts consisting largely of cooking recipes and numerous duplicate prompts. Hotz

SPENCER FANE LLP
ATTORNEYS AT LAW
SANJOSE

Decl. ¶¶ 35–38. This overnight data dump was an obvious attempt to corrupt the history of its OpenAI account and overwrite Defendants' prior interactions with the model in June and July 2024 when they most likely used Flexport's Flex ID files. Flexport immediately requested that Freightmate produce the missing logs and information.

Freightmate continued to obstruct claiming that the April 6 Order did not require it to do so, while ignoring Flexport's outstanding discovery requests that specifically called for their production. Freightmate again refused to produce these materials at the parties' April 27 meeting, leaving Flexport with insufficient time to get a joint letter brief on file under Judge Kang's notice requirements before the May 1 fact discovery cut-off. The record makes clear that Flexport was diligent in the face of Freightmate's discovery misconduct. The Court should not reward Freightmate by precluding Flexport from seeking appropriate relief from Judge Kang and obtaining this discovery, which is necessary for its experts to provide full and complete disclosures.

**B. Flexport Was Diligent in Seeking Discovery from Open AI and Google**

When it became apparent that Freightmate might not possess complete records—particularly with respect to OpenAI usage—Flexport promptly pursued third party subpoenas to OpenAI and Google to obtain server-side records uniquely within those entities' control. The discovery concerning GCP and OpenAI was therefore not delayed by lack of diligence, but instead emerged as a necessary and reasonable response to late revealed system architecture and incomplete disclosures that Flexport could not have anticipated or known about earlier. Freightmate obstructed these efforts by inserting itself into Flexport's negotiations with Open AI and Google when it had no standing or right to do so. Had Freightmate not interfered, Flexport would have likely had sufficient time under the current case schedule to (1) obtain legitimate third party discovery: (2) seek any necessary relief from Judge Kang; and (3) provide its experts with such discovery.

**C. Flexport Was Diligent in Seeking Discovery on its Stolen Flex ID Files**

Flexport diligently pursued discovery via Interrogatory No. 9. As detailed above, Freightmate refused for months to account for Zhao's downloading Flexport's confidential and proprietary Flex ID files before he deleted them on July 1, 2024. Even after Judge Kang ordered it to conduct further investigation into the disposition of these files on April 6, Freightmate

remained defiant.  During Freightmate's April 24 Rule 30(b)(6) deposition on the same subject matter, ███████████████████████████████████████████████████████████████████████████████████████████████████████. Cherng Decl. Ex. 24 at 126:1-127:18, 132:1-8. Zhao also incredibly testified at his April 23, 2026 deposition ██████████████████████████████████████████████████████████ *Id.*, Ex. 23 at 8:23-18:24.

Notably, Judge Kang warned in his April 9 Order, "[i]f further discovery, such as depositions, demonstrates that an attorney's representations are false, misleading, or inaccurate as to fulsomeness and accurate completion of an interrogatory response, there exist processes and avenues for seeking relief where appropriately supported by the record."  ECF 141 at 9:23-26. Such is the case here.  It was only after the April 23 and 24 depositions that it became clear that Freightmate's prior representations in response to Interrogatory No. 9 were false and further relief, including compelling compliance with the April 6 order by requiring Freightmate to disclose the results of its "investigation" and provide further testimony on the non-privilege findings of that investigation, is necessary.  It also was not until after these depositions that it became clear evidentiary sanctions under Rule 37(e) would be appropriate.  Unless the current schedule is modified, Flexport will not have a full and fair opportunity to seek such necessary relief.

**D. Flexport Was Diligent in Filing the Present Motion**

Flexport was diligent in seeking modification of the schedule once it became clear that the existing deadlines could not reasonably be met despite diligent efforts. The need for the requested modifications only crystallized in late April 2026 after Freightmate (1) failed to comply with Judge Kang's April 6 order relating to Freightmate's GCP and OpenAI instances and Interrogatory No. 9; (2) interfered with third-party discovery from OpenAI and Google; and (3) revealed during depositions that it did not adequately preserve either its GCP or OpenAI information and inexplicably could not or would not account for the Flex ID documents Zhao downloaded to parts unknown  on July 1, 2024 before deleting them.

Prior to this time, Flexport reasonably proceeded under the reasonable assumption that discovery could be completed within the existing schedule. After it became apparent that the foregoing unresolved disputes and missing evidence would prevent completion of expert analysis and informed motion practice within the current case deadlines, Flexport immediately sought limited relief from this Court. Judge Kang's April 6, 2026 order further confirms that the discovery issues were material, and that additional compliance with that order is required. Under these circumstances, Flexport could not reasonably have met the deadline to file additional motions to compel and a Rule 37(e) motion and to serve expert reports under the current schedule.

### E. Flexport's Proposed Modifications Will Not Unduly Prejudice Defendants

The requested modification primarily affects the expert and trial schedule, which necessarily turns on the completion of limited, court-supervised discovery regarding Freightmate's GCP/OpenAI records and July 1 download-and-deletion events. Flexport's proposed modifications are targeted. Flexport is only seeking leave to have motions to compel heard on (1) Interrogatory No. 9 and related deposition testimony; (2) the complete inspection of Freightmate's GCP/Open AI instances; (3) the Google subpoena; and (4) the OpenAI subpoena. It is also seeking specific deadline to file a Rule 37(e) motion once such discovery is complete, and modest adjustment of the remaining schedule to ensure expert opinions are based on a complete and reliable evidentiary record. Defendants will not suffer any undue prejudice because Flexport is not seeking to reopen fact discovery and Defendants will still have sufficient time to file dispositive motions and trial would still occur this year. More importantly, any alleged prejudice to Defendants is a direct result of Freightmate's concealment of critical evidence, obstruction of legitimate party and third party discovery and non-compliance with Court orders.

### VII.    CONCLUSION

For the foregoing reasons, and good cause showing, Flexport respectfully requests that the Court extend the case schedule as follows. Alternatively, if the Court denies Flexport's request to extend the case schedule, Flexport requests that the Court add a deadline to the existing schedule allowing Flexport to file its Rule 37(e) motion by June 5, 2026.

Dated: April 29, 2026

RESPECTFULLY SUBMITTED,

SPENCER FANE LLP


/s/ *Jing Hong Cherng*
John V. Picone III
Jeffrey M. Ratinoff
Jennifer S. Coleman
Jing H. Cherng
Attorneys for Plaintiff,
FLEXPORT, INC.