ALTO LITIGATION, PC
  Bahram Seyedin-Noor (Bar No. 203244)
  bahram@altolit.com
  Bryan Ketroser (Bar No. 239105)
  bryan@altolit.com
  Monica Mucchetti Eno (Bar No. 164107)
  monica@altolit.com
1 Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: (415) 779-2586
Facsimile: (415) 306-8744

Attorneys for Defendants
FREIGHTMATE AI, INC. and
BRYAN LACAILLADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| FLEXPORT, INC., | Case No. 3:25-cv-2500-RFL-PHK |
| Plaintiff, | **DEFENDANTS FREIGHTMATE AI, INC. AND BRYAN LACAILLADE'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO MODIFY CASE SCHEDULE** |
| v. | |
| FREIGHTMATE AI, INC., YINGWEI (JASON) ZHAO, and BRYAN LACAILLADE, | |
| | Assigned to the Honorable Rita F. Lin |
| Defendants. | Date Action Filed: March 12, 2025 |
| | Trial Date: None set |

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED ..................................................... 2

III.  STATEMENT OF FACTS ................................................................................... 3

IV.   LEGAL STANDARD....................................................................................... 8

V.    ARGUMENT .................................................................................................. 10

    A.    Flexport's Emergency Motion Fails Because Flexport Has Not Diligently Prepared Its Case for Trial ................................................................................10

        1.    Flexport Has Known Since at least August 2025 that Freightmate Uses Google Cloud Platform ................................................................. 10

        2.    Flexport Failed Diligently to Inspect Freightmate's Source Code ....................... 10

        3.    Flexport Failed to Diligently Pursue Third Party Discovery From Google and OpenAI ................................................................................ 11

        4.    Flexport's Allegations of Spoliation Are Unfounded.......................................... 11

    B.    The Motion Should Also Be Denied Because Freightmate Would ████████████ ████████ from a Continuation of the Schedule............................................................ 12

VI.   CONCLUSION ................................................................................................ 13

**Cases**

*Boarman v. Cnty. of Sacramento*,
55 F.Supp.3d 1271 (E.D. Cal. 2014) ................................................................................. 8

*Gestetner Corp. v. Case Equip. Co.*,
108 F.R.D. 138 (D. Me. 1985) ........................................................................................... 8

*Hall v. Google LLC*,
No. 23-CV-06574-JST, 2025 WL 1888142 (N.D. Cal. June 9, 2025) ............................... 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944-SC, 2014 WL 4954634 (N.D. Cal. Oct. 1, 2014) ........................... 2, 9, 13

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) ................................................................................. 2, 8, 12

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
218 F.R.D. 667 (C.D. Cal. 2003) ...................................................................................... 9

*Panchenko v. Bank of Am., N.A.*,
No. 23-CV-04965-EKL, 2025 WL 4481077 (N.D. Cal. Apr. 28, 2025) ............................. 9

*SanDisk 3D IP Holdings Ltd. v. Viasat, Inc.*,
No. 22-CV-04376-HSG, 2025 WL 1073876 (N.D. Cal. Mar. 10, 2025) ........................... 9

*Williams v. James River Grp. Inc.*,
627 F.Supp.3d 1172 (D. Nev. 2022) ................................................................................ 9

*Zivkovic v. S. California Edison Co.*,
302 F.3d 1080 (9th Cir. 2002) .......................................................................................... 8

**Statutes**

Fed. R. Civ. P. 16(b)(4) ........................................................................................... 1, 2, 8, 13

Fed. R. Civ. P. 37(e) ........................................................................................................... 11

Defendants freightmate Ai, Inc. and Bryan Lacaillade ("<u>Defendants</u>") respectfully submit this Opposition to Flexport, Inc.'s ("<u>Flexport</u>") Emergency Motion to Modify Case Schedule (ECF 153, hereafter "<u>Flexport's Emergency Motion</u>").

I.    INTRODUCTION

This case started with a bang.  With evidence in its hand that one of three founders of freightmate Ai, Inc. ("<u>freightmate</u>") had a copy of some Flexport source code on an external drive, Flexport sued freightmate and two of the three founders for copyright infringement, trade secret misappropriation, and breach of contract—assuming both that the copy had been intentionally taken to "steal" its code, and that it had been used.  But the tide has turned.

After a year of discovery involving hundreds of thousands of documents and millions in attorneys' fees, Flexport's case has fallen apart.  Document productions, code inspections, written discovery, and depositions have confirmed that the founders of freightmate built their technology from the ground up, completely independent from anything Flexport might lay claim to.

Flexport now admits that its anchor copyright infringement claim has zero evidentiary support and has moved to dismiss it—without prejudice, hoping to avoid paying Freightmate's attorney's fees and costs. Dkt. 147.  Although Flexport could and should have recognized this in September 2025, when it first had the chance to examine freightmate's source code, it waited until April 2026 to concede defeat.  Its remaining trade secret claims have similarly collapsed: four of the eight alleged secrets arise from the same source code Flexport now admits was never infringed.

Unable to find evidence because the conspiracy it imagined does not exist, Flexport has invented one:  it theorizes that critical evidence either is hidden in a cloud account somewhere, or was destroyed.  It then deploys this fabrication to justify a sweeping emergency motion to extend the case schedule *again*.  The Court should deny the Motion for three reasons.

First, Flexport cannot show good cause under Federal Rule of Civil Procedure 16(b)(4) because it was not diligent.  Flexport declined freightmate's express offer to inspect the source code of freightmate's Docmate product in October 2025, cancelled the inspection, and let more than *four months pass* before finally showing up in late February 2026.  The source code it

1

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK

eventually inspected, which was available the entire time, disclosed freightmate's use of Google Cloud Platform on its face. Any discovery gap Flexport complains of is entirely of its own making. Under settled Ninth Circuit precedent, carelessness is not diligence, and this inquiry should end there. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

Second, further modification of the case schedule would be highly prejudicial to freightmate. Flexport already obtained a three-month extension of the case schedule, causing significant harm to the startup. A further delay ███████████████████████████ ██████████████████████████ Declaration of Bryan Lacaillade ("Lacaillade Decl.") Ex. ¶¶ 2-5. Additionally, freightmate's lead trial counsel has previously scheduled international travel from June 19 through July 4, making Flexport's proposed extension of the expert discovery period independently unworkable. Declaration of Bahram Seyedin-Noor ("Noor Decl.") ¶ 2.

Third, the Motion was filed in bad faith. Flexport filed this "emergency" motion within one week of ███████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████ The law does not reward gamesmanship, and this Court should not either. *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 4954634, at *2 (N.D. Cal. Oct. 1, 2014).

## II.     STATEMENT OF ISSUES TO BE DECIDED

1. Whether Flexport has failed to demonstrate good cause under Federal Rule of Civil Procedure 16(b)(4) because it inexcusably delayed inspecting freightmate's source code for nearly five months despite an express offer of inspection in September 2025, thereby causing any discovery gap it now claims.

2. Whether Flexport's failure to pursue available discovery remedies—including timely depositions of freightmate's CTO, targeted interrogatories regarding preservation, and joint letter practice before Magistrate Judge Kang—defeats any showing of diligence required for modification of the case schedule.

3. Whether modifying the case schedule would cause undue prejudice to freightmate,

████████████████████████████████████████████████

## III.   STATEMENT OF FACTS

Flexport would like the Court to believe that it could not obtain purportedly "critical" evidence regarding what materials freightmate stored using Google Cloud Platform ("GCP") and OpenAI because of "persistent discovery obstruction" by freightmate.  Mtn. at 1.  The procedural record shows the exact opposite:  Flexport was aware of freightmate's use of GCP no later than August 2025.  Declaration of Monica Eno ("Eno Decl.") Ex. 1.  It also would have seen freightmate's use of GCP if it had participated in the offered inspection of the source code for freightmate's Docmate product (the "Docmate Code") in October 2025.   Instead, Flexport's counsel voluntarily chose to *delay that inspection*, which was first offered on September 30, 2025, *for four months*, until February 5, 2026.  Eno Decl. Exs. 2-4.

Flexport's "statement of facts" is a blatantly inaccurate recitation of an extensive discovery record.  Rather than respond to every false statement, we summarize below many of "**Flexport's Claims**" (left column) regarding that discovery record and provide the Court with evidence of **the actual record** (right column), with citations to source documents.

| Flexport's Claim | The Truth |
|---|---|
| **A. Flexport diligently sought discovery about Freightmate's Use of GCP** | **Flexport inexplicably delayed its review of the Docmate Code for more than four months.** |
| 1.  "Freightmate actively concealed its GCP account through February 2026" | **False.**<br><br>Flexport's statement of facts confuses the key issues.  We address each claim below. |
| _ Freightmate's narrative was incomplete because it "did not disclose its GCP or OpenAI instances" in its April 18, 2025 sworn Narrative identifying those "non-Flexport locations in which any [Flexport Proprietary Information] … was stored at any time." Mot. at 3:12-16 | **False.**<br><br>The express purpose of the Narrative was to identify locations on which Flexport Proprietary Information was once stored.  Because such information was *never stored* in the GCP, Freightmate's sworn statement did not list it.  *See* 4/18/2025 Freightmate Supplemental Narrative ("FM Supp. Narrative").[1] |

---

[1] The FM Supp. Narrative is attached as Exhibit 10 to the Eno Declaration.

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK

| Flexport's Claim | The Truth |
|---|---|
| _"Freightmate did not list its GCP account, and [freightmate CTO Rishab] Gadroo failed to disclose that Freigthmate maintained a GCP account separate from its Google Workspace account." Mot. at 3:20-22. | **True but Misleading.**<br><br>On **August 29, 2025**, freightmate produced a July 2, 2024 email between Gadroo and Google with the subject "FreightMate AI & Google Cloud Technical Thread." Eno Decl. Ex. 1. Among other things, the memo lists as the "top agenda items … **Setting up Sandboxing for Multiple Environments on GCP** [and] … **Interest in the Document AI Incubator through Google Cloud**." *Id.* (emphasis in original).<br><br>On **September 30, 2025**, freightmate invited Flexport to inspect Docmate Code on the very dates that Flexport had requested: **October 16 or 17**. *See* Eno Decl. Exs. 2-3. Flexport never followed up and ultimately cancelled. Eno Decl. Ex. 4. It was not until February 5, 2026, that Flexport – through its *outside counsel* Gene Cherng – inspected the Docmate Code for the first time. Eno Decl. Ex. 5. Following this inspection, Flexport asked freightmate to make its full Github Repository available. Eno Decl. Ex. 6.<br><br>On **February 23-24, 2026**, Flexport's expert Dieter Hotz, inspected the Github Repository and saw the GCP. Mtn. at 4:19-28. |
| _Flexport's discovery of the GCP account was further delayed because the complete commit histories were not included in the source code Flexport's counsel inspected on Feb. 5. Mtn. at 4. | **False.**<br><br>As mentioned, Flexport has no one to blame but itself for wasting more than four months between September 30, 2025 and February 5, 2026 to inspect the Docmate Code. Moreover, the GitHub repository with complete *commit histories* was made available for Mr. Hotz's inspection on the first date he was available to review it. *See* Eno Decl. Ex. 7. |
| 2. "February 24, 2026: Flexport First Learns of Freightmate's GCP Account"<br><br>_"…it became apparent that Freightmate had been deceiving Flexport by framing the Github source code as the entirety of the product…". *Id.* Mot. at 4:25-27. | **False.**<br><br>Flexport admits that it knew of GCP's role in the Docmate Code no later than when it finally reviewed Flexport's code in late February. *See* Mtn. at 4:22-25. It also admits that freightmate offered that code for review in October 2025, before *Flexport* inexplicably cancelled its review. Freightmate, not Flexport, is the party here that repeatedly has tried to speed up the disclosure process. |

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK

| Flexport's Claim | The Truth |
|---|---|
| 3.  March 3, 2026: Flexport's First Post-Inspection Demand for GCP Materials<br><br>_"Flexport demanded inspection of the GCP materials invoked by the [Docmate] software … This information would show what shipping documents Freightmate used to test its GCP and OpenAI shipping document processing pipeline." Mtn. at 5:4-8. | **Partly Correct; Mostly False.**<br><br>Flexport did demand inspection of GCP materials in late February 2026, and Freightmate (as discussed further below) promptly engaged in meet and confer discussions to determine what GCP materials were proportional to the needs of the case. Eno Decl. ¶ 9 and Exs. 8-9.  The contours of permissible GCP discovery were also raised with, and resolved by, Magistrate Kang. *See* Dkt. No. 131 (Joint Letter re GCP and OpenAI Inspection, "<u>Joint Letter</u>"); Dkt. No. 141 (Order re Discovery Disputes) at 11:3-20.[2] |
| 4.  March 2026: Freightmate Refuses to Confirm GCP and OpenAI Preservation | **False.**<br><br>Freightmate appropriately responded both to written discovery responses and 30(b)(6) deposition questioning on the subject.  What Freightmate did not do is respond (or respond to Flexport's satisfaction) to *some* of the many "informal discovery" questions by Flexport's *counsel*. |
| 5.  Late March 2026: Joint Letter and Freightmate's Admissions it Destroyed or Altered Records<br><br>_"Freightmate also confirmed it deleted the proprietary Flexport shipping documents stolen by Zhao on July 1, 2024 (after its initial Github code commit) to create a purported 'clean room' and intentionally deleting additional Docmate development-related documents in September 2024 after receiving a notice letter from Flexport's counsel."<br>Mot. at 6:13-16. | **Partially Correct, but Misleading.**<br><br>Freightmate began coding its product at the tail end of June 2025.  In connection with those efforts, Freightmate scoured its systems and deleted known traces of any Flexport-related materials to create a "clean room" environment for development.  Eno Decl. Ex. 10 at ¶¶ 11-12 and Ex. 11 at 11:1-7.<br><br>On September 6, 2024, Flexport's counsel sent letters to the individual defendants which *demanded they confirm they had no Flexport confidential materials*.  In response, the co-founders performed a further review and deleted a few additional Flexport documents they found.  Eno Decl. Ex. 12 at ¶¶ 30-32; Ex. 13; Ex. 26.<br><br>Notably, even Flexport's 30(b)(6) witness, an in-house attorney, conceded that the September 6, 2024 letters did not request preservation of Flexport documents.  Eno Decl. Ex. 14 at 13:8-19:24. |

[2] The Joint Letter and Order re Discovery Disputes are attached as Exs. 27 & 28 to the Eno Decl.

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK

| Flexport's Claim | The Truth |
|---|---|
| 6. "The April 1, 2026 Discovery Hearing: Freightmate's Representations Contradict Its Prior Meet and Confer Positions (Mtn. at 6-7)<br><br>_Freightmate's counsel misrepresented to Judge Kang the GCP and OpenAI accounts Freightmate made available for Flexport's inspection, claiming it had "said yes to every single request" and was offering "full view-only access to the entire GCP and OpenAI accounts." Mot. at 6:24-25. | **False**.<br><br>Before the April 1 hearing, Flexport asked for ten specific types of information in GCP, and some items in OpenAI. *See* Eno Exs. 8 & 16. Freightmate agreed to provide each of those items, and those items are exactly what Magistrate Kang, at the April 1 hearing, ordered should be provided. *See* Eno Decl. Ex. 9; Joint Letter at 4-5; Dkt. No. 141 at 11:3-20.<br><br>Magistrate Kang expressly denied Flexport's request for access to "all" GCP and OpenAI accounts and sternly warned Flexport's counsel about returning to seek additional access beyond what the Court ordered. *See* April 1, 2026 Discovery Hearing Transcript ("Tr.")[3] at 8:12-16; 9:17-18; 27:10-11; 27:15-17; 30:5-32:5.<br><br>Freightmate honored the Court's order by making its GCP and OpenAI platforms available for inspection by April 10, 2026. The restrictions Flexport's expert encountered on April 13 were consistent with the scope the Court actually ordered—not the broader access Flexport had sought and been denied. |
| **B. Freightmate's Interference with Flexport's Subpoena to OpenAI (Mtn. at 7-8)** | |
| _Freightmate's counsel interfered with Flexport's Rule 45 subpoena to OpenAI, communicating directly with OpenAI's counsel regarding objections and insisting on participating in all meet-and-confer discussions. Mot. at 7:17-8:9. | **False**.<br><br>Flexport has made a habit in this case of corresponding with subpoenaed parties without disclosing those communications to Defendants. This resulted in Freightmate filing a motion, and Magistrate Kang ordering Flexport to disclose such communications. *See* Eno Decl. Ex. 27 at 3:2-3 & Ex. 28 at 4:10-15. Unfortunately, the pattern seems to have continued with Google and OpenAI.<br><br>This is important because Flexport appears to have hidden material facts from Google and OpenAI regarding this dispute, party discovery to date, and Magistrate Kang's orders—all of which are relevant to the subpoenas. Freightmate provided Google and OpenAI with these facts, while making it |

[3] Cited excerpts of the Discovery Hearing are attached as Eno Decl. Ex. 15.

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK

| Flexport's Claim | The Truth |
|---|---|
| | clear in written correspondence that it was **not** objecting to the subpoenas. *See* Eno Decl. Exs. 17-21. Such communications were not only allowable, they were necessary in light of Flexport's material omissions from their own communications. |
| **C. Freightmate's Interference with Flexport's Subpoena to Google (Mtn. at 8)** | |
| Freightmate's counsel interfered with Flexport's Rule 45 subpoena to Google, communicating directly with Google and misrepresenting that Flexport's requests were outside prior Court orders. Mot. at 8:19-23. | **False.**<br><br>As with OpenAI, Freightmate made clear in written correspondence that it was **not** objecting to the subpoena. Rather, freightmate's communications with Google (via a generic Google Litigation email address which Flexport's counsel was copied on) provided them with the Court's ruling on the Joint Order re GCP and OpenAI and apprising them of the documents they had produced to date. *See* Eno Decl. Exs. 19-21. |
| **D. Freightmate Concealed Evidence on Whether it Deleted Flexport's Confidential Flex ID Files (Mtn. at 9)** | |
| Freightmate concealed evidence on whether it deleted Flexport's confidential and proprietary Flex Files by failing to account for what happened to Flex ID files "downloaded" on July 1, 2024 either in its response to Rog. 9 or in R. 30(b)(6) testimony. Mot. at 9:11-12. | **False.**<br><br>Freightmate has provided a full and complete response to Rog. 9. As reflected in its verified response, it has no additional information related to what happened to deleted Flexport Flex ID files than it has already provided. In short: The documents were deleted on July 1, 2024, and no copies were preserved. (As Flexport demanded.) *See* Eno Decl., Ex. 22 at 21-27.<br><br>Moreover, Mr. Zhao testified in his deposition that he does **not** believe he downloaded the Flex ID files, and the reference to a "download" on the Google Drive activity log seems to be no more than a precursor to the July 1, 2024 deletion, relating to syncing. Eno Decl., Ex. 23 at 12:11-18:24. Flexport is entitled to its theory that there is a hidden cache of these documents, but not to an assumption of its truth. |

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE

CASE NO. 3:25-cv-2500-RFL-PHK

| Flexport's Claim | The Truth |
|---|---|
| **E. Founder Depositions Confirm the Absence of Preservation and Investigation (Mtn. at 9-10)** | |
| _The founders' depositions confirm that certain records were not preserved. Mot. at 9:28; 10:1-13 | **Correct.** Nor was there any reason to "preserve" those records at the time.<br><br>Flexport omits that it is this Court's ESI Order that governs the parties' preservation obligations. Specifically, under the Order, the parties agreed "to exchange a list of ***the types of ESI they believed should*** be preserved by the corporate parties" and then "negotiate in good faith to arrive at a mutually acceptable list." Dkt. 55 at ¶ 4(b) (emphasis added). Flexport ***never engaged in those discussions*** and therefore has no right to complain now. Flexport's complete failure to request the preservation it now complains about on the front end, when it was required to do so, is the opposite of diligence. |

## IV. LEGAL STANDARD

A court may modify a scheduling order only upon a showing of "good cause" and with the judge's consent. Fed. R. Civ. P. 16(b)(4). That is because "[a] scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992), *quoting Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985).

The pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension," but not otherwise. *Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (*quoting Johnson*, 975 F.2d at 609). "Although the existence or degree of prejudice to the party opposing modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification … If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609.

"[A] party who fails to pursue discovery in the face of a court ordered cut-off cannot plead prejudice from his own inaction.'" *Boarman v. Cnty. of Sacramento*, 55 F.Supp.3d 1271, 1276 (E.D. Cal. 2014) (citation modified). Accordingly, courts of the Ninth Circuit have regularly

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK

denied motions to modify case schedules where the moving party or parties failed to establish good cause for the modification. *See, e.g.*, *Hall v. Google LLC*, No. 23-CV-06574-JST, 2025 WL 1888142, at *1-3 (N.D. Cal. June 9, 2025) (plaintiff's motion to extend fact discovery deadline and expert-disclosure deadline denied because plaintiff failed to establish diligent pursuit of discovery or excusable neglect); *Panchenko v. Bank of Am., N.A.*, No. 23-CV-04965-EKL, 2025 WL 4481077, at *1-3 (N.D. Cal. Apr. 28, 2025) (defendants' motions to extend fact and expert discovery cutoffs and for leave to file a motion to compel denied because defendants did not show they diligently pursued discovery); *SanDisk 3D IP Holdings Ltd. v. Viasat, Inc.*, No. 22-CV-04376-HSG, 2025 WL 1073876, at *2 (N.D. Cal. Mar. 10, 2025) (plaintiffs failed to show good cause to extend the close of fact discovery due to plaintiffs' delay in taking depositions and serving written discovery requests); *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 677 (C.D. Cal. 2003) (plaintiff failed to establish good cause to modify scheduling order to extend discovery cut-off because plaintiff failed to diligently prosecute the action); *Williams v. James River Grp. Inc.*, 627 F.Supp.3d 1172, 1181-82 (D. Nev. 2022) (the parties' stipulation to extend case discovery deadlines was denied because the parties failed to establish good cause of such extension).

Equally important, good cause cannot be manufactured by gamesmanship or bad faith:

> [C]entering the good cause analysis on the moving party's diligence prevents parties from profiting from carelessness, unreasonability, or gamesmanship … if a party "fails to heed repeated signals," waits until the eleventh hour for tactical reasons, or otherwise acts carelessly or in bad faith, courts are unlikely to vary the applicable schedule.

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2014 WL 4954634, at *2 (citations omitted).

As shown below, Flexport's conduct fails every dimension of this standard: it was not diligent; it delayed for tactical reasons; and it filed the present motion in bad faith to exhaust a smaller opponent it cannot beat at trial.

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK

## V. ARGUMENT

### A. Flexport's Emergency Motion Fails Because Flexport Has Not Diligently Prepared Its Case for Trial

#### 1. Flexport Has Known Since at least August 2025 that Freightmate Uses Google Cloud Platform

Flexport's entire motion rests upon its contention that freightmate "concealed" its use of Google Cloud Platform ("GCP") until February 2026. Mot. at 3. That is a complete fabrication.

Flexport has known since *at least August 2025* that freightmate used GCP, but failed to diligently pursue discovery into that use. As part of its rolling production of responsive documents, freightmate, on August 29, 2025, produced to Flexport a July 2, 2024 email between freightmate founder and Chief Technology Officer Rishab Gadroo and E.J. McDaniel, Field Sales Representative for *Google Cloud*, summarizing the offerings of the *GCP ecosphere* (among the relevant agenda items: "Document AI use case and technical understanding for best practices for top results (Document Extraction)"). Eno Decl., Ex. 1 (emphasis added).

#### 2. Flexport Failed Diligently to Inspect Freightmate's Source Code

The gravamen of Flexport's trade secret misappropriation and moribund copyright infringement claims is that freightmate stole Flexport source code and incorporated it into freightmate's Docmate software. The obvious place to start an investigation would be to inspect freightmate's source code. Despite this, Flexport waited nearly one year from filing its original Complaint to first inspect freightmate's source code—at which point fewer than two months remained until the close of fact discovery. *See* Dkt. 1, 106 at 1:25-26. This delay is inexcusable and should not be rewarded with further extension of the Court's already-modified case schedule.

Freightmate offered the Docmate Code for Flexport's inspection on *September 30, 2025*. Eno Decl., Ex. 2. By October 14, 2025, Flexport's former counsel had still not confirmed an inspection date and represented that they would "be in touch separately to reschedule as needed." *Id.* Ex. 3-4. Three weeks later, Flexport substituted in new counsel [Dkt. 91], who delayed an *additional four months* before finally sending in its expert to inspect freightmate's source code. *See* Mtn. at 4:19-20.

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK

Had Flexport bothered to review the documents Freightmate produced in August 2025, it could have asked to see code relating to GCP during its inspection ***months before*** its delayed February 2026 inspection. And had Flexport timely inspected freightmate's code in fall 2025, the parties could have resolved any follow-up requests Flexport had for additional inspections. But Flexport did neither of these things. Instead, it delayed reviewing freightmate's source code until February 2026 and—despite a second modification of the Court's Scheduling Order [Dkt. 125]—***still*** did not timely pursue and resolve all issues relating to the inspection of freightmate's source code. This Court should not reward Flexport's failure to diligently prepare for trial. The Emergency Motion should be denied.

### 3. Flexport Failed to Diligently Pursue Third Party Discovery From Google and OpenAI

Even if Flexport felt it had exhausted available party discovery and needed to pursue evidence from third parties, those attempts were also untimely. Flexport delayed serving business record subpoenas on corporate behemoths Google and OpenAI ***until March 12, 2026***, despite knowing that the Court's Civil Standing Order required resolution of discovery disputes by May 1, and with full knowledge of Magistrate Judge Kang's detailed meet-and-confer requirements that must precede motion practice. *See* Eno Decl. Exs. 24-25; *see also* Civil Standing Order and Standing Order for Discovery in Civil Cases Before Magistrate Judge Peter H. Kang. The subpoenas bore an obviously unreasonable compliance deadline of April 2, 2026—just a couple weeks after service of the subpoenas and less than a month before the close of fact discovery. *See* Eno Decl. Exs. 24-25. Seasoned litigators know better than to expect that large corporations will fully comply with documents subpoenas on first request, and especially on so short a deadline. But that's the point. Flexport did not have a good-faith basis to expect compliance with the Google and OpenAI subpoenas.

### 4. Flexport's Allegations of Spoliation Are Unfounded

Flexport raises the specter of an as-yet unfiled Rule 37(e) motion for spoliation sanctions in support of its motion to modify the case schedule after the close of fact discovery. This is a red herring.

The deletions Flexport complains about were entirely consistent with a letter that *Flexport's own counsel* sent to freightmate founders Jason Zhao and Bryan Lacaillade demanding immediate confirmation that freightmate had no Flexport confidential materials in its possession. Eno Decl. Exs. 13 & 26. Even Flexport's 30(b)(6) witness, an in-house attorney, conceded that the September 6, 2024 letters did *not request preservation* of Flexport documents. Eno Decl. Ex. 14 at 13:8-19:24. In any event, the focus of *this motion to modify a scheduling* order is on Flexport's diligence, or the lack thereof. *Johnson*, 975 F.2d at 609. The foregoing facts and argument make clear that Flexport failed to timely prepare for trial in accordance with the Court's scheduling order.

### B. The Motion Should Also Be Denied Because Freightmate Would ▮▮▮▮ ▮▮▮▮ from a Continuation of the Schedule

Although Flexport's complete lack of diligence is dispositive, any extension of the case schedule would also be highly prejudicial to freightmate.

The Ninth Circuit's decision in *Johnson,* holds that when considering a motion to modify a scheduling order, the Court should focus first and foremost at the moving party's diligence (or lack thereof) in preparing for trial. 975 F.2d at 609. However, "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion." *Id*. Here, the prejudice to freightmate is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The timing of this Motion speaks for itself. Flexport filed its "Emergency" motion on April 29, 2026, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ Lacaillade Decl. ¶¶ 2-5. Having obtained freightmate's ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Filing a 15-page emergency motion with voluminous declarations within days of learning that information was not an act of diligence. It was a calculated attempt ▮▮▮▮▮▮▮▮▮

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK

▮ that Flexport knows it cannot beat at trial.

In addition, from a pure case management perspective, freightmate's lead trial counsel is unavailable from June 19 through July 4 due to previously-scheduled international travel, which means he would be unavailable for much of the period designated for expert rebuttal reports, which is key to the defense.  Noor Decl. ¶ 2.

Courts exercising their broad discretion over discovery have consistently declined to permit parties to "profit from carelessness, unreasonability, or gamesmanship."  *In re CRT Antitrust Litig.*, 2014 WL 4954634, at *2.  The principle applies with equal—indeed, greater—force when the gamesmanship is directed not merely at obtaining an unfair procedural advantage, but at destroying the opposing party's capacity to litigate altogether.  The Court should decline to be the instrument of that strategy.

## VI.     CONCLUSION

For the foregoing reasons, Defendants freightmate and Bryan Lacaillade respectfully request that the Court deny Flexport's Emergency Motion to Modify Case Schedule in its entirety.  Flexport has not come close to demonstrating the good cause Rule 16(b)(4) demands: its own careless delay in inspecting source code that was available for inspection four months before it got around to looking, its failure to deploy the most basic discovery tools available to it, and its deliberate choice to bypass the joint letter process with Magistrate Kang collectively doom its diligence argument.  Moreover, the Motion's timing — filed one week after ▮ ▮ — exposes the Motion for what it is: a tactical maneuver designed to exhaust freightmate before an October trial that Flexport cannot win on the merits.  The Court should hold Flexport to the existing schedule and allow this case to proceed to a swift resolution.

Dated: May 5, 2026

ALTO LITIGATION, PC

*/s/ Bahram Seyedin-Noor*
Bahram Seyedin-Noor

Attorneys for Defendants
freightmate Ai, Inc. and
Bryan Lacaillade

DEFENDANTS' OPPOSITION TO EMERGENCY MOTION TO MODIFY CASE SCHEDULE
CASE NO. 3:25-cv-2500-RFL-PHK