ALTO LITIGATION, PC
Bahram Seyedin-Noor (Bar No. 203244)
bahram@altolit.com
Bryan Ketroser (Bar No. 239105)
bryan@altolit.com
Monica Mucchetti Eno (Bar No. 164107)
monica@altolit.com
Anthony Basile (Bar No. 247409)
anthony@altolit.com
1 Embarcadero Center, Suite 1200
San Francisco, California 94111
Telephone: (415) 779-2586
Facsimile: (415) 306-8744

Attorneys for Defendants
FREIGHTMATE AI, INC. and
BRYAN LACAILLADE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

FLEXPORT, INC.,

Plaintiff,

v.

FREIGHTMATE AI, INC., YINGWEI (JASON) ZHAO, and BRYAN LACAILLADE,

Defendants.

Case No. 3:25-cv-2500-RFL-PHK

**DEFENDANTS FREIGHTMATE AI, INC. AND BRYAN LACAILLADE'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS UNDER FRCP 37(e)**

Date: July 16, 2026
Time: 2:30 p.m.
Courtroom: F - 15th Floor
Judge: Hon. Peter H. Kang

Date Action Filed: March 12, 2025
Trial Date: October 19, 2026

**REDACTED**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES TO BE DECIDED ..... 4

III. STATEMENT OF FACTS ..... 5

A. The Individual Defendants Begin Discussing a Startup, and Include Their Flexport Supervisor in Those Discussions ..... 5

B. Mr. Lacaillade Tells Flexport's CEO He Is Leaving to Start Freightmate ..... 5

C. The Shipping Documents Are Added to, then Removed from, Google Drive ..... 6

[redacted] ..... 7

E. Flexport Files this Action and Fails to Identify the Sources It Now Complains About as Needing to Be Preserved ..... 7

F. The Court Denies Flexport's "Emergency" Motion to Extend the Schedule ..... 8

G. Flexport Files the Instant Motion ..... 8

IV. LEGAL STANDARD ..... 9

V. ARGUMENT ..... 10

A. Defendants Had No Duty to Preserve Documents in June, July, or August 2024 Because They Did Not Reasonably Anticipate Litigation with Flexport ..... 10

B. It is Unreasonable for Flexport, Which Actively Destroyed Its Own Investigatory Materials in Early 2025, to Assert that Defendants Should Have Anticipated Litigation Before the September 6, 2024 Letters ..... 14

C. Even if Defendants Should Have Anticipated Litigation Before the September 6, 2024 Letter, They Did Not Destroy Any Evidence that They Should Have Known Would be Relevant to Reasonably Foreseeable Litigation with Flexport ..... 15

1. Defendants Deleted the Flexport Shipping Documents to Create a Clean Room Environment, and Flexport's September 6, 2024 Letter Confirms They Made the Correct Decision ..... 15

2. Defendants Had No Reason to Believe they Needed to Keep Deprecated Files Related to LLM Prompts, Which Did Not Incorporate Flexport Information Anyway ..... 16

3. Defendants Could Not Override the [redacted] Log Retention Settings, and It Would Have Been Unreasonable for Them to Implement a Custom Solution Given Technical Hurdles and Lack of Relevance ..... 17

D. Defendants Retained a Firm to Image Various Google Drives, Gmail Accounts, Personal Laptops, Personal Emails, and Personal Cell Phones After Receipt of the Notice Letters ..... 20

VI. Flexport Has Failed to Carry Its Burden of Showing the Requisite Prejudice or Bad Intent ....20

VII. Flexport Has Failed to Show Any Entitlement to an Award of Its Attorneys' Fees....25

VIII. CONCLUSION ....25

TABLE OF AUTHORITIES

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
881 F.Supp.2d 1132 (N.D. Cal. 2012) ........ 24

*Apple Inc. v. Samsung Elecs. Co.*,
888 F.Supp.2d 976 (N.D. Cal. 2012) ........ 11, 24

*Barsoum v. N.Y.C. Hous. Auth.*,
202 F.R.D. 396 (S.D.N.Y. 2001) ........ 12

*Bungie, Inc. v. AimJunkies.com*,
No. C21-0811 TSZ, 2023 WL 7184427 (W.D. Wash. Nov. 1, 2023) ........ 14

*Colonies Partners, L.P. v. County of San Bernardino*,
No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ........ 25

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
No.: 14-CV-1191 JLS (KSC), 2019 WL 6527951 (S.D. Cal. Dec. 4, 2019) ........ 18

*Federal Trade Commission v. Int'l Markets Live, Inc.*,
No. 2:25-cv-00760-CDS-NJK, 2025 WL 3033996 (D. Nev. Oct. 29, 2025) ........ 4

*Fourth Dimension Software v. DER Touristik Deutschland GmbH*,
No. 19-CV-05561-CRB, 2021 WL 5919821 (N.D. Cal. Dec. 15, 2021) ........ 24

*Goodman v. Praxair Servs., Inc.*,
632 F.Supp.2d 494 (D. Md. 2009) ........ 14

*Hynix Semiconductor Inc. v. Rambus Inc.*,
645 F.3d 1336 (Fed. Cir. 2011) ........ 11, 12

*In re Abilify (Aripiprazole) Prods. Liab. Litig.*,
No. 3:16-MD-2734, 2018 WL 4856767 (N.D. Fla. Oct. 5, 2018) ........ 14

*In re Napster, Inc. Copyright Litig.*,
462 F.Supp.2d 1060 (N.D. Cal. 2006) ........ 11, 18

*Jones v. Riot Hosp. Grp. LLC*,
95 F.4th 730 (9th Cir. 2024) ........ 24

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) ........ 21, 23, 24

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
No. 13-cv-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016) ........ 18

*Micron Tech., Inc. v. Rambus Inc.*,
645 F.3d 1311 (Fed. Cir. 2011) ........ 11, 12, 13

*Microvention, Inc. v. Balt USA, LLC*,
No. 8:20-CV-02400-JLS-KES, 2023 WL 7476998 (C.D. Cal. Oct. 5, 2023), *report and recommendation adopted*, 2023 WL 7634109 (C.D. Cal. Nov. 13, 2023) ........ 11

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* 328 F.R.D. 543 (N.D. Cal. 2018) .......... 11, 13

*Ramirez v. Zimmerman*, No. 17-CV-1230-BAS-AHG, 2020 WL 905603 (S.D. Cal. Feb. 25, 2020) .......... 10

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.,* 264 F.R.D. 517 (N.D. Cal. 2009) .......... 13

*Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598 (S.D. Tex. 2010) .......... 11

*Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754 (9th Cir. 2015) .......... 10, 21

*Skyline Advanced Tech. Servs. v. Shafer*, No. 18-CV-06641-CRB (RMI), 2020 WL 13093877 (N.D. Cal. July 14, 2020), *report and recommendation adopted*, 2020 WL 13093878 (N.D. Cal. July 30, 2020) .......... 11, 12

*Smahi v. STMicroelectronics, Inc.*, No. 5:23-CV-06645-PCP, 2026 WL 836558 (N.D. Cal. Mar. 26, 2026) .......... 13

*Sonrai Sys., LLC v. Romano*, No. 16 C 3371, 2021 WL 1418405 (N.D. Ill. Jan. 20, 2021), *report and recommendation adopted*, 2021 WL 1418403 (N.D. Ill. Mar. 18, 2021) .......... 14

*WeRide Corp. v. Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) .......... 12

**Statutes**

Fed. R. Civ. P. 37(e) .......... 9

Fed. R. Civ. P. 37(e)(1) .......... 10

Fed. R. Civ. P. 37(e)(2) .......... 10

Defendants freightmate Ai, Inc. ("freightmate") and Bryan Lacaillade ("Lacaillade," together with freightmate, "Defendants") respectfully submit this Opposition to Flexport, Inc.'s ("Flexport") Motion for Sanctions Under Fed. R. Civ. P. 37(e) ("Motion" or "Mtn.").

## I. INTRODUCTION

Like its recently-denied "emergency" motion to extend the case schedule [Dkt. 153 and 167], Flexport's Motion for Sanctions ("Motion" or "Mot.") represents a telling shift in its strategy. In March 2025, Flexport sued freightmate and two of its three founders for copyright infringement, trade secret misappropriation, and breach of contract, alleging that freightmate copied Flexport's source code into its product, Docmate, and utilized a plethora of other Flexport materials to improve its business, ranging from "Flexport's playbooks for technology integrations, its internal library of standard operating procedures, [and] handbooks" to "competitive research documents, and marketing strategies." Dkt. No. 76 at ¶ 28. No longer.

The Copyright claim? Dropped. Trade secret misappropriation? Still asserted, but reduced to a thin claim that freightmate somehow used a randomly-selected group of some of Flexport's ***millions*** of shipping documents. Yet after reviewing freightmate's entire Git repository, receiving access to freightmate's cloud-based resources like [redacted] obtaining ***all*** of the freightmate founders' non-privileged emails and other internal communications, and much more, Flexport ***still*** can't prove that Defendants used their shipping documents to create Docmate—because they didn't. And so, Flexport first asked this Court to extend the case schedule for it to take even more discovery (which motion the Court correctly denied), and now, Flexport asks the Court to simply assume that the reason why it has no evidence in support of its claims is that such evidence was destroyed.

The truth is that when it comes to document preservation, Defendants acted both appropriately ***and in accordance with Flexport's own requests***. When the freightmate founders began discussing a potential new business, they informed their Flexport boss, Yong (Leo) Li, who brainstormed with them. Declaration of Anthony Basile ("Basile Decl.") Ex. 18 at 6. [redacted] *Id.* Ex. 1; Ex. 19. When the founders left,

they informed Flexport's CEO that they were going to create a startup; far from threatening litigation, the Flexport's CEO called Mr. Lacaillade a "star" and wished him well. *Id.* Ex. 18 at 7; Lacaillade Decl. ¶ 2. When freightmate brought on the third co-founder (non-party Rishab Gadroo) and began coding its Docmate product, Defendants made a pass through freightmate's systems to purge any Flexport materials they could find. At the time (July 1, 2024), Defendants had exactly zero reason to expect litigation with Flexport.

Then, on September 6, 2024, Flexport's counsel sent Messrs. Lacaillade and Zhao letters stating that "there is reason to believe that you . . . are violating Flexport's intellectual property rights." Basile Decl., Ex. 4, 20. Did Flexport ask Defendants to preserve documents? No. To the contrary, the September 6, 2024 letters ***demanded that Defendants get rid of any "Flexport Proprietary Information" in their possession***. *Id.* Defendants dutifully complied, making another pass through their systems and deleting a small number of straggler Flexport materials missed on July 1, 2024. Flexport's own, in-house counsel admitted at deposition that [redacted] Basile Decl. Ex. 21 (Johnson Tr.) at 16:24-17:11, 19:13-20:2. Not to mention, ***<u>Flexport</u> personnel*** themselves ***intentionally deleted their investigatory materials for this case even after sending the September 2024 letters***.

In any event, even if litigation had been reasonably foreseeable ***to Defendants*** in July 2024 (it wasn't), and even if Flexport had sent a preservation request in September 2024 (it didn't), Flexport still would not be entitled to any of the relief it seeks, because there is zero reason to believe that any of the materials they complain about would support their claims:

"Flexport Shipping Documents." Flexport complains that on September 6, 2024, Mr. Lacaillade "delet[ed] additional Flexport shipping documents on his personal laptop[.]" Mot. at 12-13. Of course he deleted them; ***Flexport asked him to***, in its letter to him that very day. The founders, without prompting, already had deleted the vast majority of Flexport materials on freightmate's systems on July 1, 2024, and after Flexport's letter demanded that they confirm they had no more Flexport materials, they finished the job. And no, freightmate's investor did not tell Defendants to "not delete anything," no matter how many times Flexport asserts it. Mot. at 2,

13, 18, 23. Mr. Lacaillade testified it didn't happen, and even if it had (which it didn't), it would have been contrary to ***Flexport's own request*** that Defendants delete the materials.

"Prompt Engineering" Documents. Flexport complains that on July 1, 2024—eight months before the lawsuit and well before Defendants had any idea they would be sued—Defendants deleted documents with names like "Prompt Engineering Doc Automation," "Packing List Prompt," and "Commercial Invoice Prompt." Mot. at 9-10. But Flexport offers no reason to believe that any of these documents would assist them in the slightest. Instead, Flexport's argument is based on the demonstrably-false assertion that it was "not technically achievable" for freightmate to get Docmate working in the limited fashion it did, and in the time it did, without using Flexport's materials. Flexport is desperate to have the Court rule in its favor on this core, disputed issue, because one of Defendants' experts has definitively disproven Flexport's "not technically achievable" fabrication. Software expert Evan Armstrong ran an experiment using the same LLM that Defendants used [redacted] and beat the very 95% accuracy rate that Flexport claims could not be achieved, in a fraction of the time that Defendants had to achieve it. Basile Decl. Ex. 17 at 20-21 & Appendix E. Flexport implores the Court for an end run around its evidentiary burden because it knows it cannot win this issue on the merits at trial.

[redacted] Logs. Flexport argues that freightmate used "2,784,712 [redacted] input tokens" in June 2024, which is "consistent with a large classification job using large numbers of documents," and complains that it lacks [redacted] logs to see each and every call and response. Mot. at 10-11. Setting aside the facts that such [redacted] logs cannot be retained beyond their 30-day default setting unless manually exported every 30 days, and that Flexport itself did not even identify such logs as relevant ESI to maintain ***until nearly a year after it filed this lawsuit***, the issue is an obvious red herring. Flexport's own expert admits that 2,784,712 input tokens equates to just "***364*** requests" (Hotz Rprt. at 63), which blows away Flexport's theory that freightmate not only ran "***2,000*** FlexID" files through [redacted] in June 2024, but that freightmate did so ***multiple times*** given its "iterative prompt testing" approach (Mtn. at 11).

[redacted] Finally, Flexport complains that freightmate should have [redacted]

[redacted] Mtn. at 11, 19. But Flexport's own expert, Dan Regard, admits that [redacted] Regard Decl. (Dkt. 179-6) ¶ 101, Fig. 3. And freightmate had no reason to build a costly-and-risky custom approach to exporting this information when it had deleted all known copies of the Flexport Shipping Documents in its possession, and Flexport never provided any indication that [redacted] of this or any type should be preserved.

Flexport's Motion "evokes the adage: 'if the facts are against you, argue the law. If the law is against you, argue the facts. If the law and the facts are against you, pound the table and yell like hell.'" *Federal Trade Commission v. Int'l Markets Live, Inc.*, No. 2:25-cv-00760-CDS-NJK, 2025 WL 3033996, at *1 (D. Nev. Oct. 29, 2025). Finally faced with the harsh reality that neither the facts nor the law support its bold claims, Flexport has pivoted to imploring the Court to fill in the large evidentiary gaps in its case. But there was no spoliation here. Flexport lacks evidence because its claims lack merit. And the Court should decline Flexport's invitation to violate defendants' due process by putting additional weights on the scales to make up for the evidence Flexport lacks.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Defendants should have reasonably foreseen litigation with Flexport prior to defendant Lacaillade and Zhao's receipt of correspondence from Flexport's counsel on September 6, 2024 (the "Notice Letter")?

2. Whether Defendants had an obligation to preserve the Flexport Shipping Documents or the Prompt-Related Documents deleted on July 1, 2024 and September 6, 2024, when they acted to ensure a clean room for freightmate's independent development of Docmate on the July date and acted in accordance with Flexport's demand on the September date, and when Defendants had no reason to believe (and Flexport still cannot show) that such materials would have evidenced Flexport's claims?

3. Whether it would have been reasonable to expect Defendants to develop a manual solution to preserve the contents of the [redacted]—whose default settings

could not be altered—given both the technical hurdles and Flexport's failure to timely identify that ESI in accordance with the ESI Order in this case?

4. Whether Flexport has carried its burden of showing that Defendants acted with the intent to deprive Flexport of relevant evidence?

## III. STATEMENT OF FACTS

### A. The Individual Defendants Begin Discussing a Startup, and Include Their Flexport Supervisor in Those Discussions

In October 2023, Messrs. Lacaillade and Zhao, along with a few Flexport colleagues—***including their boss, Leo Li***—began discussing the possibility of starting a company together. Basile Decl. Ex. 18 at 6. The men created a non-Flexport WeChat group and later, a non-Flexport Slack channel, to discuss the potential startup, which would use AI to automate something as-yet undetermined. *Id*. The group met outside of work to discuss AI trends and ideas. *Id*.

From the earliest of these meetings, Mr. Lacaillade and the others were careful to ensure their efforts did not run afoul of their obligations to Flexport. Mr. Lacaillade encouraged the others to review their Flexport employment agreements to understand their obligations (Basile Decl. Ex. 1), and on behalf of the group [redacted] Basile Decl. Ex. 19. The group was also careful not to use Flexport materials in creating or developing a new business venture. Basile Decl. Ex. 1.

### B. Mr. Lacaillade Tells Flexport's CEO He Is Leaving to Start Freightmate

Around February 2024, Mr. Li chose to stop participating in the startup discussions. Basile Decl. Ex. 18 at 7. Soon thereafter, Mr. Lacaillade decided that he was ready to pull the trigger. *Id*. He discussed his departure with Flexport CEO Ryan Petersen on May 6, 2024, disclosing that he was "taking the entrepreneurship route … at the intersection of AI and supply chain/logistics[.]" *Id*. Mr. Petersen complimented Mr. Lacaillade as a "star for [Flexport]," and wished him well. Declaration of Bryan Lacaillade ("Lacaillade Decl.") ¶ 2. Mr. Lacaillade then incorporated freightmate, and was joined by Rishab Gadroo, freightmate's founding and current Chief Technology Officer. Basile Decl. at 7.

Meanwhile, Mr. Zhao chose to continue working at Flexport until June 4, 2024 due to an

equity vest that would complete on June 2, 2024. Basile Decl. Ex. 18 at 7. Mr. Zhao joined freightmate on June 5, 2024. *Id.* at 8. Unbeknownst to Mr. Lacaillade at the time, [redacted] Basile Decl. Ex. 22 at 1, Ex. 2 (Lacaillade 2026-04-20 Tr.) at 155:17-156:2.

### C. The Shipping Documents Are Added to, then Removed from, Google Drive

The majority of Flexport documents that Mr. Zhao retained never made their way onto freightmate's systems. However, in June 2024, he moved some Flexport shipping documents (hereafter, "Flexport Shipping Documents")[1] to freightmate's Google Drive. On July 1, 2024, Mr. Lacaillade directed Mr. Zhao to delete any Flexport documents from freightmate's Google Drive, including the Flexport Shipping Documents. Basile Decl. Ex. 18 at 11. Messrs. Lacaillade, Zhao, and Gadroo also deleted Flexport Shipping Documents they could find on their laptops and email accounts, and Mr. Gadroo deleted the few Shipping Documents he could find on the tech@freightmate.ai email account. *Id.* Mr. Lacaillade directed the deletion of Flexport Shipping Documents to ensure freightmate had a "clean room" environment for the development of its own product, Docmate. Basile Decl., Ex. 2 at 174:8-19, Ex. 3 (B. Lacaillade 2026-04-24 Tr.) at 148:17-23.

On September 6, 2024, Flexport sent Mr. Lacaillade and Mr. Zhao nearly identical letters. Basile Decl. Ex. 4, 20. These letters were the first hint that Flexport might have a quarrel with freightmate or its founders. After summarizing their roles and continuing obligations to Flexport, the letters closed with a demand that Mr. Lacaillade and Mr. Zhao "***Confirm that you have fully complied with Section 3.b of the EIPIA and have not retained and do not possess any Flexport Proprietary Information***." *Id.* (emphasis added).

Understanding (correctly) that Flexport was instructing them to destroy any Flexport Proprietary Information that may have remained in their possession, the freightmate founders searched for and deleted any Flexport Shipping Documents remaining on freightmate's systems. Basile Decl. Ex. 6 at 16-17. In addition to a few remaining Flexport shipping documents, Mr.

[1] Flexport frequently refers to the Flexport Shipping Documents as "Flex ID files" in its Motion. *See e.g.*, Mtn. at 3, 7, 10, 12.

Lacaillade also found and deleted other, non-Flexport, development-related documents that were no longer in use by freightmate, including documents provided by freightmate's initial design partner (Primary Freight), as well as early LLM prompt-related files. Basile Decl. Ex. 6 at 17; Ex. 2 at 176:18-177:10. Shortly thereafter, freightmate engaged legal counsel and a forensic firm, and the forensic firm created images of various freightmate and founder devices and repositories. Basile Decl. Ex. 13.

[redacted]

E. Flexport Files this Action and Fails to Identify the Sources It Now Complains About as Needing to Be Preserved

Flexport filed its original Complaint on March 12, 2025 against and Messrs. Zhao and Lacaillade, alleging trade secret misappropriation, copyright infringement, and breach of contract. Dkt. 1. On June 17, 2025, the Court entered a Stipulated Order re: Discovery of Electronically Stored Information [Dkt. 56] ("ESI Order"), ordering the parties to "exchange a list of the types of ESI they believe should be preserved by the corporate Parties and the custodians … ." Shortly

thereafter, on June 26, 2025, Flexport took Mr. Gadroo's deposition as freightmate's person most knowledgeable of freightmate's electronic information systems. Basile Decl. Ex. 23.

Mr. Gadroo testified that freightmate used [redacted] (Basile Decl. Ex. 24 (Gadroo 2025-06-26 Tr.) at 41:4-7; 43:12-18), and an OpenAI account (*Id.* at 61:18-20). Despite these disclosures—and despite freightmate offering its source code for inspection in September 2025, and again identifying the Google Cloud and OpenAI repositories in October 2025 written discovery responses—Flexport never invoked the procedure set forth in the ESI Order to ask Defendants to take any steps to preserve ESI from the Google or OpenAI repositories.

On October 6, 2025, Defendants sent Flexport a proposed protocol for a third-party inspection of the forensic images of Defendants' accounts and devices that their vendor had made pre-litigation. Basile Decl. Ex 25. Flexport delayed even engaging on the proposal for nearly half a year.[2] Ultimately, the Court agreed that Defendants' protocol was appropriate, and entered the parties' April 30, 2026 Stipulation and Order Setting Protocol for Limited Forensic Inspection of Defendants' Electronic Devices and/or Accounts. Dkt. 157. That forensic inspection is now, finally, underway.

### F. The Court Denies Flexport's "Emergency" Motion to Extend the Schedule

On April 29, 2026 (i.e., two days before the close of fact discovery), Flexport filed an Emergency Motion to Modify Case Schedule, arguing that it needed more time to take discovery regarding freightmate's use of [redacted] Dkt. 152. On May 6, 2026, the Court denied the request, noting: "The record demonstrates that Flexport did not diligently seek the discovery in question regarding Google Cloud and ChatGPT." Dkt. 167.

### G. Flexport Files the Instant Motion

Flexport's next move was to file the instant Motion on June 5, 2026. The Motion identifies four categories of allegedly-spoliated documents:[3]

---

[2] This Court previously admonished Flexport for its delay in agreeing to the forensic inspection protocol. See Basile Decl. Ex. 26 (2026-04-01 Hrng. Tr.) at 35:2-36:3.

[3] Flexport also alleges that Mr. Zhao deleted Operational Files from his personal USB drive on September 7, 2024. Mtn. at 18:21-23. Freightmate and Mr. Lacaillade do not address those

1. The Flexport Shipping Documents stored on freightmate's Google Drive, that were deleted on July 1, 2024 and September 7, 2024. Mtn. at 17:5-6; 17:25-26; 18:21-23.

2. Documents related to freightmate's LLM prompts ("Prompt-Related Documents"), including (a) six files deleted on July 1, 2024: "Prompt Engineering Doc Automation," "Prompt Corrections," "Master Bill of Lading Prompt," "Packing List Prompt," "Commercial Invoice Prompt" and "Arrival Notice Prompt" (Mtn. at 17:5-6; 17:25-26) and (b) a dozen files deleted on September 7, 2024: "Workflow Automation," "CI Prompt," "SOP Management," "Prompts (folder and contents)," "PL Prompt," "Original MBL Prompt," "freightmateAi Roadmap," "Data for Demo," "Prompt Engineering Notes," "Rishab's Example Prompt," "Prompt Engineering for Doc Automation" and "Arrival Notice Prompt_.docx." Mtn. at 13:16-21.

3. [redacted] Mtn. at 17:5-6; 18:16-17; 19:11-19; 21:14-16.

4. [redacted] Mtn. at 17:5-6; 18:16-17; 19:20-23.

## IV. LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(e), a court may sanction a party "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If these criteria are met, then the moving party must make at least one of two additional showings, which showing(s) will then drive the potential remedy. Specifically, the Court:

> (1) ***upon finding prejudice to another party*** from the loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only ***upon finding that the party acted with the intent to deprive another party*** of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

*Id.* (emphasis added).

---

deletions because those files were not accessible to freightmate, and Mr. Lacaillade did not know Mr. Zhao had Flexport files on a personal drive at the time Mr. Zhao deleted them. Basile Decl. Ex. 2 at 155:17-156:2.

As to Rule 37(e)(1), "[t]he Court has discretion to determine whether the loss of the information is prejudicial; neither party carries a burden of proving or disproving prejudice." *Ramirez v. Zimmerman*, No. 17-CV-1230-BAS-AHG, 2020 WL 905603, at *2 (S.D. Cal. Feb. 25, 2020); *see also* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment, Subdivision (e)(1) ("The rules leaves judges with discretion to determine how best to assess prejudice[.]"). "[W]hether the loss of the information was prejudicial depends in part on the importance of the information to the case." *Ramirez*, 2020 WL 905603, at *2. As to Rule 37(e)(2), the moving party has "the burden of establishing spoliation by demonstrating that [the non-moving party] destroyed documents and had some notice that the documents were potentially relevant to the litigation before they were destroyed." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015) (internal quotation marks omitted); accord *Ramirez*, 2020 WL 905603, at *2.

## V. ARGUMENT

### A. Defendants Had No Duty to Preserve Documents in June, July, or August 2024 Because They Did Not Reasonably Anticipate Litigation with Flexport

Defendants did not anticipate litigation with Flexport—reasonably or otherwise—before they received the September 6, 2024 letters. When Mr. Lacaillade left Flexport in May 2024, he told Flexport's CEO that he was starting a new company, and the CEO wished him well. Basile Decl. Ex. 18 at 7; Lacaillade Decl. ¶ 2. Earlier, in October 2023, Messrs. Lacaillade and Zhao looped their Flexport supervisor, Leo Li, into their startup discussions. Indeed, Mr. Li not only knew about the two men's plans, he spent months helping them brainstorm. Basile Decl. Ex. 28.

Undaunted, Flexport cites nearly a dozen cases to support its claim that Defendants somehow should have anticipated Flexport's vindictiveness either:

- Back in mid-February 2024, when Mr. Lacaillade consulted an attorney to ensure he complied with his contractual obligations;
- In May 2024 when Mr. Zhao uploaded the Flexport Shipping Documents to freightmate's Google drive and Gadroo ran a handful of them through [redacted] or
- By June 13, 2024, when Mr. Lacaillade ran 5-10 Flexport Shipping Documents through [redacted][4] Mtn. at 15-17.

[4] Flexport incorrectly states that Messrs. Gadroo and Lacaillade ran Flexport Shipping Documents

None of Flexport's authorities so hold. With one easily-distinguishable exception,[5] each of Flexport's cases involve instances in which litigation was only found to be "reasonably foreseeable" when (a) litigation already had been planned by a spoliating plaintiff or (b) litigation already had been threatened, or a lawsuit filed, against a spoliating defendant. Specifically:

- In *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1345-46 (Fed. Cir. 2011) and *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011), the Court considered the litigation "reasonably foreseeable" to a patent holder (Rambus) when its CEO commanded the Vice-President for intellectual property "to identify and justify his choice for the first licensing or litigation target," and to set out what Rambus's "strategy [would be] for the battle with the first target that we will launch in [O]ctober [1999]."

- In *Apple Inc. v. Samsung Elecs. Co.*, 888 F.Supp.2d 976, 990 (N.D. Cal. 2012), the court found defendant Samsung's preservation duty arose when Apple made an in-person presentation of its "specific patent infringement claims against specific Samsung products."

- *In re Napster, Inc. Copyright Litig*., 462 F.Supp.2d 1060, 1068 (N.D. Cal. 2006), the court held a duty to preserve attached when Hummer – an investor in Napster, itself already a defendant in multidistrict litigation – instructed its employees to retain documents related to Napster and had entered into a Common Interest Defense Agreement with Napster at the time of its investment.

- Litigation by Oracle against Hewlett Packard Enterprise ("HPE") was reasonably foreseeable in *Oracle Am., Inc. v. Hewlett Packard Enter. Co.,* 328 F.R.D. 543, 551 (N.D. Cal. 2018), when Oracle sued HPE's partner Terix and evidence regarding HPE's conduct was used in the Terix litigation.

- The court found trade secret litigation against the defendant in *Microvention, Inc. v. Balt USA, LLC*, No. 8:20-CV-02400-JLS-KES, 2023 WL 7476998, at *15-17 (C.D. Cal. Oct. 5, 2023), *report and recommendation adopted*, 2023 WL 7634109 (C.D. Cal. Nov. 13, 2023), "reasonably foreseeable" after a patent infringement complaint filed against defendant's company alleged he had "directly copied" plaintiff MVI's technology that he worked on when he was employed by them and defendant had received a litigation hold notice in connection with the patent case.

- In *Skyline Advanced Tech. Servs. v. Shafer*, No. 18-CV-06641-CRB (RMI), 2020 WL 13093877, at *8 (N.D. Cal. July 14, 2020), *report and recommendation adopted*, 2020 WL 13093878 (N.D. Cal. July 30, 2020), the Court found litigation reasonably foreseeable as of the date the employee sent an email to her employer (Skyline) identifying a claim between herself and the company, formally requested

---

through "ChatGPT." *See* Mtn. at 17. Even the evidence cited by Flexport shows that they ran the documents through [redacted] (and solely for the purpose of seeing how well they could extract data from generic shipping documents). *See* Basile Decl. Ex. 18 at 8, 10.

[5] *Rimkus Consulting Grp., Inc. v. Cammarata* was decided before Rule 37(e) was amended in 2015 to specify the measures a court should apply when determining whether spoliation has occurred. Nor does it support a finding that litigation was reasonably foreseeable ***months before*** Lacaillade and Zhao received the September 2024 letters. *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 641-42 (S.D. Tex. 2010).

a meeting with Skyline's legal counsel and its HR officer, and informing them that she was seeking out legal counsel for a compensation-related issue raised by her employer.[6]

- In *WeRide Corp. v. Huang*, No. 5:18-CV-07233-EJD, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020), sanctions were imposed solely based on post litigation conduct, including the deletion of countless emails and the wiping of laptops after the lawsuit was filed and after a preliminary injunction issued and a company-wide use of an ephemeral messaging app after the PI issued.

- The plaintiff's duty to preserve in *Barsoum v. N.Y.C. Hous. Auth.*, 202 F.R.D. 396, 400 (S.D.N.Y. 2001) arose prior to litigation, at the time plaintiff retained counsel for purposes of pursuing an employment discrimination claim.

Unlike the plaintiffs in *Hynix*, *Micron*, and *Barsoum*, there is no contention here that Mr. Lacaillade consulted with counsel in order to plan litigation against Flexport. To the contrary, Flexport concedes that the obvious purpose of that engagement was for the freightmate founders to ensure that they complied with their obligations so as to ***avoid*** litigation. Mtn. at 6. And unlike the parties seeking sanctions in Flexport's other cited authorities, Flexport gave Defendants no indication before September 2024 that it believed there was anything wrongful about the founders' pursuit of a new business venture.

Mr. Li himself was part of the very discussions in which Mr. Lacaillade emphasized: "We cannot use Flexport resources for anything as we build this out based on our offer letter. We just need to keep this in mind 👍". *See* Basile Decl. Ex. 1. Mr. Li testified that [redacted] (Basile Decl. Ex. 27 at 70:2-8), [redacted] (*id*. 59:22-60:6), and that [redacted] (*id*. 60:13-15). Notably, while Messrs. Lacaillade and Zhao told their supervisor about their plans, Mr. Li himself did not tell his supervisor:

[redacted]

[6] Flexport misrepresents the Court's reasoning in *Shafer*. Although the Court considered finding the duty to preserve began on the date Shafer signed an independent contractor agreement with a competitor, it ultimately held the duty arose on the date Shafer "formally" requested a meeting with HR because Shafer herself raised the possibility of litigation. 2020 WL 13093877, *8. Unlike Ms. Shafer, defendants here did not raise the possibility of litigation with Flexport. And of course, defendants consulted legal counsel in December 2023 in order to <u>avoid</u> litigation with Flexport, not to instigate it.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Basile Decl. Ex. 27 at 78:13-79:9.

Flexport's own authority recognizes that the "reasonably foreseeable" standard "does not trigger the duty to preserve documents from the mere existence of a potential claim or the distant possibility of litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (cited in Mot. at 15). Similarly, the Court in *Oracle*, 328 F.R.D. at 549—another case cited by Flexport (Mot. at 15)—recognizes that "a general apprehension of lawsuits [over a particular product] does not create a duty to preserve all documentation related to [that product]." *See also Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009).

The facts here mirror those in cases where courts have found that litigation was not reasonably foreseeable until a notice letter had been sent. *See, e.g., Smahi v. STMicroelectronics, Inc.*, No. 5:23-CV-06645-PCP, 2026 WL 836558 (N.D. Cal. Mar. 26, 2026) (whereas there was no duty to preserve evidence relevant to former employer's counterclaims before notice had been given, litigant violated duty to preserve evidence by deleting ESI after receiving demand for

forensic imaging of his devices and email addresses); *Bungie, Inc. v. AimJunkies.com*, No. C21-0811 TSZ, 2023 WL 7184427, at *5 (W.D. Wash. Nov. 1, 2023) (defendants' duty to preserve evidence arose when defendants received cease-and-desist letters from plaintiff, warning plaintiffs may pursue legal sanctions if defendants destroyed relevant evidence); *Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 509-11 (D. Md. 2009) (duty to preserve triggered by letter suggesting likelihood of litigation, despite prior communications regarding the dispute); *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, No. 3:16-MD-2734, 2018 WL 4856767, at *3 (N.D. Fla. Oct. 5, 2018) (earliest defendant should have reasonably anticipated litigation was after it first learned claims might be filed); *Sonrai Sys., LLC v. Romano*, No. 16 C 3371, 2021 WL 1418405 (N.D. Ill. Jan. 20, 2021), *report and recommendation adopted*, 2021 WL 1418403 (N.D. Ill. Mar. 18, 2021) (although defendant who received demand letter was under duty to preserve ESI from that date forward, defendant who did not receive a demand letter, request for evidence preservation, or threat of litigation had no duty to preserve evidence).

Defendants had no obligation to preserve any materials prior to September 6, 2024.

### B. It is Unreasonable for Flexport, Which Actively Destroyed Its Own Investigatory Materials in Early 2025, to Assert that Defendants Should Have Anticipated Litigation Before the September 6, 2024 Letters

How can Flexport tell this Court that Defendants should have anticipated litigation months before receiving Flexport's September 6, 2024 letters, and kept all manner of peripheral materials, when Flexport itself was actively deleting ***the very investigatory materials that precipitated this case, as late as 2025***?

Before it sued Defendants, Flexport conducted an internal investigation into Mr. Zhao's Flexport computer activity. That investigation was performed by Flexport's Senior Enterprise Security Engineer, Ayodele Okeowo. Basile Decl., Ex. 8 at 11:5-7; 69:15-70:12. Mr. Okeowo testified that after completing his investigation, he followed his standard practice and destroyed, rather than retained, "data that we collected during an investigation, discoveries, nothing. We don't do that. Basically have to remove that." *Id.* at 152-14-153:10. When then asked, "[i]s that the case even if you think it might be used later in litigation," he responded: "I don't, I can't see the future. I don't know the future. I can't see if there's going to be legal stuff or not." *Id.* at

153:11-15.

Neither Mr. Okeowo's then-supervisor, Peter Pham, nor his current supervisor, Matthew Nuckolls, could say [redacted] Basile Decl. Ex. 8 at 14:6-13; Ex. 9 at 38:13-17, 40:25-41:5, 42:25-43:17; Ex. 10 at 169:10-170:25. His current supervisor, Mr. Nuckolls, also testified that [redacted] Basile Decl. Ex. 10 at 123:20-124:3. And while we don't know (and will never know) [redacted] Ex. 8 at 65:14-70:7.

Flexport is a multi-billion-dollar company. Its insistence that a three-person startup, working on less information that Flexport had, somehow should have adhered to a stricter document retention standard than Flexport itself adhered to in this instance, is preposterous.

### C. Even if Defendants Should Have Anticipated Litigation Before the September 6, 2024 Letter, They Did Not Destroy Any Evidence that They Should Have Known Would be Relevant to Reasonably Foreseeable Litigation with Flexport

Even assuming *arguendo*—and contrary to Ninth Circuit authority—that Defendants should have anticipated litigation even before Flexport first reached out to them, it still would not have been reasonable for Defendants to preserve the specific materials discussed in the Motion.

#### 1. Defendants Deleted the Flexport Shipping Documents to Create a Clean Room Environment, and Flexport's September 6, 2024 Letter Confirms They Made the Correct Decision

Flexport complains (Mtn. at 17-18) that Defendants deleted Flexport Shipping Documents from their systems. That is pretty rich, given that Flexport itself demanded they do so.

As discussed above, Defendants appropriately deleted the Flexport Shipping Documents on July 1, 2024 to create a clean room—not because they thought those documents would be evidence in a future lawsuit. Ex. 2 at 174:8-19; Ex. 3 at 148:17-23. Not only was such deletion the right thing to do, it's the very thing that ***Flexport itself demanded*** Defendants do in their September 6, 2024 letter. How can Flexport complain about Defendants proactively doing what

Flexport would later demand that they do? Flexport's argument about the September deletions is similarly misguided. Mr. Lacaillade deleted a few remaining documents in September 2024 because Flexport directed him to "[c]onfirm that [he] ha[d] not retained and d[id] not possess any Flexport Proprietary Information." Basile Decl. Ex. 4 at 3.

Fennemore Wendel—the law firm that sent "legal notice" letters (the "Notice Letters") to Lacaillade and Zhao—clearly knew how to demand that a potential litigation adversary preserve documents if it had wanted to. Earlier in 2024, Fennemore Wendel sent a letter to a party to an unrelated matter, advising it to "take all steps necessary to preserve all potentially relevant information, including … documents … and electronically stored information ("ESI")." Basile Decl. Ex. 5. But when it came to Defendants in this matter, the firm (on behalf of Flexport) demanded the opposite. Defendants acted reasonably in complying.[7] *See* Basile Decl. Ex. 2 at 171:13-172:22, 175:22-176:17.

### 2. Defendants Had No Reason to Believe they Needed to Keep Deprecated Files Related to LLM Prompts, Which Did Not Incorporate Flexport Information Anyway

Flexport next argues (Mtn. at 13, 17) that Defendants acted improperly in deleting documents related to their early prompt-engineering efforts. The evidence is to the contrary.

Flexport's September 6, 2024 letters made no mention of the LLM prompts that freightmate had worked on. Instead, they insinuated that Defendants improperly had used Flexport Proprietary Information, and closed with a demand that they confirm within five days that they no longer have any Flexport Proprietary Information. Basile Decl. Ex. 4. Despite already having removed the shipping documents from freightmate's Google Drive, Mr. Lacaillade—as requested—reviewed freightmate's systems for any straggler Flexport materials.

Mr. Lacaillade testified that while he was looking at materials to ensure that the company had not inadvertently retained any additional Flexport files on freightmate's repositories, he took the opportunity—in conformance with his standard practice—to delete files that were no longer in

[7] Flexport states as fact that, when informed by Mr. Lacaillade about the Notice Letters, Freightmate investor Kellan Carter told him not to delete anything. Mtn. at 13, 18. During his deposition, Mr. Lacaillade testified under oath that he recalled no such advice or interaction. *See* Basile Decl. Ex. 2 at 149:25-151:10.

use. Basile Decl. Ex. 2 at 176:22-177:10; Ex. 3 at 141:9-15. He determined which documents were no longer in use by reference to the documents' "last opened" date. *See* Basile Decl. Ex. 6 at 17; Lacaillade Decl. ¶ 4. Consistent with Mr. Lacaillade's testimony, the freightmate Google Drive Audit Log shows that the Prompt-Related Documents deleted on September 7, 2024 were last accessed between May 12 and August 8, 2024—i.e., a month or more before they were deleted. *See* Basile Decl. Ex. 7 at Row 66478 ("Workflow Automation" last accessed on 5/14/24); Row 23300 ("CI Prompt" – 8/6/24); Row 67708 ("SOP Management" – 5/12/24); Row 22798 ("Prompts (folder and contents)" – 8/8/24); Row 23301 ("PL Prompt" – 8/6/24); Row 22797 ("Original MBL Prompt" – 8/8/24); Row 56547 ("freightmateAi Roadmap" – 7/1/24); Row 56688 ("Data for Demo" – 6/30/24).

For its part, Flexport offers no reason to believe that the prompt-related files contained any sort of Flexport information; indeed, it would make no sense if they did, seeing as how, [redacted] *Compare* Basile Decl. Ex. 29 at 6-8 *with* Declaration of Rishab Gadroo ("Gadroo Decl.") ¶ 7.

### 3. Defendants Could Not Override the [redacted] Log Retention Settings, and It Would Have Been Unreasonable for Them to Implement a Custom Solution Given Technical Hurdles and Lack of Relevance

Flexport's assertion that Freightmate "knew or should have known" that its [redacted] (Mtn. at 19, 21) is revisionist history. Indeed, Flexport itself clearly did not see any relevance to the logs until recently, when it found itself in need of an excuse for a critical lack of evidence supporting its bold claims.

As required by the Northern District's Local Rules, the parties stipulated to an ESI Order shortly after the lawsuit was filed. Dkt. No. 55. Pursuant to the ESI Order, the "[p]arties agree[d] to exchange a list of the types of ESI they believe should be preserved by the corporate Parties …" *Id.* at § 4(b). Flexport's counsel ***never*** provided freightmate with a list of the types of ESI it wanted preserved, or otherwise suggest that [redacted]

[redacted] should be preserved until February 2026—long after the August and September 2025 dates by which Flexport concedes the application retention periods for the June and July 2024 [redacted] would have passed.[8] *Compare* Mtn. at 12 *with* Basile Decl. Ex. 11.

Moreover, attestations by Dieter Hotz and Dr. Michael Kay that [redacted] constitute "foundational evidence" (*see* Hotz Decl. ¶¶ 36, 38; Kay Decl. ¶¶ 27-28) are both untimely expert opinion testimony[9] and directly contested. Particularly where freightmate deleted all known Flexport Shipping Documents in its possession on July 1, 2024 (*see* Basile Decl. Ex. 6 at 14), it had no reason to retain all ESI showing its prompt design, actual prompts used, or expected and return outputs to establish it independently developed Docmate. Gadroo Decl. ¶ 6. Freightmate documented its development of Docmate—including the shipping documents used in development—in its Github repository (which Flexport's expert inspected), which repository includes detailed explanatory notes for the thousands of source code commits. *Id.* Freightmate also retained (and produced) the prompts and shipping documents it used to develop the Docmate prototype and all later versions of Docmate. *Id.* ¶ 6; Basile Decl. ¶ 31. The reasonableness of freightmate's preservation practices is underscored by the opinion of expert Bob Zeidman that freightmate's existing May to July 2024 development record is fully consistent with independent development of a logistics document automation system. Basile Decl. Ex. 12 (Zeidman Report, ¶¶ 25-53).

Nor was this a simple matter of toggling a default setting, as Flexport suggests.[10] *See*

---

[8] As discussed below, it would not have been reasonable—or even possible as to certain logs—to have changed the default settings in the manner Flexport suggests.

[9] Under the Scheduling Order, Expert Reports were due on May 8, 2026. These and other opinions offered in the Declarations of Hotz, Kay and Dan Regard could and should have been disclosed at that time to allow Defendants adequate time for rebuttal. They were not.

[10] Unlike here, the ESI that defendants failed to preserve in the cases cited by Flexport easily could have been retained by simple measures. *See* Mtn. at 19 (citing *In re Napster*, 462 F. Supp. 2d at 1070 (defendant failed to alter its email deletion policies); *Matthew Enter., Inc. v. Chrysler Grp. LLC,* No. 13-cv-04236-BLF, 2016 WL 2957133, at *1, *3 (N.D. Cal. May 23, 2016) (defendant failed to retain emails on its previous email system when it changed email vendors and to instruct its outside vendor to extend its 25 month retention policy) and *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, No.: 14-CV-1191 JLS (KSC), 2019 WL 6527951, at *8 (S.D. Cal. Dec. 4, 2019) (defendant failed to modify its Microsoft Exchange default settings or did not institute a written litigation hold until four years after lawsuit filed).

Mtn. at 11 (citing Hotz Decl. ¶ 9; Regard Decl. ¶¶ 43, 46, 101-102); Mtn. at 19-20. There are peculiarities unique [redacted] that make it impractical (or impossible) to alter the existing retention settings or otherwise preserve data after the platforms' set retention periods. *See* Gadroo Decl. ¶ 8-10.

To begin, Flexport's own expert, Dan Regard, acknowledges that OpenAI ***does not allow*** the OpenAI API and/or OpenAI compliance log setting to be "reset" to allow for more than a 30-day retention of ESI. Declaration of Dan Regard ("Regard Decl.") ¶¶ 101-102 & Fig. 3 (showing no "Optional Retention" beyond the 30-day Default Retention). He also acknowledges that [redacted] admin activity audit logs could not be reset to allow for retention beyond the 400-day default retention period. Regard Decl. ¶¶ 101-102 & Fig. 3. The only way that freightmate could have preserved the [redacted] conversation, chat, response, completion logs and test prompts sent to [redacted] since June 13, 2024 (which, again, would not assist Flexport anyway), would have been to repeatedly export the API logs, no less than every 30 days, beginning on July 12, 2024. Gadroo Decl. ¶¶ 13-14. Particularly given that Defendants had deleted the known Flexport Shipping Documents in Freightmate's possession on July 1, 2024, they had no reason to do that. *See* Section III.C.

Nor did freightmate have any reason to undertake the burdens involved in manually preserving the [redacted] admin activity audit logs beyond 400 days. Such an effort would have required a great deal of time, effort and diligence because freightmate had never implemented a custom solution for preserving these logs before. Gadroo Decl. ¶ 10. At a minimum this would have involved a multi-step process that included evaluating solutions based on various use cases; developing an implementation plan; implementing and verifying the solution in a test environment, and implementing and verifying in the actual environment. *Id.* Attempting to develop a means to export and preserve this data externally also carried a high degree of risk that audit log settings in the [redacted] system might be changed with one misstep. *Id.* Given that Flexport failed to timely propose that the [redacted] Logs should be preserved past their existing retention settings, undertaking such costly and risky preservation efforts would have been

unnecessary and wasteful.

Furthermore, in the early days of Freightmate, Defendants were not aware of the potential litigation relevance of either the [redacted] admin activity audit logs or the [redacted] data access audit logs. *Id.* ¶ 11. The company's focus was on making a functioning product, and audit or data access logs have no bearing on functionality. *Id.*

### D. Defendants Retained a Firm to Image Various Google Drives, Gmail Accounts, Personal Laptops, Personal Emails, and Personal Cell Phones After Receipt of the Notice Letters

Flexport tells the Court that Defendants failed to have critical freightmate repositories preserved after receipt of the Notice Letter. Mtn. at 20. That is not true, and Flexport knows it.

On April 24, 2026—in conjunction with Mr. Lacaillade's designation as a Rule 30(b)(6) witness on freightmate's data sources and accounts provided to Lighthouse—freightmate produced a document titled "Data Sources Imaged by Lighthouse in October 2024." *See* Basile Decl. Ex. 3 at 9:18-20 & its Ex. 54 (Topic 49); Basile Dec. Ex. 13. The document listed ***fifteen different freightmate and founder repositories that Lighthouse had imaged***. *See id.* Flexport's counsel chose not to ask Mr. Lacaillade any questions about the document at his deposition. *See generally* Basile Decl. Ex. 3. Not only did freightmate work with Lighthouse to undertake costly, pre-litigation imaging of fifteen repositories, Lighthouse also created a Google Drive Audit Log (FREIGHT041366) that detailed every action taken on any document on the freightmate Google Drive account from the date the account was established to the date Lighthouse imaged it. Basile Decl. Ex. 7. Flexport knows the document well; the instant Motion relies on it. *See* Mtn. at 9, 13 (citing Ratinoff Exhs. 23 and 25). If freightmate had intended to hide evidence of wrong-doing, it never would have commissioned the creation of FREIGHT041366 much less produced it ***without redactions*** other than for attorney-client privileged material that it logged.

## VI. Flexport Has Failed to Carry Its Burden of Showing the Requisite Prejudice or Bad Intent

Flexport spills a lot of ink arguing that the Alleged Spoliated Evidence "cannot be restored or replaced through additional discovery" (Mtn. at 21-23)—which obviously is false as to the Flexport Shipping Documents, since Flexport itself produced them in this case. In any event, Flexport fails to carry its burden of showing that it was prejudiced by the loss of any

supposed "evidence," much less that Defendants acted with bad intent. Certainly, Flexport fails to show that Defendants had ***notice*** that the ***specific categories*** of Alleged Spoliated Evidence were "potentially relevant to litigation before they were destroyed" as the law (including Flexport's cited authority) requires. *See* Mtn. at 22-23 (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006)); *see also Ryan*, 786 F.3d at 766 (same).

Flexport Shipping Documents. Defendants' deletion of the Flexport Shipping Documents may not serve as the basis for sanctions because Flexport still has them. Freightmate served discovery requesting that Flexport produce a copy of each of the deleted documents. Basile Decl. Ex. 14, Document Request No. 50. Flexport produced those documents on March 18, 2026, and (after being ordered to) finally identified them by Bates Number as part of its alleged trade secret "Dataset[] for Training Automated Freight Management Tools." Basile Decl. Ex. 15 at 166-67.

Flexport asks the Court to ignore the fact it has produced its copies of the Shipping Documents because they "cannot show what Defendants did with their copies." Mtn. at 21. That makes no sense; all parties agree that the documents were on freightmate's Google Drive before being deleted (something Flexport demanded). And the evidence demonstrates that freightmate did not retain copies of those documents (again as Flexport demanded).[11] *See* Basile Decl. Ex. 6.

Prompt-Related Documents. Flexport has failed to carry its burden of showing that the Prompt-Related Documents are even relevant to the litigation, much less that Defendants had notice of that purported fact before deleting them. Flexport's argument hinges its assertion that the "prompts would have shown the actual instructions Defendants used, the fields and document type they targeted, the errors they corrected, and the iterations through which Docmate's extraction capabilities were developed." Mtn. at 22 (citing Kay Decl. ¶¶ 20-24; Hotz Decl. ¶¶ 24, 30, 38). But Flexport fails to explain why any of this information would help it.

Flexport does not contend that its prompts, instructions, errors corrected, or number of

---

[11] Although not raised in its Motion, Flexport's expert Dieter Hotz opines that [redacted] *See* Hotz Decl. ¶¶ 18-21. Freightmate's expert Bob Zeidman flatly disagrees with Mr. Hotz's opinion, which he explains has fundamental flaws. *See* Basile Decl. Ex. 16 Zeidman Rebuttal Report at ¶¶ 38-42.

iterations through which its own extraction capabilities were developed constitute its trade secrets, much less that freightmate received access to those items.[12] *See* Basile Decl. Ex. 15. Instead, judging from the nature of the opinion testimony of Flexport's experts, Flexport apparently wants to see every scrap of ESI used by freightmate between June 13 and July 28, 2024 because Flexport's experts (purportedly) find the Docmate development timeline not credible unless Freightmate was using Flexport Shipping Documents. *See* Kay Decl. ¶ 22 (95% extraction accuracy realized by Docmate on July 12, 2024 "not technically achievable … without preexisting prompts, schemas, [etc] … derived from prior access to Flexport shipping documents); Hotz Decl. ¶¶ 34 ("schema selection, extraction design, and validation rules – are among the most time-intensive to develop[;] [t]here near-immediate appearance following the alleged July 1 reset is difficult to reconcile with independent re-derivation from first principles."). However, this reasoning is flawed in two material respects.

First, there is no indication that Flexport Shipping Documents remained in freightmate's possession after their July 1, 2024 deletion (other than a handful of forgotten copies that, by definition, Defendants did not realize they still had). Second, freightmate's subject matter experts disagree with Flexport's challenge to the Docmate development timeline. As discussed above, Mr. Zeidman opines that the Docmate development timeline is fully consistent with independent development of a logistics document automation system. Basile Decl. Ex. 12 ¶¶ 25-53. And Mr. Armstrong not only opines that Docmate could have achieved the extraction accuracy it did by July 12 without the use of Flexport Shipping Documents, ***he actually performed three independent tests that validate his opinion***. *See* Basile Decl. Ex. 17 at V.H.1, V.G. & Appendix E. He also cites to three recent peer-reviewed and industry-published results that directly contradict Dr. Kay's foundational assumption that Docmate could not have achieved the accuracy it did without training it on Flexport Shipping Documents. *See id.* Ex. 17 at 22.

---

[12] Flexport has never identified a specific dataset of fields and document types it claims to be its trade secret. *See* Basile Decl. Ex. 15. In any event, Freightmate's rebuttal expert opines that "because the field structure of shipping documents is prescribed by federal regulation and international treaty …, and because Flexport itself publicly publishes the document taxonomy and field schemas at developers.flexport.com …, the underlying data taxonomy is publicly known." Basile Decl. Ex. 17 at Sections IV.2, V.F, V.I and Appendices C and D.

Notably, Armstrong and the authors of the peer-reviewed papers he discusses [redacted]. *See* Basile Decl. Ex. 17 at 22; Gadroo Decl. ¶ 7. By definition, this approach [redacted] *See* Basile Decl. Ex. 17 at 22; Basile Decl. Ex. 18. In other words, [redacted] *See* Basile Decl. Ex. 18 at 11.

Finally, as discussed above, litigation was not reasonably foreseeable when freightmate deleted the first small group of Prompt-Related Documents on July 1, 2024. *See* Section V.A, *supra*. And freightmate deleted several remaining Prompt-Related Documents on September 7, 2024 because they were no longer being used for any purpose. *See* Basile Decl. Ex. 2 at 176:18-177:24.

[redacted] Logs. It is rather rich for Flexport to ask this Court to sanction Defendants over the [redacted] logs when, despite the ESI Order, they failed to give the slightest indication that they cared about such logs until February 2026. Especially when that came ***more than four months*** after any custom measures could have been implemented to preserve the June and July 2024 [redacted] Admin Activity Audit Logs (with an unchangeable 400-day retention period) and the [redacted] Data Access Audit Logs and [redacted] API and [redacted] logs (with an unchangeable 30-day retention period). *See* Regard Rpt. [Dkt. 179-6] ¶ 101 & Fig. 3. Defendants were fully justified in not incurring the time, expense, and risk of developing, testing and implementing a custom solution for exporting the [redacted] Logs (Gadroo Decl. ¶¶ 9-11) and exporting the [redacted] Logs every 30-days since June 13, 2024 (Gadroo Decl. ¶¶ 13-14).

These facts are readily distinguishable from those in the cases cited by Flexport to support its claim of willful spoliation. *See* Mtn. at 22-23 (citing *Leon*, 464 F.3d at 959; *Apple Inc. v.*

*Samsung Elecs. Co.*, 881 F.Supp.2d 1132, 1147 (N.D. Cal. 2012); *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024); *Fourth Dimension Software v. DER Touristik Deutschland GmbH*, No. 19-CV-05561-CRB, 2021 WL 5919821, at *10 (N.D. Cal. Dec. 15, 2021)).

In *Leon*, the Ninth Circuit affirmed the lower court's finding of willful spoliation where the defendant asserting retaliation claims deleted entire directories of personal files from his work laptop after being provided written notice to preserve all data and then wrote a program to "wipe" any deleted files from the unallocated space in the hard drive before returning the laptop to his employer. 464 F.3d at 956, 959.

*Apple,* 888 F.Supp.2d at 989, applied a different standard for willfulness (i.e. whether the "records were destroyed 'with a culpable state of mind'") than the one which governs here (that the "party acted with the intent to deprive another party of the information's use in the litigation") because the 2015 amendment to Rule 37(e) had yet to be adopted. Additionally, the defendant's duty to preserve attached pre-litigation in *Apple* because the plaintiff had provided defendant with notice of patent infringement contentions months prior to filing its lawsuit. 888 F.Supp.2d at 991.

Nor can Defendants' conduct here be considered anything like the "selective[] delet[ions]" found to be willful in *Jones*. In *Jones*, the plaintiff—a waitress who had sued the owner of the bar she formerly worked at—had no explanation as to why large groups of her text messages with other co-workers and friends were selectively deleted over a three-year period. 95 F.4th at 733, 735-36. She also failed to turn over the cell phone she used during the relevant time period for imaging, effectively preventing discovery of messages deleted from that phone. *Id.* at 736.

Finally, unlike here, the software licensee defendant in *Fourth Dimension Software* deleted all records of its licensed software usage more than a year after plaintiff provided written notice that it had exceeded permissible usage caps, after the parties had engaged in pre-litigation settlement talks for more than year, and after plaintiff had even sent defendant a draft Complaint. 2021 WL 5919821, at *9.

Because Flexport has failed to show either prejudice or bad faith, it is not entitled to sanctions.

## VII. Flexport Has Failed to Show Any Entitlement to an Award of Its Attorneys' Fees

Flexport closes its Motion with a final misstatement, claiming that Rule 37(e) entitles it to "monetary sanctions ***to cure prejudice caused by spoliation***, including the fees incurred to investigate the loss, establish the spoliation, and obtain relief." Mtn. at 25 (citing *Colonies Partners*, *L.P. v. County of San Bernardino*, No. 5:18-cv-00420-JGB (SHK), 2020 WL 1496444, at *12-13 (C.D. Cal. Feb. 27, 2020)). The single case Flexport cites to justify an unquantified award of attorneys' fees covering attorney investigation, expert analysis, discovery, and bringing its motion, does not so hold. The Court in *Colonies Partners* only awarded attorneys' fees associated with bringing the motion itself. *Id.*, at *13. Moreover, and in stark contrast to the facts at hand, the spoliating defendant in *Colonies* failed to retain emails and texts—both easily preservable ESI—***after*** notice that a lawsuit had been filed against him and ***after*** he had retained experienced counsel. *Id.* at *3. An attorneys' fee award is not warranted here.

## VIII. CONCLUSION

For the foregoing reasons, Flexport's Motion should be denied.

Dated: June 22, 2026

ALTO LITIGATION, PC

*/s/ Bahram Seyedin-Noor*
Bahram Seyedin-Noor

Attorneys for Defendants
freightmate Ai, Inc. and
Bryan Lacaillade