United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

FLEXPORT, INC.,

Plaintiff,

v.

FREIGHTMATE AI, INC., et al.,

Defendants.

Case No. 25-cv-02500-RFL (PHK)

**ORDER RE: PLAINTIFF'S MOTION FOR SANCTIONS**

Re: Dkt. 180

All discovery matters in this case have been referred to the undersigned. [Dkt. 81]. Now before the Court is Plaintiff's motion for sanctions against Defendants regarding alleged spoliation of evidence pursuant to Federal Rule of Civil Procedure 37(e). [Dkt. 180]. The Court held a hearing on this motion on August 27, 2026. [Dkt. 235]. Having considered the Parties' briefs, submissions, and oral argument, the Court issues the instant Order **GRANTING-IN-PART** Plaintiff's motion.

**BACKGROUND**

This case generally concerns Plaintiff Flexport Inc.'s ("Flexport" or "Plaintiff") allegations that former employees Yingwei (Jason) Zhao ("Zhao") and Bryan Lacaillade ("Lacaillade") misappropriated trade secrets from Flexport in connection with their launching of a competing new venture, Freightmate AI, Inc. ("Freightmate") (collectively "Defendants"). *See generally* Dkt. 189. Plaintiff asserts claims for trade secret misappropriation, breach of contract, and breach of fiduciary duty. *See id.*

Flexport is a "tech-enabled freight forwarder" that "combin[es] automation with human expertise" to "remove roadblocks that challenge companies engaged in global trade." [Dkt. 189 at ¶¶ 17-18]. Defendants Zhao and Lacaillade are both former employees of Flexport. *Id.* at ¶ 35.

United States District Court
Northern District of California

Zhao joined Flexport on June 1, 2021, as Principal Technical Program Manager and remained in this role until his departure from Flexport on June 4, 2024. *Id.* Lacaillade joined Flexport on October 18, 2021, as Group Product Manager. *Id.* He was promoted to Director, Product Manager, effective April 1, 2024, and remained in that role until his departure from Flexport on May 10, 2024. *Id.*

During employment at Flexport, Zhao and Lacaillade agreed to Flexport's Agreement, Policy, Handbook, and Code. *Id.* at ¶ 36. The Agreement requires employees to "hold in strict confidence and not directly or indirectly disclose or use any Proprietary Information, except as required within the scope of [their] employment," and upon termination of employment, to "promptly identify and, as directed by the Company, destroy, delete or return to the Company all items containing or embodying Proprietary Information (including all original or copies of content, whether in electronic or hard-copy form)." *Id.* at ¶ 31. The Policy states that employees "must preserve the confidentiality" of company data, and that employees "may access, use or share Flexport proprietary information only to the extent it is authorized and necessary to fulfill [their] assigned job duties." *Id.* Under the section "Basic Rules of Conduct," the Handbook prohibits "[u]nauthorized disclosure of business 'secrets' or confidential information." *Id.* The Code confirms that "[a]ll customer and company information and computer data belongs to the company and shall not be copied, transmitted or shared with anyone outside of Flexport or their active business partners." *Id.* Pursuant to their offer letters, both Zhao and Lacaillade agreed that "[w]hile you render services to the Company, you will not engage in any other employment, consulting or other business activity (whether full time or part-time) that would create a conflict of interest with the Company." *Id.* at ¶ 37.

In October 2023, Zhao and Lacaillade, along with a few other Flexport colleagues, began discussing the possibility of starting a company together. [Dkt. 194 at 10]. The men created non-Flexport group chats to discuss the potential startup. *Id.* As early as December 2023, Lacaillade reminded the men, "[w]e cannot use Flexport resources for anything as we build this out based on our offer letter." [Dkt. 196-1 at 2]. Lacaillade went on to write, "[w]e all need to download our offer letters so we can compare the wording in person. From there we can leverage legal guidance

United States District Court
Northern District of California

to ensure we prevent getting sued." *Id.*

In February of 2024, Lacaillade engaged an attorney. In a Slack message to the group of employees considering this new startup, he wrote, "I set up time . . . with the [i]ntellectual [p]roperty [r]ights litigator. This is the most important discussion from a legal perspective to help us understand what we can/can't do." [Dkt. 179-12 at 9].

In May of 2024, Zhao "transferred . . . Shipping Documents directly from [his] Flexport laptop to [his] personal Google Drive and the freightmate Google Drive." [Dkt. 179-23 at ¶ 24]. The Shipping Documents consisted of approximately 2,000 files. [Dkt. 179-24 at ¶ 1]. Also in May of 2024, Lacaillade officially departed from his role at Flexport. [Dkt. 189 at ¶ 35]. Lacaillade then incorporated Freightmate. *Id.* at ¶ 104. Zhao departed from his role at Flexport on June 4, 2024. *Id.* at ¶ 35.

On July 1, 2024, at Lacaillade's instruction, Zhao deleted from Freightmate's Google Drive those Flexport shipping documents that Zhao had previously uploaded, and the two men, as well as Rishab Gadroo, another Freightmate employee, deleted any Flexport documents they were able to find on their laptops or email accounts as well. [Dkt. 179-19 at 13]. Mr. Gadroo also deleted the few Flexport shipping documents that he found on the tech@freightmate.ai email account. *Id.*

On September 6, 2024, Flexport sent letters to Lacaillade and Zhao "concerning their violations of Flexport's intellectual property rights and breaches of their contractual obligations concerning confidentiality and intellectual property owed to Flexport." [Dkts. 189 at ¶ 121; 196-4 at 2]. The letters requested Defendants confirm that they "have not retained and do not possess any Flexport Proprietary Information." [Dkt. 196-4 at 4]. That same day, Lacaillade and Zhao made additional deletions of Flexport materials from their devices. [Dkt. 179-24 at ¶¶ 13-14].

**LEGAL STANDARD**

Rule 37(e) sets forth three criteria to determine whether spoliation of electronically stored information ("ESI") has occurred: (1) the ESI "should have been preserved in the anticipation or conduct of litigation"; (2) the ESI "is lost because a party failed to take reasonable steps to preserve it"; and (3) "[the ESI] cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If these criteria are met and the court finds that there is "prejudice to another party from [the

loss] of the ESI," Rule 37(e)(1) instructs a court to "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

In contrast to Rule 37(e)(1)'s "should have preserved" standard, Rule 37(e)(2) provides that, if ESI is spoliated and a party "acted with the intent to deprive another party of the information's use in the litigation," then more severe sanctions may be imposed for that intentional conduct, including an adverse inference jury instruction. Fed. R. Civ. P. 37(e)(2)(B) (a court may "instruct the jury that it may or must presume the [spoliated] information was unfavorable to the party").

Unlike Rule 37(e)(1), there is no requirement that the court find prejudice to the non-spoliating party under Rule 37(e)(2). "This is because the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." 2015 Advisory Comm. Notes.

Rule 37(e) does not define "intent." However, the 2015 Advisory Committee Notes to the amendment of Rule 37(e) advise that "[n]egligent or even grossly negligent behavior" is insufficient to show "intent." 2015 Advisory Comm. Notes. Accordingly, courts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer, that a party purposefully destroyed evidence to avoid its litigation obligations. *See, e.g., First Fin. Sec., Inc. v. Freedom Equity Grp., LLC,* No. 15-CV-1893-HRL, 2016 WL 5870218, at *3 (N.D. Cal. Oct. 7, 2016) (finding that the defendant's agents acted with intent in deleting text messages based on evidence of an "explicit agreement to avoid communicating electronically," which "suggest[ed] a shared intent to keep incriminating facts out of evidence"); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016) (the plaintiff's conduct was intentional under Rule 37(e) because, absent "any other credible explanation for [plaintiff's alteration of] the email addresses, it is more than reasonable to infer that the intention was to manipulate the digital information specifically for purposes of this litigation"); *Ottoson v. SMBC Leasing & Fin., Inc.*, 268 F. Supp. 3d 570, 582 (S.D.N.Y. 2017) (the plaintiff's conduct was intentional under Rule 37(e) where the evidence showed that the plaintiff either purposefully deleted e-mails that showed she might have fabricated the existence of a report that was critical to her lawsuit or purposefully failed

to take any steps to preserve the e-mails) (citing cases).

## DISCUSSION

Plaintiff seeks Rule 37(e) sanctions, arguing that "Defendants intentionally deprived [Plaintiff] of the use of lost and deleted ESI." [Dkt. 180 at 2]. Defendants, in opposition, argue that "when it comes to document preservation, Defendants acted both appropriately and in accordance with Flexport's own requests." [Dkt. 194 at 6] (emphasis removed). The Parties agree that Defendants possessed Flexport materials, which were later deleted, but disagree regarding the details concerning any duty to preserve these materials.

### I. Duty to preserve ESI in anticipation of litigation

"[T]he duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F.Supp.3d 1040, 1051 (S.D. Cal. 2015). Whether "litigation is 'reasonably foreseeable' is a flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018) (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).

Plaintiff argues the duty to preserve arose as early as December 2023 when Lacaillade instructed the group planning to leave Flexport to download their offer letters so they could compare the wording "to ensure [they] prevent getting sued." [Dkt. 196-1 at 2]. As a fallback to December 2023, Plaintiff points to February 2024 as the date when the duty to preserve arose, because at this time Defendants had discussion with an intellectual property rights litigator "to help [them] understand what [they] can/can't do." Plaintiff argues that "[t]he fact that Lacaillade and Zhao sought legal advice in February 2024 indisputably establishes that they understood Flexport's employment agreements and Proprietary Information and Invention Assignment Agreements ('PIIAAs') imposed legal limits and that they recognized a risk of being sued." [Dkt. 108 at 7] (emphasis removed).

Plaintiff argues "[b]y June 13, 2024, Defendants had already engaged in multiple acts that

United States District Court
Northern District of California

they understood made litigation with Flexport inevitable: (1) formed Freightmate and given Zhao access to Freightmate's Google Drive while he remained employed at Flexport; (2) taken approximately 2,000 FlexID files; (3) uploaded those files to Freightmate's Google Drive; (4) run FlexID files through Freightmate's OpenAI account; and (5) created prompt-engineering materials tied to shipping-document extraction—all while understanding that their agreements prohibited taking, using, or disclosing Flexport proprietary information." Thus, according to Plaintiff, the duty to preserve attached at the absolute latest on June 13, 2024.

Defendants argue they "did not anticipate litigation with Flexport—reasonably or otherwise—before they received the September 6, 2024 letters." [Dkt. 194 at 15]. Defendants argue their actions in December 2023 and February 2024 were a reasonable, routine part of leaving a company to start a new business in the same or similar industry. Defendants argue they spoke with an intellectual property attorney, not because they reasonably anticipated litigation, rather, because they wanted to make sure they took all proper actions to avoid any possibility of a lawsuit. *Id.*

Plaintiff has not met its burden of proving that Defendants reasonably anticipated litigation prior to the September 6, 2024 letters. First, the fact that Defendant Lacaillade informed the group to download their offer letters so they could compare the wording "to ensure [they] prevent getting sued" in December 2023 does not mean they reasonably anticipated such litigation at that time. Taking steps to prevent litigation is, by definition, trying to avoid litigation entirely. Trying to mitigate the risk that litigation could conceivably be filed is not the same thing as reasonably anticipating the litigation would occur. "This standard does not trigger the duty to preserve documents from the mere existence of a potential claim or the distant possibility of litigation." *Waymo LLC v. Uber Techs., Inc.*, 2018 WL 646701, at *15 (N.D. Cal. Jan. 30, 2018) (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) ("Merely because one or two employees contemplate the possibility that a fellow employee might sue does not generally impose a firm-wide duty to preserve.").

The December 2023 message does not advocate taking steps to prepare defenses to litigation. As of December 2023, Defendants had not received a claim from Flexport and had not even retained

counsel. Plaintiff's arguments essentially rely on inferring from the evidence that these Defendants feared litigation at this early point in time. However, the duty to preserve is based on an objective standard, and the subjective intent of Defendants here is not dispositive. "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Waymo*, 2018 WL 646701, at *14 (internal quotation marks omitted) (citation omitted). Under the totality of the circumstances, a reasonable party in December 2023 would not have reasonably foreseen litigation.

The change in circumstances in February 2024 is the fact that Defendants consulted legal counsel. But, Defendants still had not received a claim letter from Flexport at this point in time, and there is no evidence they received notice at the time that the ESI at issue was potentially relevant to the litigation. *Cf. Smahi v. STMicroelectronics, Inc.*, 825 F. Supp. 3d 1143, 1147 (N.D. Cal. 2026) ("If a party has 'some notice that the documents were potentially relevant to the litigation,' then they also have a duty to preserve those documents.") (citation omitted). The record indicates that Defendants sought counsel with the continuing intent of *avoiding* litigation rather than out of a concern that litigation was likely to occur. *See Li v. Merck & Co., Inc.*, No. 23-cv-03347-JSW (TSH), 2025 WL 429013, at *2 (N.D. Cal. Feb. 7, 2025) (rejecting the contention that seeking an attorney to consult regarding one's legal rights necessarily establishes contemplation or anticipation of litigation). Again, a reasonable party trying to prevent litigation entirely in these circumstances is not shown to be reasonably anticipating such litigation – if anything, there is an inference that they are not anticipating litigation because they are taking steps to mitigate the risk in the first place. Defendants also point out that Plaintiff never took discovery from the attorney involved and never sought to ask Defendants at their depositions whether they anticipated litigation as of February 2024 – arguing that Plaintiff avoided pursuing discovery which (according to Defendants) would undermine their position here and merely rely on one electronic message. As Defendants point out, there is no evidence that the attorney involved gave legal advice to retain any documents in February 2024, no evidence that the attorney involved gave legal advice regarding the prospect of litigation, and no evidence that would add significantly to the circumstances as they existed in December 2023 beyond the mere presence of counsel.

United States District Court
Northern District of California

Under the totality of circumstances, the Court finds the language of the September 6 letters sufficient to put a reasonable person in Defendants' position on notice that litigation was reasonably likely to occur. In the September 6 letters, Flexport wrote that "there is reason to believe that [Defendants] are violating Flexport's intellectual property rights." [Dkt. 196-4 at 2]. Further, Defendants themselves state that they "did not anticipate litigation with Flexport . . . before they received the September 6, 2024 letters." [Dkt. 194 at 15]. Defendants thus effectively concede that as of September 6, 2024 they had notice that litigation was reasonably foreseeable. Thus, the Court finds that as of September 6, 2024 Defendants reasonably anticipated litigation and had a duty to preserve ESI as of that date under Rule 37(e).

**II. Loss of ESI due to failure to preserve**

It is undisputed that Defendants intentionally deleted Flexport materials from their possession in both July and September 2024. Defendants argue they deleted the ESI in July "to [c]reate a [c]lean [r]oom [e]nvironment." [Dkt. 194 at 20]. Because the Court finds that the duty to preserve did not arise until September 2024, the loss of ESI in July 2024 was not in violation of Rule 37(e).

As to the deletions in September 2024, Defendants argue that, even if they should have anticipated litigation prior to the September letter, "it still would not have been reasonable for [them] to preserve the specific materials discussed in [Plaintiff's] motion." *Id.* Further, Defendants point to Plaintiff's language in the September letter directing Defendants to "[c]onfirm that [they] ha[d] not retained and d[id] not possess any Flexport Proprietary Information" as indicating Flexport's request that Defendants delete the relevant information in their possession. *Id.* at 20-21. While Defendants' rationale for deleting the ESI at issue here goes to the issue of intent, it does not negate the fact that the ESI loss was a direct result of Defendants' failure to preserve after the duty to preserve arose. Indeed, there is evidence that one of Defendants' investors (contacted after Defendants received the September letters) told Defendant Lacaillade not to delete anything at that time. Whether Defendants knew they had a duty to preserve or not, the fact of the matter is the duty did exist as of September 6, 2024, and Defendants failed to preserve, and therefore lost, the ESI.

Defendants additionally argue that they retained a firm, Lighthouse, to image various Google

Drives, Gmail accounts, personal laptops, personal emails, and personal cell phones after receipt of the notice letters. *Id.* at 25. Lighthouse imaged fifteen different Freightmate and founder repositories and created a Google Drive audit log "that detailed every action taken on any document on the freightmate Google Drive account from the date the account was established to the date Lighthouse imaged it." *Id.*

In response, Plaintiff argues the Lighthouse imaging underscores "selectivity" because Defendants imaged certain devices and accounts, while failing to image contemporaneous OpenAI and GCP systems and while failing to recover the deleted FlexID and prompt files from the Google Drive. According to Plaintiff, "[p]reserving the sources least likely to reveal system-level use does not excuse losing the sources most likely to reveal it." [Dkt. 208 at 18].

The Court finds that regardless of the whether some ESI may have been preserved via Lighthouse's imaging process, an admitted amount of potentially relevant information was lost in the September deletions due to Defendants' failure to preserve.

**III. Inability to restore or replace the ESI**

Plaintiff argues that "[t]he lost ESI consists of categories of evidence that cannot be recreated from other sources: prompt-engineering documents: OpenAI inputs, outputs, and response logs; and GCP data-access and administrative logs." [Dkt. 180 at 28]. Defendants respond that their "deletion of the Flexport Shipping Documents may not serve as the basis for sanctions because Flexport still has them." [Dkt. 194 at 26]. The fact that duplicates of some of the deleted materials may be in Plaintiff's files (because these shipping documents apparently originated from Flexport), the evidentiary relevance of those deleted shipping files relates to Plaintiff's argument that these shipping documents in particular were stored on Defendants' devices and accounts. Thus, even if the actual content could somehow be restored from a different location, this does nothing to show how this ESI was used by Defendants or whether the files were altered in any way while in Defendants' possession.

Defendants also argue that "Flexport has failed to carry its burden of showing that the Prompt-Related Documents are even relevant to the litigation, much less that Defendants had notice of that purported fact before deleting them." *Id.* This argument is not germane to whether the ESI



United States District Court
Northern District of California

United States District Court
Northern District of California

can be restored or replaced. Relevance to the litigation is subsumed in the analysis above as to whether and when the duty to preserve arose and the scope of that duty. Because the Court found already that the duty to preserve attached to these documents, arguments that they are somehow not relevant does not negate the fact that there is no practical way to restore them as they existed on Defendants' devices and accounts.

**IV. Prejudice to Plaintiff resulting from lost ESI**

Plaintiff argues that "[t]he prejudice to Flexport is severe." [Dkt. 180 at 10]. Plaintiff avers "[t]he deleted ESI would prove direct, contemporaneous evidence of Defendants' access to and use of Flexport's trade secrets, including the specific FlexID files ingested, the prompts used, and the resulting outputs. In the absence of that evidence, Flexport is forced to rely on indirect indicators . . . rather than the primary evidence Defendants destroyed. There is no alternative source for this information, and it cannot be restored or replaced." *Id.*

The ESI deleted in September 2024 includes Flexport shipping documents (both on Lacaillade's personal laptop and in Zhao's email account and personal devices), Flexport operational files in Zhao's possession, and prompt engineering files on the Freightmate Google drive. These files were deleted on September 6 and 7, 2024, weeks before Defendants engaged Lighthouse to image their files and devices (and thus these deleted files no longer existed at the time of imaging).

Defendants provide no persuasive argument against prejudice. As noted, Defendant argues that the lost ESI was irrelevant to the development of Freightmate (as allegedly shown by the source code) and that the shipping documents are not confidential trade secrets in any event. In response, Plaintiff argues that the lost ESI would have been relevant to show the extent to which Flexport's confidential documents were used by Defendants. These arguments go to the merits of the case because the Parties dispute whether the lost ESI would have been relevant on the merits for purposes of trial. However, it is not appropriate for purposes of this motion to reach any decision on the ultimate merits of the trade secrets claims in this case. The undersigned makes no such findings as to the ultimate merits – the issue for purposes of this discovery sanction is whether Plaintiff was prejudiced (without pre-judging which Party will ultimately prevail). Here, Defendants' position

essentially assumes that Defendants' arguments to defend against the trade secrets claims would prevail at trial – but the issue on the instant motion is whether Plaintiff has been prejudiced by the loss of the evidence, not whether Plaintiff loses on the merits after trial. The deleted ESI would have been within the scope of relevance for purposes of discovery for purposes of showing how and to what extent Defendants relied on Flexport materials in developing Freightmate. The loss of this evidence (which Plaintiff reasonably believes would have supported its case in chief) supports a finding that Plaintiff experienced at least some prejudice by the loss of the ESI. Accordingly, the Court finds that Plaintiff suffered prejudice from the deletion of the ESI at issue. Accordingly, because the above-referenced factors have been satisfied, the Court may impose sanctions under Rule 37(e)(1).

**V. Intent to deprive Plaintiff of ESI**

Next, the Court must address whether Defendants acted with an intent to deprive Plaintiff of the ESI's use in this litigation, such that the Court may impose the more severe sanctions set forth in Rule 37(e)(2).

Plaintiff argues that "Defendants engaged in an intentional purge of stolen FlexID files and at least six prompt files on July 1, 2024." [Dkt. 180 at 24]. Plaintiff argues that intent is established because "[t]he deleted files go directly to the heart of Defendants' independent development narrative" and "[w]ithout this critical ESI, Defendants successfully enshroud their hyper-fast development in secrecy, and Flexport has lost its direct evidence of Defendants' use of the FlexID files to build, test, and refine Docmate." *Id.* at 24-25. Plaintiff further argues that they have established intent because "[h]aving previously sought the advice of counsel . . . Defendants knew or should have known they were in violation of their employment agreements . . . by merely possessing the . . . files. Deleting these files after admittedly using at least a subset of the . . . files in developing Docmate confirms Defendants understood these files and any evidence of their use would be relevant to future litigation with Flexport." *Id.* Plaintiff further relies on the evidence that a non-lawyer investor advise Defendant Lacaillade not to destroy anything after receiving the September letters.

As in many cases involving proof of state of mind, there is no actual direct evidence of intent

here. Defendants argue they "deleted the Flexport Shipping Documents on July 1, 2024 to create a clean room—not because they thought those documents would be evidence in a future lawsuit." [Dkt. 194 at 20]. Defendants argue "[n]ot only was such deletion the right thing to do, it's the very thing that Flexport itself demanded Defendants do in their September 6, 2024 letter." *Id.* (emphasis removed). As noted above, the Court found that the duty to preserve did not arise until September 2024 and therefore the deletions in July are not persuasive evidence of intent to deprive.

While Defendants *should* have known better than to delete any ESI relevant to potential litigation after September 2024, the totality of the circumstances do not give rise to an inference of intent to deprive Plaintiff of this evidence as of or after September 2024. The September 2024 letters do not explicitly demand that Defendants preserve evidence such as Flexport documents. Defendants argue that they believed the September 2024 letters requested that Defendants delete Flexport confidential documents in their possession. While that interpretation of the September letters is arguably mistaken, "[n]egligence—even gross negligence—in failing to retain relevant evidence is not sufficient to support an adverse inference under Rule 37(e)(2)." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1238 (N.D. Cal. 2022). The record indicates that Defendants' intent from December 2023 onward was to take steps to avoid litigation, not deprive Plaintiff of evidence in the litigation. In that regard, they preserved other evidence on the development of Freightmate, which tends to negate the inference of intent here – had Plaintiffs intended to deprive Plaintiff of evidence, they would not have preserved other evidence. Further, the fact that Defendants had apparently retained counsel at this point in time tends to undercut the inference that there was an intent to deprive Plaintiff of evidence, because the Court will not entertain an inference that counsel would encourage or advise a client to spoliate evidence.

While the deletions occurred, the Court finds that Plaintiff has not met its burden of proving that Defendants had the requisite intent to deprive Plaintiff of ESI when deleting ESI in September 2024. Accordingly, for all these reasons, the Court finds that the Rule 37(e)(2) factors are not satisfied. The Court **DENIES** Plaintiff's request for the imposition of sanctions under Rule 37(e)(2).

## VI. Sanctions under Rule 37(e)(1)

Having determined that Defendants violated Rule 37(e)(1), the Court must now determine

United States District Court
Northern District of California

the appropriate sanction. Plaintiff requests that the Court "should impose curative measures under Rule 37(e)(1) sufficient to prevent Defendants from benefiting from the evidentiary gap they created. At minimum, the Court should permit Flexport to (1) present evidence and argument to the jury concerning Defendants' failure to preserve the use of lost and deleted ESI; (2) inform the jury that Defendants had a duty to preserve the use of lost and deleted ESI and failed to do so; and (3) preclude Defendants from arguing that the absence of direct evidence of use proves that no such use occurred." [Dkt. 180 at 2-3]. Finally, Plaintiff requests "its attorneys' fees and costs incurred as a result of Defendants' spoliation." *Id.* at 3.

Defendants oppose the request for sanctions and the request for an award of fees and costs. Defendants argue that the Flex shipping documents are not confidential trade secrets and that the loss of such documents could therefore not have caused significant prejudice to Plaintiff (and as a corollary, the relief necessary to cure any such prejudice would be minimal). Defendants also argue that the prompts used with ChatGPT were ultimately irrelevant to the development of Freightmate, and as a consequence again any prejudice stemming from the loss of any prompts and chatlogs is minimal (and hence, the remedy should be minimal). Defendants argue that the requested remedies regarding arguments and evidence to be presented to the jury (and the request to foreclose defense arguments) is an attempt to win the trade secret cause of action based on solely on the spoliation and not on the merits of the trade secrets claim – because Defendants argue that discovery has demonstrated that Defendants used none of Plaintiff's alleged trade secrets to develop Freightmate.

Plaintiff responds that the requested remedies are required to address the prejudice. With regard to the request to foreclose Defendants from relying on the lack of evidence to support a finding of no liability, Plaintiff argues that that remedy in particular is required because absent such a ruling, Defendants' behavior would be rewarded by the very absence of evidence they caused.

The Court is guided by precedent in this district, where parties were similarly found to have violated Rule 37(e)(1) (but not 37(e)(2)). In *Phan*, the Court found that providing the jury with the jury instruction promulgated by the California courts on the Willful Suppression of Evidence (CACI Jury Instruction No. 204) was an appropriate sanction. *Phan v. Costco Wholesale Corp.*, 2020 WL 5074349, at *4 (N.D. Cal. Aug. 24, 2020). In *Phan*, the defendant failed to preserve video evidence

of the slip and fall which was the subject of that lawsuit. The *Phan* court found that providing this jury instruction "balances the importance of the video evidence with the degree of defendant's fault and extent of prejudice to plaintiff. Further, the instruction allows the factfinder to reach its own conclusion about the video evidence in light of all the facts that may be presented." *Id.*

Similarly, in *Meta v. BrandTotal*, the Court followed the reasoning in *Phan* and decided that the jury would receive CACI Instruction 204 (modified to fit the facts of that case) where the defendant there failed to preserve a software debugging log which contained information relevant to that case. *Meta Platforms Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1237-41 (N.D. Cal. 2022). In *Meta*, Meta sought a mandatory adverse inference instruction to the jury on several disputed factual issues. *Id.* at 1235. There, Meta argued that several facts regarding the lost software debugging log gave rise to inferences which justified the requested relief. The *Meta* Court found that "whatever inferences might be drawn from those facts is best left to the jury." *Id.* at 1240.

As discussed above, the Parties rely on different interpretations of the September letter and the other circumstances surrounding the deletions of the ESI to argue whether or not there was an intent to deprive Flexport here of the evidence (as opposed to a mistaken or negligent state of mind). As in *Phan* and *Meta*, the Court found that a mandatory adverse inference under Rule 37(e)(2) is not appropriate on this record. However, the Court finds that, as a remedy to address the prejudice here under Rule 37(e)(1), the appropriate sanction is to allow the jury to hear whatever evidence the Parties are allowed by the presiding District Judge to properly introduce at trial and for the jury to be instructed on the law on suppression of evidence, so that the jury may determine whether or not to consider the lost ESI would have been unfavorable to Defendants.

As noted above, all discovery in this matter was referred to the undersigned. Rule 37 is a rule of discovery and the sanction here is a sanction based on discovery conduct. The instant motion is a motion for relief on a nondispositive matter and thus, under 28 U.S.C. § 636(b), the provisions for issuing a Report and Recommendation do not apply. Accordingly, the undersigned has the authority procedurally to issue this ruling as an Order, which would be subject to a Motion for Relief from Nondispositive Pretrial Order directed to the presiding District Judge under Civil Local Rule 72-2 (which incorporates Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A)). *See Porter v. City*

United States District Court
Northern District of California

*and Cnty. of San Francisco*, 2018 WL 4215602, at *5 (N.D. Cal. Sept. 5, 2018) (Magistrate Judge issuing Order on Rule 37(e)(1) spoliation sanctions "[s]ubject to the discretion and direction of the trial judge").

Accordingly, for all the reasons discussed herein, the Court **ORDERS** that the jury be instructed pursuant to CACI 204 (as modified to fit the facts of this case) as follows: "You may consider whether one party intentionally concealed or destroyed evidence with the specific intent to deprive the other party of that evidence for use in this lawsuit. If you decide that a party did so with that intent, you may decide that the evidence would have been unfavorable to that party."

The Court finds this jury instruction to be an appropriate sanction, which balances the importance of the spoliated ESI with the degree of Defendants' fault and extent of prejudice to Plaintiff. The Court finds that this sanction will cure the prejudice to Plaintiff caused by the spoliation but goes no further than necessary. The instruction allows the factfinder to reach its own conclusion about the evidence in light of all the facts that may be presented.

Because details on the conduct of trial (such as admissibility of evidence and allowable arguments to the jury) are not within the scope of referral to the undersigned, the Court **ORDERS** the Parties to raise any disputes on such issues with the presiding District Judge through either the motions in limine process or other appropriate pretrial procedures.

## VII. Request for Monetary Sanctions

In addition to the non-monetary sanctions discussed above, Plaintiff also seeks an award of fees and costs. [Dkt. 180 at 32]. However, instead of requesting a specific amount, Plaintiff seeks leave to submit a declaration detailing the requested fees and costs. *Id.* Local Rule 37-4, however, mandates that, when a party moving for Rule 37 sanctions also moves for an award of attorney fees, "the motion ***must*** . . . [b]e accompanied by competent declarations which . . . [d]escribe in detail the efforts made by the moving party to secure compliance without intervention by the Court; and . . . [i]f attorney fees or other costs or expenses are requested, itemize with particularity the otherwise unnecessary expenses, including attorney fees, directly caused by the alleged violation or breach, and set forth an appropriate justification for any attorney-fee hourly rate claimed." *See* Civil L.R. 37-4(b)(2)-(3) (emphasis added).

Plaintiff has plainly not complied with Civil Local Rule 37-4. No specific amount of fees or costs are requested in Plaintiff's briefs, and no declarations were submitted with the instant motion to substantiate the amounts of fees and costs sought. The only case law cited by Plaintiff is from the Central District of California, which obviously is not bound by the Local Rules of this Court such as Civil L.R. 37-4. [Dkt. 180 at 32]. Indeed, precedent from this Court supports the conclusion that failure to submit the required materials under Civil Local Rule 37-4 is sufficient basis to deny a request for attorneys fees and costs in connection with a spoliation motion under Rule 37(e). *Phan*, 2020 WL 5074349, at *4.

For all these reasons, and in the full exercise of the Court's discretion under both Civil L.R. 37-4 and Fed. R. Civ. P. 37(e), the Court **DENIES** Plaintiff's request for an award of fees and costs in connection with the instant motion for sanctions.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART** Plaintiff's motion for sanctions under Rule 37(e). [Dkt. 180]. The Court further **ORDERS** that Defendants shall be sanctioned with an instruction to the jury on CACI 204. The Court **DENIES** Plaintiff's request for monetary sanctions.

Any Party may file a timely motion for relief from this non-dispositive pretrial order pursuant to Civil L.R. 72-2, which (as noted) includes Fed. R. Civ. P. 72 (setting 14 day deadline for filing objections to Magistrate Judge's Order on Nondispositive Matter).

This Order **RESOLVES** Dkt. 180.

**IT IS SO ORDERED.**

Dated: September 16, 2026

PETER H. KANG
United States Magistrate Judge