**SPENCER FANE LLP**
John V. Picone III (State Bar No. 187226)
jpicone@spencerfane.com
Jeffrey M. Ratinoff (State Bar No. 197241)
jratinoff@spencerfane.com
Jennifer S. Coleman (State Bar No. 213210)
jcoleman@spencerfane.com
Jing H. Cherng (State Bar No. 265017)
gcherng@spencerfane.com
225 West Santa Clara Street, Suite 1500
San Jose, CA 95113
Telephone: (408) 286-5100
Facsimile: (408) 286-5722

Attorneys for Plaintiff
FLEXPORT, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLEXPORT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FREIGHTMATE AI, INC.; YINGWEI (JASON) ZHAO; and BRYAN LACAILLADE,<br><br>Defendants. | Case No.: 3:25-cv-02500-RFL-PHK<br><br>**JOINT MOTION TO ENTER STIPULATED JUDGMENT**<br><br>Courtroom: 15 – 18th Floor<br>Judge: Hon. Rita F. Lin<br><br>Action Filed: March 12, 2025 |

Pursuant to the Court's order of October 5, 2026, ECF No. 302, Plaintiff Flexport, Inc., and Defendants Freightmate.ai, Inc., Bryan Lacaillade, and Yingwei (Jason) Zhao jointly move the Court to enter, as a consent decree, the [Proposed] Stipulated Judgment, which every Party has signed, attached hereto as Exhibit A (the "Stipulated Judgment" or "Stip. J."). The Stipulated Judgment also serves as the Parties' stipulated dismissal. Upon entry, it dismisses with prejudice every claim other than the injunctive relief it grants and vacates the trial and all remaining pretrial deadlines. Stip. J. ¶¶ 20, 22, 26. Because this motion is submitted at the Court's direction, the Parties respectfully request that it be decided on the papers. *See* Civil L.R. 7-1(b).

The Stipulated Judgment is the product of arm's-length negotiation between represented adversaries on the eve of trial, after full fact and expert discovery. It is fair, reasonable, and equitable. The Stipulated Judgment falls squarely within the scope of the pleadings and advances public policy. The terms of the permanent injunction are specific and describe the restrained conduct in reasonable detail within its own four corners, and binds only those persons Rule 65(d)(2) permits. For the reasons below, the Stipulated Judgment satisfies every requirement for entry as a consent decree, and the Court should enter it, which disposes of all claims against all parties, and vacates the October 13, 2026 excusal hearing, the October 19, 2026 trial, and all remaining pretrial dates.

## I. <u>BACKGROUND AND ISSUES TO BE DECIDED</u>

Flexport filed this action on March 12, 2025. The operative Second Amended Complaint ("<u>SAC</u>") asserts claims for trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("<u>DTSA</u>"), and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.* ("<u>CUTSA</u>"), against all Defendants, and claims for breach of contract and breach of fiduciary duty against Zhao and Lacaillade, and it seeks injunctive relief. ECF No. 189. Defendants answered and deny liability. The Parties completed fact and expert discovery, including forensic review by a neutral examiner of repositories made available under the Court's April 30, 2026 Order (ECF No. 157); litigated Flexport's spoliation motion (*see* ECF No. 283); and attended the final pretrial conference on September 15, 2026. On October 5, 2026, the Parties notified the Court that they had reached a binding settlement that contemplates entry of a stipulated

judgment. ECF No. 301. The Court ordered that any proposed judgment be accompanied by a motion explaining why it satisfies the requirements for a consent decree and, if it includes injunctive relief, why it satisfies Rule 65(d). ECF No. 302.

The issues to be decided are (1) whether the Stipulated Judgment satisfies the requirements for entry as a consent decree; and (2) whether its permanent injunction satisfies Federal Rule of Civil Procedure 65(d).

## II. <u>THE STIPULATED JUDGMENT IS A VALID CONSENT DECREE</u>

A consent decree occupies a middle ground between judgment and contract. It “bear[s] some of the earmarks of judgments entered after litigation,” but because its terms are “arrived at through mutual agreement of the parties,” it also “closely resemble[s]” a contract. *Sierra Club, Inc. v. Elec. Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990) (quoting *Local No. 93, Int’l Ass’n of Firefighters v. City of Cleveland*, 478 U.S. 501, 519 (1986)). A court “should enter a proposed consent judgment if [it] decides that it is fair, reasonable and equitable and does not violate the law or public policy.” *Id.* The decree must also “spring from and serve to resolve a dispute within the court's subject matter jurisdiction,” “com[e] within the general scope of the case made by the pleadings,” and “further the objectives of the law upon which the complaint was based.” *Local No. 93*, 478 U.S. at 525 (citation omitted).

A decree that is “the product of good faith, arms-length negotiations” is “presumptively valid." *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990). While the court reviews the decree independently rather than approving it as a matter of course, *see United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th Cir. 1995), it does not sit in judgment on the merits. It “need only be satisfied that the decree represents a ‘reasonable factual and legal determination.’” *Oregon*, 913 F.2d at 581. Courts in this Circuit apply these same standards to stipulated permanent injunctions. *See, e.g.*, *Montrose Envtl. Grp., Inc. v. Zephyr Air Quality Servs., LLC*, No. 2:16-cv-00433-SAB (E.D. Wash. Oct. 16, 2017). The Stipulated Judgment satisfies each requirement.

*First*, the Stipulated Judgment resolves a dispute within the Court's subject-matter jurisdiction. As the judgment recites, the Court has federal-question jurisdiction over the DTSA

claim, see 28 U.S.C. § 1331; 18 U.S.C. § 1836(c), and supplemental jurisdiction over the related state-law claims, see 28 U.S.C. § 1367(a). Stip. J., Recitals.

*Second*, it comes within the general scope of the pleadings. The SAC alleges that Defendants acquired and used Flexport's confidential shipping documents and other proprietary information ("Flexport Data") to build a competing product, and it seeks injunctive relief. ECF No. 189. Defendants deny these allegations and claims, but agree that Flexport has a right to protection of its confidential information and trade secrets. Accordingly, Defendants agree to abide by an injunction that restrains Defendants from possessing, accessing, copying, using, or disclosing such Flexport Data (Stip. J. ¶ 9), and from using, offering, or selling any Freightmate Product that incorporates, was trained on, or is derived from Flexport Data unless remediation under Section IV removes it (*id.* ¶ 10).

*Third*, this stipulated relief is consistent with the objectives of the claims asserted in the SAC and public policy, including protecting confidential and proprietary information. And because a consent decree may provide even "broader relief than the court could have awarded after a trial," *Local No. 93*, 478 U.S. at 525, relief that tracks available remedies Flexport pleaded is well within the Court's authority to enter without making the findings a contested permanent injunction would require.

The Stipulated Judgment is also procedurally and substantively fair. Sophisticated parties negotiated it at arm's length over the course of several days, each side represented by separate counsel. Those negotiations came after more than eighteen months of litigation, the completion of fact and expert discovery, a contested spoliation ruling (ECF No. 283), and the final pretrial conference. By that point, each side could weigh the strengths and risks of its position on a complete record. *See Oregon*, 913 F.2d at 581; *California v. Paramount Skydance Corp.*, No. 4:26-cv-07116-AMO, 2026 WL 2942918, at *2 (N.D. Cal. Sept. 30, 2026) (entry of consent decree warranted where it followed contested litigation and in-depth negotiations). Its terms are also balanced and fair. Defendants stipulate to specific facts (Stip. J. ¶¶ 1–4), but make no other admission (*id.* ¶ 5), and the Court makes no determination of liability (*id.* ¶ 21). Freightmate bears the cost of the forensic inspection, subject to a $25,000 cap, and of any remediation (*id.* ¶ 13). The

examiner's report may not disclose Freightmate's own source code, architecture, or customer information to Flexport (*id.* ¶ 17). And the process ends on a fixed schedule, with the report due by January 30, 2027 and each Defendant's certification under penalty of perjury due twenty business days later (*id.*). The decree also leaves third parties' rights untouched. Rather, it binds only the persons Rule 65(d)(2) permits and does not restrain litigation in any other forum.

Finally, the Stipulated Judgment does not violate law or public policy. *See Oregon*, 913 F.2d at 580 (a consent decree "must conform to applicable laws"). Consistent with 18 U.S.C. § 1836(b)(3)(A)(i)(I) and California's prohibition on restraints of lawful trade, Cal. Bus. & Prof. Code § 16600, the injunction contains no restriction on employment. It expressly preserves Defendants' freedom to lawfully compete with Flexport and to develop and sell freight-forwarding software and services through independent means (Stip. J. ¶ 11), and it excludes from "Flexport Data" public information and the individual Defendants' general skills, knowledge, and experience (*id.* ¶ 6).

## III. THE PERMANENT INJUNCTION SATISFIES RULE 65(d)

Rule 65(d)(1) requires that every order granting an injunction "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). These requirements ensure that "those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974); *see Union Pac. R.R. Co. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000). Rule 65(d)(2), in turn, limits who is bound. The permanent injunction in Section III of the Stipulated Judgment, together with the protocol in Section IV, satisfies each requirement.

The Stipulated Judgment states on its face why the injunction is issued. It recites the claims pleaded and Defendants' denial of liability (Stip. J., Recitals), sets out the facts Defendants stipulate (*id.* ¶¶ 1–4), and states that the injunctive relief "is entered on the Parties' stipulation" (*id.* ¶ 21). Consent supplies the basis that a contested record would otherwise have to provide: "consent makes a significant difference; it relieves [the tribunal] of the very necessity of making a supporting record." *NLRB v. Ochoa Fertilizer Corp.*, 368 U.S. 318, 323 (1961).

The stipulated facts also supply substantive reasons for the injunction. Freightmate, Zhao, and Lacaillade acknowledge that they acquired, and used some portion of, approximately 2,000 confidential Flexport shipping documents (Stip. J. ¶ 2). Zhao acknowledges that he acquired Flexport confidential and proprietary information, including trade secrets (*id.* ¶ 1). Zhao and Lacaillade each acknowledge that he knew or should have known that acquiring that material violated their agreements with Flexport (*id.* ¶¶ 3–4). The injunction is tailored to those facts. It reaches only Flexport Data and products built with it, while expressly preserving Defendants' ability to compete through independent means and to use public information and their general skills, knowledge, and experience (*id.* ¶¶ 6, 11).

The injunction states its terms specifically. Paragraph 9 identifies the persons bound, the protected material, and the prohibited conduct: possessing, accessing, copying, using, or disclosing "Flexport Data" for any purpose, except as Section IV requires. Paragraph 10 identifies the prohibited product-related conduct and the condition under which it is lifted. Section IV then sets out, step by step and with deadlines, what each Party must do. Flexport must deliver a Reference Manifest within twenty business days (Stip. J. ¶ 14). Freightmate must provide specified forensic images and temporary access to its Google Cloud Storage and AWS S3 repositories (*id.*). Defendants must delete or return any Flexport Data and make any product modification the Neutral Examiner directs, within the time the Neutral Examiner sets (*id.* ¶ 15), and must answer the Neutral Examiner's requests within five business days (*id.* ¶ 16). The Neutral Examiner must report by January 30, 2027, and each Defendant must then certify compliance under penalty of perjury (*id.* ¶ 17).

Read with Section IV, Paragraph 10 works as follows. The prohibition in Paragraph 9 on possessing, accessing, using, or disclosing Flexport Data applies from entry. Freightmate may continue to operate its business during the remediation period under Section IV, which the Parties agree runs from entry through the certifications required by Paragraph 17. Thereafter it may use, offer, or sell a Freightmate Product only if remediation under Section IV has succeeded. Under Section IV, success means both deletion or return of Flexport Data and "any modification of a Freightmate Product necessary so that it does not incorporate or rely on Flexport Data" that is

directed by the Neutral Examiner (Stip. J. ¶¶ 15, 17(c)). The Court remains the arbiter of compliance. Any dispute over the Neutral Examiner's scope, methods, directions, or report comes to the Court (*id.* ¶ 18). The Neutral Examiner was previously retained by the Parties' agreement to conduct a prior stipulated forensic inspection and is already familiar with the repositories produced under ECF No. 157 (*id.* ¶¶ 12, 14). The Parties do not ask the Court to appoint a special master under Rule 53.

The injunction describes the restrained acts within its own four corners. "Flexport Data" is defined by objective criteria. It means information that Zhao or Lacaillade obtained from Flexport's systems, accounts, or personnel during or by reason of their employment and that Flexport designated or maintained as confidential, including the approximately 2,000 shipping documents (Stip. J. ¶ 6). It excludes public information, the individual Defendants' general skills, knowledge, and experience, and independently developed or lawfully obtained information (*id.*). The shipping documents are further identifiable by a "Reference Fingerprint" (file name, Flexport shipment numbers, file size, and MD5 hash value) that the Neutral Examiner will use to search Defendants' repositories (*id.* ¶ 14). That fingerprint is a search tool for the examiner. Defendants' obligations are stated in full in Paragraphs 9 and 10 and Section IV, and nothing in Sections III or IV relies on the complaint, the Settlement Agreement, or any other document to define what Defendants must do or refrain from doing. Paragraph 23 refers to the Settlement Agreement only to invoke the Court's ancillary jurisdiction to enforce it. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994). The Parties will lodge the Settlement Agreement for *in camera* review if the Court deems it necessary.

Paragraph 9 binds Defendants, their officers, directors, agents, servants, employees, and all persons in active concert or participation with any of them who receive actual notice of the Stipulated Judgment. That tracks Rule 65(d)(2), which binds the parties, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with them, in each case upon actual notice. Fed. R. Civ. P. 65(d)(2)(A)–(C). (It will not bind Defendants' "attorneys," given the provisions of the Stipulated Protective Order entered in this action (Dkt. No. 78), which state that counsel is "entitled to retain an archival copy" of certain litigation-related materials.

## IV. THE COURT SHOULD ENTER JUDGMENT AND VACATE THE TRIAL AND ALL REMAINING PRE-TRAIL DATES

The Stipulated Judgment resolves the entirety of the case. On entry, it dismisses with prejudice all causes of action and all requests for monetary relief, adjudicates all claims and defenses as a final judgment, and vacates the trial and remaining case deadlines. Stip. J. ¶¶ 20, 22–23, 26. The only relief granted in the Stipulated Judgement is set forth in Sections III and IV. *Id* The Parties have not filed a separate self-executing stipulation under Rule 41(a)(1)(A)(ii), because such a dismissal would take effect on filing and leave the Court without jurisdiction to enter the Stipulated Judgment. *See Commercial Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1077–78 (9th Cir. 1999). Because entry of the Stipulated Judgment is a condition of the Parties' settlement (Stip. J., Recitals), and because prospective jurors have already received questionnaires, the Parties respectfully request that the Court rule on this motion before the October 13, 2026 excusal hearing or, in the alternative, vacate that hearing pending its ruling. If the Court is not prepared to enter any provision as proposed, the Parties request the opportunity to confer and submit a revised proposed judgment within seven days of the Court's order. Once the Stipulated Judgment is entered, the Court retains jurisdiction to enforce it. *See Hook v. Ariz. Dep't of Corr.*, 972 F.2d 1012, 1014 (9th Cir. 1992); Stip. J. ¶ 23.

## V. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court (1) enter the Stipulated Judgment as a consent decree; and (2) vacate the October 13, 2026 excusal hearing, the October 16, 2026 voir dire the October 19, 2026 trial, and all remaining pretrial and trial-related deadlines.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Dated: October 7, 2026

RESPECTFULLY SUBMITTED,

SPENCER FANE LLP

/s/ *John V. Picone III*
John V. Picone III
Jeffrey M. Ratinoff
Jennifer S. Coleman
Jing H. Cherng
Attorneys for Plaintiff,
FLEXPORT, INC.

Dated: October 7, 2026

ALTO LITIGATION, PC

/s/ *Bahram Seyedin-Noor*
Bahram Seyedin-Noor
Bryan Ketroser
Kevin J. O'Brien
Anthony Basile
Attorneys for Defendants
FREIGHTMATE AI, INC. and
BRYAN LACAILLADE

Dated: October 7, 2026

CHAN PUNZALAN LLP

/s/ *Mark Punzalan*
Mark Punzalan
A. Chowning Poppler
Jeremy Faulkner
Attorneys for Defendant
YINGWEI (JASON) ZHAO

**ATTESTATION**

I, John V. Picone III, hereby attest, pursuant to N.D. Cal. Civil L.R. 5-1(i)(3), that concurrence in the filing of this document has been obtained from each signatory hereto.

By: /s/ *John V. Picone III*
John V. Picone III